UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

TAMMY KING,                            Case No.: 2:24-cv-375-JLB-KCD
     Plaintiff,
v.

LEE COUNTY, et al
     Defendants.
_____/

## DEFENDANTS LEE COUNTY, SHERIFF MARCENO, BRETT, WARD, ARMATO AND OLIVIO'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT (ECF 42)

COME NOW the Defendants, LEE COUNTY, SHERIFF MARCENO, in his official capacity as Sheriff of Lee County, and BRETT, WARD, ARMATO and OLIVIO, in their individual capacity, by and through their undersigned attorneys, and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, file this their Motion to Dismiss Plaintiff's Second Amended Complaint, and in support state as follows:

1.    Plaintiff King instituted this civil action on April 24, 2024, stemming from an incident that occurred on March 24, 2023. (ECF 1). The Second Amended Complaint[1]

---

[1] This is Plaintiff's third complaint in this case. In response to the initial complaint these Defendants drafted a motion to dismiss. A draft of the motion was provided to Plaintiff's counsel as part of the Rule 3.01(g) conferral. The Plaintiff chose to amend once as a matter of course, and the defendants did not file their motion to dismiss. The First Amended Complaint was filed on June 24, 2024. (ECF 32). Other than removing Count IX which was a state law negligent hiring, supervision and retention claim against Sheriff Marceno and Lee County, the First Amended Complaint was identical to the initial complaint. These Defendants prepared a motion to dismiss. A draft of the motion was again provided to Plaintiff's counsel as part of the Rule 3.01(g) conferral. During the scheduling hearing on July 8, 2024, Plaintiff sought and was granted leave to amend again. The Defendants did not file their motion to dismiss. The Second Amended Complaint was filed on July 12, 2024. However, other than changing the font type and size to comply with this Court's typography requirements, and removing Lee County from the state law counts, this Second Amended Complaint is identical to the First Amended Complaint. This is Plaintiff's third complaint and no further amendments should be granted.

('SAC") was filed on July 12, 2024. (ECF 42)[2]. Ms. King sued a total of nine defendants, which could be grouped in 4 groups: 1) individual law enforcement officers – Brett, Armato, Ward and Olivio; 2) governmental entities – Lee County and Sheriff Marceno in his official capacity; 3) individual medical defendants- Dr. Marasigan and Nurse Gustin; and 4) a corporation – Millenium Physician Group, LLC. (ECF 42).

3.     For the reasons stated below, Plaintiff's SAC is properly dismissed as it fails to state any claims for relief.

In support of this Motion, these Defendants would refer this Honorable Court to the Memorandum of Law attached hereto and by reference made a part hereof.

---

[2] The SAC contains the following counts against Defendants Lee County, Sheriff Marceno, Brett, Armato, Ward and Olivio:

Count I- Unlawful seizure in violation of the Fourth Amendment (42 U.S.C. § 1983) against Brett, Ward, Armato and Olivio;

Count II- Excessive force in violation of the Fourth Amendment (42 U.S.C. § 1983) against Brett, Ward, Armato and Olivio;

Count III- Unlawful search in violation of the Fourth Amendment (42 U.S.C. § 1983) against Brett, Ward and Armato;

Count IV- Violation of the Fourth Amendment based upon official policy or custom (Monell claim via 42 U.S.C. § 1983) against Marceno and Lee County;

Count V- Violation of the Fourth Amendment based upon failure to train (Monell claim via 42 U.S.C. § 1983) against Marceno and Lee County;

Count VI- Deprivation of liberty without due process of law in violation of the Fourteenth Amendment based upon official policy or custom (Monell claim via 42 U.S.C. § 1983) against Marceno and Lee County;

Count VII- Negligence per se for violation of F.S. 394.463 against Brett, Ward, Armato, Marasigan, Gustin and Millenium Physician Group;

Count VIII- False Imprisonment based on Baker Act against Marceno, Brett, Ward, Armato, Olivio, Millenium Physician Group, Gustin and Marasigan; and,

Count XI- Intentional Infliction of Emotional Distress against Marceno, Brett, Ward, Armato, Olivio, Millenium Physician Group, Gustin and Marasigan.

<u>**MEMORANDUM OF LAW**</u>

**I.     The SAC should be dismissed as an improper shotgun pleading**

To state a claim for relief, a federal complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a)(2), Fed. R. Civ. P. "Each allegation must be simple, concise, and direct." Rule 8(d)(1), Fed. R. Civ. P. "A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Rule 10(b), Fed. R. Civ. P. "Rules 8 and 10 work together to require the pleader to present his claims discretely and succinctly, so that his adversary can discern what he is claiming and frame a responsive pleading, the court can determine which facts support which claims and whether the plaintiff has stated any claims upon which relief can be granted, and, at trial, the court can determine that evidence which is relevant and that which is not.'" <u>Meide v. Pulse Evolution Corp.</u>, No. 3:18-cv-1037-J-34MCR, 2019 WL 4918264, at *1-2 (M.D. Fla. Oct. 4, 2019) (quoting <u>Fikes v. City of Daphne</u>, 79 F.3d 1079, 1082 (11th Cir. 1996)). A complaint that violates these rules is a shotgun pleading. <u>Barmapov v. Amuial</u>, 986 F.3d 1321, 1324 (11th Cir. 2021); <u>Weiland v. Palm Beach Cnty. Sheriff's Off.</u>, 792 F.3d 1313 (11th Cir. 2015).

The Eleventh Circuit has identified four categories of shotgun pleadings: "complaint[s] containing multiple counts where each count adopts the allegations of all preceding counts"; complaints "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action"; complaints that do

not separate into a different count each cause of action or claim for relief; and complaints that assert "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." Weiland, 792 F.3d at 1321-23.

Besides violating the rules, shotgun pleadings also "waste scarce judicial resources, inexorably broaden the scope of discovery, wreak havoc on appellate court dockets, and undermine the public's respect for the courts." Barmapov, 986 F.3d at 1324, quoting Vibe Micro, Inc. v. Shabanets, 878 F.3d 1291, 1295 (11th Cir. 2018). Notice is the guiding principle of the Eleventh Circuit's shotgun pleading analysis, and the key inquiry is whether the "failure to more precisely parcel out and identify the facts relevant to each claim materially increase[s] the burden of understanding the factual allegations underlying each count." Weiland, 792 F.3d at 1324.

Plaintiff King's SAC is a shotgun pleading. It contains a section titled "Background and other facts applicable to multiple causes of action", which is divided in several subparts: 1) "Defendant Gustin lures Ms. King to Millenium Physicians Group" (¶¶ 13-17); 2) "Events at Millenium Physicians Group leading up to the unlawful seizure of Ms. King" (¶¶18-26); 3) "Lee County Sheriff's Deputies arrive on the scene and effect the arrest of Ms. King" (¶¶27-39); 4) "The seizure and sadistic abuse of Ms. King continues for over 4.5 hours" (¶¶40-59); 5) "Defendant Olivio delivers Ms. King outside of Park Royal Hospital" (¶¶60-62); 6) "Ms. King's injuries and treatment received during her involuntary confinement at Park Royal Hospital" (¶¶63-69); 7) "Ms. King learns of the Baker Act for the first time and is released from

4

confinement upon seeking judicial review" (¶¶70-71); 8) "Financial damages sustained by Ms. King as a result of the events described herein" (¶¶72); and 8) "Satisfaction of Statutory Requirements" (¶73).

Counts I and II, which are Section 1983 claims against the individual law enforcement officers, incorporate paragraphs 18 through 72, which include the events that occurred before law enforcement arrived at Millenium Group which relate only to the medical Defendants (¶¶18-26), as well as after she was delivered to Park hospital, events which concern none of the Defendants. (¶¶63-72). Paragraphs 18 through 26 and 63 through 72 have absolutely nothing to do with the law enforcement defendants, yet by incorporating them into Count I and II, Plaintiff is attempting to hold the individual law enforcement defendants liable for actions not taken by them. These Counts fall within the second category of shotgun pleadings and should be dismissed.

Counts IV, V and VI- Section 1983 Monell claims against Marceno and Lee County, also incorporate paragraphs 18 through 72. In addition, it incorporates paragraphs 75 through 79 which is the entirety of Count I, paragraphs 81 through 90, which is the entirety of Count II, and, paragraphs 93 through 100, which is the entirety of Count III. (ECF 32, ¶¶101, 106, 114). These Counts fall within the first and second category of shotgun pleadings and should be dismissed.

Count VIII is a state law false imprisonment claim brought against all four groups of Defendants (except Lee County), collectively. It incorporates paragraphs 3 through 73, as well as paragraphs 119 through 129, which is the entirety of Count VII- a state law negligence claim against some of the defendants, collectively. Count XIII

5

is a state law claim for intentional infliction of emotional distress, also brought against all four groups of Defendants (except Lee County), collectively. It also incorporates paragraphs 3 through 73, as well as paragraphs 88 through 91 from Count II, and paragraphs 120 through 129, which is the entirety of Count VII. These Counts also fall within the first and second category of shotgun pleadings.

The collective or group pleading does not give each named defendant "fair notice of the allegations against" them and the grounds on which the claims rest. Auto. Alignment & Body Serv., Inc. v. State Farm Mut. Auto. Ins., 953 F.3d 707, 732 (11th Cir. 2020). While group pleading is appropriate sometimes without avoiding the shotgun pleading rule, such as when a "complaint can be fairly read to aver that all defendants are responsible for the alleged conduct", State Farm, 953 F.3d at 733, this is not the case here. The individual law enforcement defendants and Millenium Physicians Group corporation and its employees- are alleged to have engaged in very different behavior at different points in the timeline. The Millenium Physicians Group defendants were the first to engage with Plaintiff King (¶¶13-26), and then they summoned law enforcement officers to transport Ms. King. (Id., ¶27). Thereafter, it was the law enforcement officers who interacted with the Plaintiff and were involved in transporting her to a hospital. (Id., ¶¶28-62). The two groups of Defendants' conduct is not substantially similar or identical and so the collective allegations here necessarily violate the shotgun pleading rule.

All of these Counts, as pled, are guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular

cause of action" <u>Weiland</u>, 792 F.3d at 1321, and they leave the Defendants guessing as to which allegations are relevant to any of these claims to the exclusion of the others.

In addition, the SAC is also filled with arguments and case law[3], which eviscerates the purpose of a pleading. Taken as a whole, the Defendants cannot be expected to file an answer to such a complaint. These Defendants respectfully ask the Court to dismiss the SAC for failure to comply with federal rules of pleading.

## II.    Additional grounds for dismissal

### a.    *Plaintiff's state law claims against Sheriff Marceno are subject to dismissal for failure to comply with the mandatory condition precedent requirements of Section 768.28(6) (Counts VIII and XI)*

"To maintain a claim in tort against the State or one of its agencies, a plaintiff must meet the requirements of §768.28, which waives the government's sovereign immunity with respect to tort actions." <u>Woodburn v. State of Fla. Dep't of Child. & Fam. Servs.</u>, 854 F. Supp. 2d 1184, 1207–08 (S.D. Fla. 2011). "The statute sets out mandatory procedures that one must follow before suing pursuant to the waiver." <u>*Id.*</u> at 1208. Specifically, the statute provides in relevant part:

> An action may not be instituted on a claim against the state or one of its agencies or subdivisions unless the claimant presents the claim in writing to the appropriate agency,…, within 3 years after such claim accrues…"

§ 768.28(6)(a), (d). Because Section 768.28(6) is part of a statutory waiver of sovereign immunity, "it must be strictly construed." <u>Simmons v. Pub. Health Tr. of Miami-Dade Cnty.</u>, 338 So. 3d 1057, 1062–63 (Fla. 3rd DCA 2022), citing <u>Levine v. Dade County</u>

---

[3] ¶¶76, 87, 91, 93, 97, 98, 115, 129, 131.

School Board, 442 So. 2d 210, 212 (Fla. 1983). Proper notice under Section 768.28(6) is a condition precedent to bring suit against a government entity. Simmons, supra, citing Broward Cty. Sch. Bd. v. Joseph, 756 So. 2d 1077 (Fla. 4th DCA 2000). Also, the notice requirement of Section 768.28(6) cannot be waived unless expressly authorized by statute. Id.; Florida Statute §768.28(6)(b).

While Plaintiff King pleads compliance with all conditions precedent as required by §768.28, (ECF 42, ¶73), it is clear from Exhibit A attached to this motion, that this assertion is false. Documents attached to a motion to dismiss may be considered by this Court if such documents are (1) central to the plaintiff's claim, and (2) undisputed (notwithstanding a challenge to their authenticity). Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002). Exhibit A is an email which Plaintiff's counsel produced during a previous 3.01(g) conferral as proof that pre-suit notice was given to the Sheriff. This exhibit is central to Plaintiff's claim. However, this email does not constitute proper notice pursuant to Florida Statute 768.28(6)(b).

First, it was written and sent to the Sheriff by Plaintiff's sister, Stacy Maldonado, on October 6, 2023. The statute clearly requires that the notice is given by the claimant, in this case Ms. King (or her attorney, legal guardian, or someone with power of attorney over her). Stacy Maldonado is not the claimant in this case, does not have power of attorney over Ms. King, and is not her legal guardian.

Second, the email sent by a Ms. Maldonado, a non-claimant, was missing certain components required by § 768.28(6)(c)—specifically, the claimant's date of

birth, place of birth, social security number, or information regarding any unpaid prior adjudicated claim against the State. (Exhibit A).

Lastly, even if the email sent by Plaintiff's sister is proper notice, Plaintiff does not allege that it was actually received in hand by the agency. In <u>Percival v. Chronister</u>, 2024 WL 1012976, fn.1 (M.D.Fla. March 8, 2024), the Court noted: "Percival should remain aware that she must demonstrate that she has in fact satisfied § 768.28(6)'s notice requirement. **It is not clear that the proffer of an unsworn email, without more, would suffice**. See *Simmons v. Pub. Health Tr. Miami-Dade Cnty.*, 338 So. 3d 1057, 1065 (Fla. 3d DCA 2022) (explaining that because "the mailbox rule does not apply in the context of sovereign immunity cases" plaintiffs are "required to show that [their] notice of claim...was received, in hand, by [the relevant agency before the relevant deadline]").

Defendant Sheriff contends that the email seen in Exhibit A does not constitute proper notice under the statute. Therefore, the Office of the Sheriff did not waive sovereign immunity, and all state law claims against it (Counts VIII and XI) should be dismissed.

> ***b.    There are no factual allegations against Defendants Ward and Armato and they should be dismissed[4]***

---

[4] Plaintiff sues Defendants Armato and Ward for 1) Unlawful seizure in violation of the 4th Amendment (Count I); 2) Excessive Force in violation of the 4th Amendment (Count II); 3) Unlawful search in violation of the 4th Amendment (Count III); 4) Negligence per se for violation of F.S. 394.463 (Count VII); 5) False Imprisonment based on the Baker Act (Count VIII); 6) Intentional Infliction of Emotional Distress (Count XI).

Because they are sued in their individual capacity, the Plaintiff must sufficiently plead with factual allegations as to what their specific personal involvement was. Hale v. Tallapoosa Cnty., 50 F.3d 1579, 1582 (11th Cir. 1995) (To state a claim against a government official in his or her individual capacity, a plaintiff must allege the official was "personally involved in acts or omissions that resulted in the constitutional deprivation.") Plaintiff King fails to do so. In paragraph 39, Ms. King alleges "Upon information and belief, the source of which is Internal Affairs of the Lee County Sheriff's Office, Defendants Armato and Ward **were present at the Millenium Physician Group office at some point during the events described herein**." (emphasis added). Clearly, the Plaintiff does not know what exactly their involvement was, if any, and at what point during the incident. These conclusory allegations, made upon information and belief, are insufficient to satisfy Plaintiff King's pleading burden. Smith v. City of Sumiton, 578 Fed. Appx. 933, 936 n. 4. (11th Cir. 2014).

As the SAC does not contain any well-pleaded factual allegations as it relates to Defendants Armato and Ward which could plausibly give rise to an entitlement to relief as requested in Counts I, II, III, VII, VIII and XI, Defendants Armato and Ward should be dismissed.

### c. Count I- Unlawful Seizure in violation of the Fourth Amendment

The Fourth Amendment prohibits a seizure by involuntary examination "if there is no probable cause to believe the criteria set forth in in §394.463(1) have been met." Cochrane v. Harvey, 4:04-CV-475-RH-WCS, 2005 WL 2176874, at *3 (N.D.

Fla. Sept. 1, 2005). Based on the four corners of the SAC, probable cause, or at least arguable probable cause, existed to take Ms. King into custody under the Baker Act.

## Qualified Immunity

Police officers are entitled to qualified immunity when sued in their individual capacities under 42 U.S.C. §1983. Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). Qualified immunity shields an officer from suit when he is acting within the course and scope of her duties; that is, when alleged constitutional violations occur during the performance of a discretionary function. Case v. Eslinger, 555 F.3d 1317, 1325 (11th Cir.2009). Qualified immunity is certain as long as the officer's conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Grider v. City of Auburn, Ala., 618 F.3d 1240, 1254 (11th Cir.2010).

It is important to note that, in the context of involuntary commitments, "[i]t is evident from Florida's statutory scheme that the legislature intended to grant civil immunity to law enforcement officers who act in good faith compliance with the Mental Health Act in connection with the involuntary examination of a person pursuant to Florida's Baker Act. Fla. Stat. Ann. § 394.459." Whitcomb v. City of Panama City, 5:13-CV-30-RS-EMT, 2013 WL 6859095, at *7 (N.D. Fla. Dec. 30, 2013) (emphasis added). As such, Deputies Brett and Olivio, as well as Armato and Ward should the Court consider the factual allegations against them sufficient, are entitled to qualified immunity in this case.

In order to invoke qualified immunity, it is incumbent for a law enforcement officer to prove that, at the time the alleged constitutional violation occurred, he was acting within the scope of her discretionary authority as an officer. <u>Case</u>, 555 F.3d at 1325. Here, there is no question that the individual deputies were acting within the scope of their discretionary authority in their interaction with Ms. King. <u>Moore v. Pederson</u>, 806 F.3d 1036, 1042 (11th Cir. 2015) (citation omitted) (holding there was "no question" that the defendant was acting within the scope of his discretionary authority when he "engaged in all of the challenged actions while conducting investigative and arrest functions as a deputy sheriff and while on duty"). Accordingly, the burden shifts to Plaintiff to demonstrate that qualified immunity is not appropriate. <u>Pederson</u>, 806 F.3d at 1042.

Nonetheless, the Defendants will outline herein why they remain entitled to qualified immunity. Whether or not Ms. King's seizure under the Baker Act was lawful depends upon whether Deputy Brett had probable cause to believe that King met the standard under the Baker Act provisions. In order for a seizure to be lawful under the Fourth Amendment, an officer must establish only "arguable probable cause." <u>Scarbrough v. Myles</u>, 245 F.3d 1299, 1302 (11th Cir.2001) (quoting <u>Redd v. City of Enterprise</u>, 140 F.3d 1378, 1384[11th Cir.1998]). Arguable probable cause is determined "in light of the information the officer possessed." <u>Durruthy v. Pastor</u>, 351 F.3d 1080, 1089 (11th Cir.2003) (quotation marks omitted). Accordingly, "[t]he question here is whether Deputy Brett had arguable probable cause, or whether 'reasonable officers in the same circumstances and possessing the same knowledge

as Deputy Brett could have believed that probable cause existed' " to seize and then transport Plaintiff King to the hospital. Id. (quoting Von Stein v. Brescher, 904 F.2d 572, 579 (11th Cir. 1990)); see also Bright v. Thomas, 754 F. App'x 783, 786 (11th Cir. 2018) ("To defeat qualified immunity, [the plaintiff]'s factual allegations must demonstrate that reasonable officers— possessing the same knowledge as the defendants—could not have believed that [the plaintiff] appeared to meet the criteria for involuntary examination.").

Here, although Deputy Brett did not make the determination that Ms. King fits the criteria for involuntary commitment, he clearly had reason to believe that she did because the doctor completed a Certificate of Professional Initiating Involuntary Examination. (ECF 42, ¶122). This is one of the ways prescribed by Florida Statute 394.463(2) to cause an individual's involuntary examination. Under those circumstances, the Baker Act's obligations with respect to law enforcement officers are limited to the transportation of persons who are taken into custody under the Act to an appropriate receiving facility for examination, which is exactly what was done here. Fla. Stat. § 394.462(1); see also McGough v. Marion Cnty., No. 506CV-364-OC-10GRJ, 2008 WL 2073907, at *15 (M.D. Fla. May 14, 2008).

A reasonable officer in Deputy Brett's position could have believed that there was probable cause, or at least arguable probable cause, to take Ms. King into custody and transport her to the hospital based on the doctor's Certificate Initiating Involuntary Examination, certifying that King fit the criteria enumerated in Florida Statute §394.463.

Because Deputy Brett's actions did not violate the Baker Act statute, it follows that he did not violate Plaintiff King's constitutional rights by taking her to the hospital for an involuntary examination, and he is entitled to qualified immunity. In the event the Court finds sufficient factual allegations against Defendants Ward and Armato, they are also entitled to qualified immunity on the same basis as Defendant Brett.

As to Defendant Olivio, it is clear from the SAC that he did not become involved until "hours" after Deputy Brett's encounter with Ms. King and after Ms. King was already taken into custody pursuant to the Baker Act. (ECF 42, ¶¶51-62). And his involvement was limited to transporting Ms. King to the hospital, via a transport van. (Id.). Thus, there are no grounds to maintain this count against Defendant Olivio. Even if there was, he too is entitled to qualified immunity on the same basis as Defendant Brett.

### d. *Count II- Excessive Force*

#### i. Fourth Amendment

The Fourth Amendment's guarantee against unreasonable searches and seizures includes the right to be free from the excessive use of force. U.S. Const. amend. IV, see Graham v. Connor, 490 U.S. 386, 394–95 (1989). To evaluate whether an officer has used excessive force in violation of the Fourth Amendment, Courts employ an objective-reasonableness test, asking "whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Graham, 490 U.S. at 397. Courts ascertain the objective reasonableness of a seizure by balancing the "nature and

quality of the intrusion" against the "governmental interest at stake." <u>Graham</u>, 490 U.S. at 396 (internal quotation marks omitted). Reasonableness is "judged from the perspective of the reasonable officer on the scene" without the benefit of hindsight. <u>Id.</u> at 396, 109 S.Ct. at 1872.

The Court in <u>Graham</u> set out a three-factor test to aid the courts in assessing objective reasonableness in the typical situation of a law-enforcement officer accused in a civil suit of using excessive force during an arrest. Those three factors are: (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," and (3) "whether he is actively resisting arrest or attempting to evade arrest by flight." <u>Id.</u> However, the fact that the <u>Graham</u> factors were expressed in the context of one of the many types of Fourth Amendment seizures that have been recognized by the law, namely an arrest, does not lead to the conclusion that those factors must be rigidly applied to all types of Fourth Amendment seizure cases, even those that do not involve an arrest. The Fourth Amendment's objective reasonableness standard is far more flexible than that and requires explanation and application of the law in the context of a particular case. <u>Scott v. Harris</u>, 550 U.S. 372, 383 ("Although respondent's attempt to craft an easy-to-apply legal test in the Fourth Amendment context is admirable, in the end we must still slosh our way through the fact bound morass of reasonableness. Whether or not Scott's actions constituted application of deadly force, all that matters is whether Scott's actions were reasonable.") (internal quotes omitted)).

This case does not fit neatly within <u>Graham</u> as it involves a lawful Baker Act, not the commission of a crime or an arrest. Thus, the <u>Graham</u> factors should not be applied to this type of factual scenario/seizure because the law enforcement defendants would start out with two strikes against them as there was no "crime" committed and no resisting of an "arrest". Instead, Plaintiff was lawfully Baker Acted, and she obstructed Deputy Brett by refusing to comply with lawful orders to give him her purse before going into the bathroom (¶¶30, 31, 33), resisted efforts to remove her purse (¶¶ 31, 33) and eventually "relented and released the purse, hitting the deputy in the chest (¶34). As a result, Defendant Brett "slammed" her against the wall, put one handcuff on one of her wrists, delivered three bursts of pepper spray to her face, and then fully handcuffed her. (¶¶34, 35, 36). The SAC alleges that after being restrained, she fell to the ground (¶37); there are no allegations that Brett threw her to the ground and otherwise used any type of force on her after she was restrained with both hands behind her back.

The focus of the Court should be on whether the minimal amount of force used to gain compliance during this lawful Baker Act violated the Fourth Amendment, without addressing the three factors used as an aid in assessing objective reasonableness in the typical situation – an arrest.

### ii. The Force Used Was Objectively Reasonable

State law authorizes law enforcement to take a person who appears to meet the criteria for involuntary examination into custody and deliver the person or have him or her delivered to an appropriate, or the nearest, facility within the designated

receiving system for examination. Fla. Stat. Section 394.463. Thus, once it was determined that Plaintiff met the criteria under Floria's Baker Act statute based on the Certificate of Professional Initiating Involuntary Examination, and her transport to a facility was required, Ms. King was lawfully in Deputy Brett's care, custody and control, and for her safety, he did not allow her to go into the bathroom by herself, with her purse, not knowing what she had in that purse[5]. After all, she was just deemed by a medical professional to meet the criteria for involuntary commitment under the Baker Act. Deputy Brett was authorized to take her into custody and deliver her to the mental health facility. Plaintiff did not have a right to obstruct Dep. Brett by defying his command to give him her purse before using the bathroom, and resisting his efforts to hold onto the purse while she used the bathroom. Moreover, even though she was not officially charged, she committed a simple battery on Deputy Brett when she released the purse, hitting him in the chest. State of Florida v. Hearns, 961 So. 2d 211 (Fla. 2007) ("existing case law makes it clear that any intentional touching, no matter how slight, is sufficient to constitute a simple battery." See also D.C. v. State, 436 So. 2d 203(Fla. 3rd DCA 1983) (it is clear that any intentional touching of another person against that person's will is a criminal battery.) The touching is "satisfied by any physical contact, no matter how slight." United States v. Vail-Bailon, 868 F.3d 1293, 1305 (11th Cir. 2017); Miller v. State, 636 So. 2d 144, 150 (Fla. 2d DCA 1994) (finding

---

[5] Prescription pill bottles were found upon searching the purse after she was taken into custody. (¶94).

sufficient evidence to allow battery charge where the defendant "bumped against [the officer] with the side of his body").

Thus, Deputy Brett was permitted to use some amount of force to overcome that resistance and take Plaintiff into custody. <u>Graham,</u> 490 U.S. 386 at 396 ("[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it."). Although the Plaintiff was pushed against the wall, one handcuff placed on one of her wrists, pepper sprayed and then fully restrained with the hands behind her back, the force used was minimal and lawful.

Indeed, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." <u>Graham</u>, 490 U.S. at 396, 109 S.Ct. 1865 (internal citation and quotation marks omitted). Here, Ms. King doesn't allege that she was kicked, punched, pepper sprayed or even thrown to the ground after she was fully restrained. Based on the allegations in the SAC, it is evident the minimal amount of force used by Deputy Brett to take custody of Plaintiff and deliver her to a mental health facility was objectively reasonable and did not rise to the level of a constitutional violation. <u>Scott v. Battle</u>, 688 F. App'x 674, 677 (11th Cir. 2017) (quoting <u>Mobley v. Palm Beach Cty. Sheriff Dep't</u>, 783 F.3d 1347, 1356 (11th Cir. 2015) (alteration and internal quotation marks omitted) ("Our decisions demonstrate that the point at which a suspect is handcuffed and poses no risk of danger to the officer is often the pivotal point for excessive force claims.")).

**iii. The Law was not Clearly Established**

As addressed above, the force used on the Plaintiff was not excessive as a matter of law. As a result, the Court need not assess whether the alleged violation was clearly established. Garczynski v. Bradshaw, 573 F.3d 1158, 1170 (11th Cir. 2009) (citing Case v. Eslinger, 555 F.3d 1317, 1328 (11th Cir. 2009). That said, even if the Court finds that Plaintiff's constitutional rights were violated, Ms. King cannot meet her burden of showing that qualified immunity is not appropriate. "The Supreme Court has emphasized that there is no precise test or magical on/off switch to determine when an officer is justified in using . . . force." Garczynski, 573 F.3d at 1166. "[Courts] have repeatedly ruled that a police officer violates the Fourth Amendment, and is denied qualified immunity, if he or she uses gratuitous and excessive force against a suspect who is under control, not resisting, and obeying commands." Saunders v. Duke, 766 F.3d 1262, 1265 (11th Cir. 2014) (collecting cases). Only when an officer's conduct is "clearly excessive" does the door to qualified immunity slam shut. Kirkland v. Mosaic Fertilizer, LLC, No. 8:14-CV- 1715-T-24TGW, 2015 WL 4042100, at *6 (M.D. Fla. July 1, 2015)

In order to determine whether a right is clearly established, Courts look to the precedent of the Supreme Court of the United States, this Court's precedent, and the pertinent state's supreme court precedent, interpreting and applying the law in similar circumstances. McClish v. Nugent, 483 F.3d 1231, 1237 (11th Cir .2007). A plaintiff may establish that the law clearly established that a particular amount of force was excessive in any of three ways. First, a plaintiff may "point to a materially similar case [that has] already decided that what the police officer was doing was unlawful." Lee

v. Ferraro, 284 F.3d at 1198 (citation and quotation marks omitted and alteration in original). Second, a plaintiff can "show that a broader, clearly established principle should control the novel facts in this situation." Mercado v. City of Orlando, 407 F.3d 1152, 1159 (11th Cir. 2005). Third, a plaintiff may rely on the "obvious clarity" path, which applies when "the official's conduct lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of case law." Priester v. City of Riviera Beach, Fla., 208 F.3d 919, 926 (11th Cir. 2000) (citation and quotation marks omitted). In order for a right to be clearly established for the purposes of qualified immunity, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). This inquiry must be undertaken "in light of the specific context of the case, not as a broad general proposition." Saucier v. Katz, 533 U.S. 194, 201 (2001). That's especially true in the Fourth Amendment context, where the Court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine will apply to the factual situation confronted. Id.

Here, the Defendants have found no materially similar case prior to this incident that established that Dep. Brett's conduct while effectuating this Baker Act was unconstitutional. In addition, there is not a broader, clearly established principle that should control the facts in this situation. Nor is this a case of "obvious clarity" where case law inevitably leads every reasonable officer in the Defendants' position to conclude the force was unlawful. Sebastian v. Ortiz, 918 F.3d 1301, 1308 (11th Cir.

2019) ("[Q]ualified immunity applies unless application of the standard would inevitably lead every reasonable officer in [the officer's] position to conclude the force was unlawful.") (citation omitted). Accordingly, Deputy Brett is entitled to qualified immunity as a matter of law as his actions did not violate a clearly established right for which every reasonable officer would have known. Should the Court determine that the SAC contains sufficient factual allegations against Armato and Ward as to the excessive force claim, they are also entitled to qualified immunity on the same basis as Dep. Brett.

Moreover, the Court should find that the level of force used here was de minimis. "The application of de minimis force, without more, will not support a claim for excessive force in violation of the Fourth Amendment." <u>Sebastian</u>, 918 F.3d at 1308; <u>see</u> <u>Jackson v. McCurry</u>, 762 F. App'x 919, 933 (11th Cir. 2019) ("[D]e minimis force will only support a Fourth Amendment excessive force claim when an arresting officer does not have the right to make an arrest."). That is true even if the de minimis force is unnecessary. <u>Taylor v. Taylor</u>, 649 F. App'x 737, 746 (11th Cir. 2016) ("[D]e minimis force, even when it is unnecessary, is not unlawful."). The Eleventh Circuit has repeatedly held that pushes, shoves, and grabs (and the like) fall into the category of de minimis force and are insufficient to overcome qualified immunity. <u>Gomez v. United States</u>, 601 F. App'x 841, 850 (11th Cir. 2015) ("This Court has held that a variety of physical force techniques used by police on unhandcuffed individuals constituted de minimis force that does not rise to excessive force that could violate the Fourth Amendment.")

### iv.    *Additional grounds for dismissal of this Count*

Despite the label given (Excessive force), from the body of this Count, it appears that the Plaintiff is also attempting to bring a Section 1983 claim for deliberate indifference to a serious risk of harm, following her transport in the agency's transport van not equipped with a seatbelt, while she was handcuffed and shackled. (¶¶53, 55, 56, 56, 83, 90).  These are both distinct constitutional claims which should have been brought as separate claims. Regardless, the SAC lacks any facts suggesting deliberate indifference, and the deprivation of safety restraints in the agency's transport van or lack of seatbelts in transport alone does not rise to the level of cruel and unusual punishment.

In the Eleventh Circuit, transporting prisoners in vans without seatbelts does not amount to a constitutional violation. Smith v. Sec'y, Dept. of Corr., 252 Fed. Appx. 301 (11th Cir.2007) (finding that riding in a van without seats, seatbelts, or windows was not a deprivation of the minimal measure of life's necessities or was it something that modern society would find intolerable.); Quinlan v. Pers. Transp. Servs. Co., LLC, 329 Fed.Appx. 246 (11th Cir.2009) (No constitutional violation when inmate was shackled and transported without a seatbelt from Illinois county jail to Florida prison.); Poulin v. Jeter, 6:08–cv–299–Orl–31KRS, 2010 U.S. Dist. LEXIS 96483, 35–36, 2010 WL 3701384 (M.D.Fla. Sept. 15, 2010) (Transporting prisoners in vans without seatbelts does not amount to a constitutional violation.); Bryant v. Downs, 6:09–cv–1670–Orl–28KRS, 2010 U.S. Dist. LEXIS 63919, 15–16, 2010 WL 2593564 (M.D. Fla. June 29, 2010) ("Plaintiff has failed to state a colorable claim for

relief" because "[t]he Eleventh Circuit has determined that transporting prisoners in vans without seatbelts does not amount to a constitutional violation.").

Plaintiff King allegations that she was placed in a small metal box with no seatbelt, and that she did not have the ability to brace herself as she was thrown about with every movement of the van, clearly do not rise to the level of deliberate indifference. Simmons v. Yates, 3:13–cv–384–J–99TJC–JRK, 2013 U.S. Dist. LEXIS 173445 (M.D.Fla. Oct. 21, 2013).

Thus, given the precedent of the Eleventh Circuit and the lack of any specific allegations evidencing deliberate indifference, this Count should be dismissed to the extent it attempts to assert a deliberate indifference claim related to the manner in which she was transported by Defendant Olivio to the hospital.

**e. *Count VII- Negligence Per Se for Violation of F.S. 394.463 against Brett, Ward and Armato;***

There is no cause of action of "negligence per se" with respect to Section 394.463, Fla. Stat. The statute does not impose strict liability and negligence per se is not a cause of action under this statute. Nonetheless, to the extent there is such a cognizable claim, it fails for additional reasons. Plaintiff contends that Defendants Brett, Ward and Armato were negligent because they did not "independently ascertained, investigated nor concluded that Ms. King met the criteria for involuntary examination nor ensured that the criteria or involuntary examination was adhered to by a medical professional (i.e., that the certificate for involuntary commitment was

executed by a qualified medical professional that had examined Ms. King within the last 48 hours)." (¶126). But there is nothing in the language of the statute, or in the law, requiring a law enforcement called to execute a transport of an individual to the hospital after a doctor, or anyone else listed in the statute executed the required certification form, to personally verify any of the information in the certification form, or second guess that information. However, what the statute clearly mandates, is that the law enforcement officer "shall take into custody the person named in the certificate and deliver him or her to the appropriate, or nearest, facility within the designated receiving system pursuant to s. 394.462 for involuntary examination." Fla. Stat. § 394.463(2)(a)(3).

A negligence claim under Florida law has four elements that must be proved: (1) the existence of a duty of care, (2) breach of that duty, (3) legal or proximate causation, and (4) actual damages. Anderson v. Snyder, 389 F. Supp. 3d 1082, 1090 (S.D. Fla. 2019), citing Wallace v. Dean, 3 So.3d 1035, 1046 n. 18 (Fla. 2009). The existence of a duty of care is a question of law that a court must decide. Id. Plaintiff's SAC cannot establish the existence of a duty of care owned to Ms. King because the police function of responding to emergency calls pursuant to the Baker Act is a category II, law enforcement activity, for which the police owe a duty to the general public rather than to individual citizens. Anderson, F. Supp. 3d 1082, 1093. Without a duty of care, this negligence claim fails as a matter of law.

### f. Count VIII- False imprisonment based on the Baker Act

"When a law enforcement officer takes a person into custody for involuntary examination pursuant to Section [ ] 394.463 [of the Baker Act], this encounter is an involuntary deprivation of liberty and thus must be lawful to withstand a claim for false imprisonment." Whitcomb v. City of Panama City, No. 5:13-cv-30-RS-EMT, 2013 WL 6859095, at *7 (N.D. Fla. Dec. 30, 2013). As demonstrated in section II(c), Ms. King was lawfully taken into custody by law enforcement after Dr. Marasigan executed a Certificate of Professional Initiating Involuntary Examination. Thus, Count VIII fails to state a claim for false imprisonment, and should be dismissed.

Moreover, this count fails against the Defendant Sheriff because Plaintiff is barred from bringing a claim against him in official capacity, on the basis of conduct by the individual Defendants that was in bad faith, wanton or malicious. (Fla. Stat. § 768.28(9)). Here, Plaintiff alleges, albeit in a general manner, that the individual defendants acted in bad faith and/or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights and safety." (¶123). Therefore, as pled, Plaintiff's false imprisonment claim against the Sheriff must be dismissed. Fletcher v. City of Miami, 567 F. Supp. 2d 1389, 1394 (S.D. Fla. 2008).

### g. Count XI- Intentional Infliction of Emotional Distress

A claim for intentional infliction of emotional distress requires either intent or reckless conduct, which has been deemed equivalent to "willful and wanton conduct" as described in Florida Statute § 768.28(9)(a). Anderson v. City of Groveland, No. 5:15-CV-26-OC-30PRL, 2015 WL 6704516, at *8 (M.D. Fla. Nov. 2, 2015). As a result, this claim against Sheriff Marceno in his official capacity is also barred by

sovereign immunity. Id., citing Zabriskie v. City of Kissimmee, No. 6:10-cv-70-Orl-19KRS, 2010 WL 3927658, at *4 (M.D. Fla. Oct. 4, 2010); see also Williams v. City of Minneola, 619 So. 2d 983, 987 (Fla. 5th DCA 1993) (concluding that the "intentional or reckless" element of a claim for intentional infliction of emotional distress under Florida law equates to "wanton and willful" conduct for which Florida has not waived sovereign immunity).

As it relates to this claim against the individual law enforcement defendants it is insufficiently pled and should be dismissed. "[T]he elements of intentional infliction are (1) intentional or reckless conduct (2) that is "outrageous" in that it is "beyond all bounds of decency" and "utterly intolerable in a civilized community" (3) and that causes the victim emotional distress (4) that is "severe." Kim v. Jung Hyun Chang, 249 So. 3d 1300, 1305 (Fla. 2d DCA 2018) (citations omitted). See also Moore v. Pederson, 806 F.3d 1036, 1053 (11th Cir. 2015).

As to the second element, "[t]o successfully pursue a cause of action for intentional infliction of emotional distress, the plaintiff must show conduct so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Byrd v. BT Foods, Inc., 948 So. 2d 921, 928 (Fla. 4th DCA 2007) (internal quotation marks and citations omitted). "It is not enough that the intent is tortious or criminal; it is not enough that the defendant intended to inflict emotional distress; and it is not enough if the conduct was characterized by malice or aggravation which would entitle the plaintiff to punitive damages for another tort." State Farm

Mut. Auto. Ins. Co. v. Novotny, 657 So. 2d 1210, 1213 (Fla. 5th DCA 1995) (citation omitted).

"Whether conduct is outrageous enough to support a claim of intentional infliction of emotional distress is a question of law, not a question of fact." Liberty Mut. Ins. Co. v. Steadman, 968 So. 2d 592, 595 (Fla. 2d DCA 2007) (citations omitted). See also Nassar v. Nassar, 853 F. App'x 620, 622 (11th Cir. 2021). This must be evaluated on an objective basis, and plaintiff's subjective response to the conduct does not control. Blair v. NCL (Bahamas) Ltd., 212 F. Supp. 3d 1264, 1270 (S.D. Fla. 2016). "The standard is extremely high" under Florida law. Hendricks v. Rambosk, No. 2:10-cv-526-FtM-29DNF, 2011 WL1429646, *4 (M.D. Fla. Apr. 14, 2011).

As to the fourth element, "severe emotional distress means emotional distress of such a substantial quality or enduring quality[ ] that no reasonable person in a civilized society should be expected to endure it." Kim, 249 So. 3d at 1305 (citation omitted); see also Brown v. Bellinger, 843 F. App'x 183, 188 (11th Cir. 2021).

Taking the allegations in the light most favorable to Plaintiff King, even if true, what she accuses the defendants are doing does not rise to the level of conduct necessary to support a claim for intentional infliction of emotional distress. Pena v. Marcus, 715 F. App'x 981, 982, 989 (11th Cir. 2017) (per curiam) (finding that the sheriff deputies' conduct was not outrageous for purposes of an intentional infliction of emotional distress claim when they broke into the plaintiff's home to search it, fractured the plaintiff's foot, hit the plaintiff in the shoulder with a rifle, and caused physical damage to her home). See also Foreman v. City of Port St. Lucie, 294 F.

App'x 554, 557 (11th Cir. 2008) (per curiam) (stating that a police officer's act of pointing an unloaded BB gun at a man's chest and pulling the trigger while his wife, who thought the gun was loaded, watched, was not outrageous enough under Florida law); Rubio v. Lopez, 445 F. App'x 170, 172-173, 175 (11th Cir. 2011) (finding failure to allege sufficient outrageous conduct where deputy sheriff hobble-tied arrestee on black asphalt pavement in sun, resulting in second-degree burns to face and chest); Vilceus v. City of W. Palm Beach, No. 08-80968-CIV, 2009 WL 2242604, at *5 (S.D. Fla. July 27, 2009) (finding that officers' actions in shoving plaintiff forcefully into a chair, grabbing him by the neck and choking him, destroying evidence of innocence, and needlessly prolonging his detention was "clearly wrong" but did not rise to the level of outrageousness required by Florida law); Casado v. Miami-Dade Cnty., 340 F. Supp. 3d 1320 (S.D. Fla. 2018) (County detectives' alleged conduct in repeatedly punching arrestee in face, slamming him on hood of his car, arresting him without probable cause, and fabricating evidence against him was not so outrageous and beyond all bounds of decency as to be regarded as odious and utterly intolerable in civilized community, thus precluding arrestee's intentional infliction of emotional distress claim under Florida law.)

Moreover, Plaintiff has not adequately pled allegations with respect to the last element—the resulting mental suffering and its severity. "[S]evere emotional distress means emotional distress of such a substantial quality or enduring quality[ ] that no reasonable person in a civilized society should be expected to endure it." Brown v. Bellinger, 843 F. App'x 183, 188 (11th Cir. 2021). The SAC offers no specific

allegations as to any mental suffering Plaintiff endured or as to the degree of such mental suffering. This is insufficient as a matter of law. See generally Frias v. Demings, 2011 WL 4903086, at *7 (M.D. Fla. Oct. 14, 2011) ("The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it.") (citing Restatement (Second) of Torts § 46, cmt. J (1965)). See e.g., Bickel v. City of Coral Springs, No. 17-CV-60606, 2017 WL 2439078, at *3 (S.D. Fla. June 6, 2017) (complaint alleging plaintiff suffers from severe emotional distress not enough); Woodhull v. Mascarella, 2009 WL 1790383, at *3 (N.D. Fla. 2009) ("Plaintiff has continued to offer no facts to support her conclusory allegations of 'severe' emotional distress.").

Taking the facts in the light most favorable to Plaintiff, Defendants Brett and Olivio's actions as alleged in the SAC (as well as Armato and Ward's unspecified actions) do not demonstrate conduct that was so outrageous as to go beyond all bounds of decency, and to be regarded as odious and utterly intolerable in a civilized community. As a result, Count XI should be dismissed.

    **h.**      *Count IV-Monell claim (violation of 4th Amendment);*
            *Count V-Monell claim (failure to train); and*
            *Count VI- Deprivation of Liberty Without Due Process of Law in Violation*
            *of the 14th Amendment;*

The doctrine of respondeat superior does not apply in 42 USC § 1983 cases. Board of County Com'rs of Bryan County, Okl. v. Brown, 520 U.S. 397, 403 (1997). It has long been established that a plaintiff may only sue a governmental entity including a Sheriff, under 42 U.S.C. § 1983, for deprivations of a federal right for which

a "policy" or "custom" of the governmental entity was the moving force. <u>Monell v. Dept. of Soc. Servs.</u>, 436 U.S. 658, 695 (1978).

The Eleventh Circuit has recognized that to establish §1983 liability against a governmental entity, "a plaintiff must allege facts showing: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." <u>Gurrera v. Palm Beach County Sheriff's Office</u>, 657 Fed. App'x. 886, 893 (11th Cir. 2016) (citing to <u>McDowell v. Brown</u>, 392 F.3d 1283, 1289 (11th Cir. 2004). The key to the "policy" prong of § 1983 liability, is that at minimum, the action that is alleged to be unconstitutional must implement or execute a "decision officially adopted and promulgated" by the governmental entity. <u>Id</u>. Thus it is not enough for a §1983 plaintiff merely to identify conduct properly attributable to the governmental entity's agents. <u>Brown</u>, 520 U.S. at 404; <u>Brown v. Neumann</u>, 188 F. 3d 1289 (11th Cir. 1999) (holding that deputy sheriffs are not policymakers for the Sheriff simply by virtue of being employed by the Sheriff). Rather, the "policy" prong ensures that a plaintiff also demonstrate that the governmental entity's deliberate action was taken with the "requisite degree of culpability and [to] demonstrate a *direct causal link between the municipal action and the deprivation of federal rights."* <u>Brown</u>, 520 U.S. at 404. In other words, requiring a "policy" ensures that a governmental entity is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or those officials whose acts may fairly be said to be those of the governmental entity. <u>Id</u> at 403-404.

Additionally, in order to state a cause of action for deprivation of constitutional rights against a governmental entity under §1983, it is clear that the Plaintiff must plead the official policy or practice that purportedly caused his injury. Nias v. City of Florida City, 2008 WL 2332003 (S.D. Fla. 2008) (holding that §1983 claim against municipality should be dismissed because the claim only included "vague and conclusory allegations of customs or policies" and dismissing claim because the "Complaint fails to allege any specific City policy, custom, or training inadequacy"); see also Perez v. Metropolitan Dade County, 2006 WL 4056997 (S.D. Fla. 2006)(dismissing complaint and stating that "a plaintiff may [not] simply put forth vague and conclusory allegations alleging the existence of an official policy...the simple mention of 'policy and/or custom' is not enough").

Here, the single reference to an official policy is in paragraph 103 of Count IV. However, these allegations are made "upon information and belief", and are insufficient to satisfy a plaintiff's pleading burden and the Court does not have to take such allegations as true in ruling on a Rule 12(b)(6) motion. Smith v. City of Sumiton, 578 Fed. Appx. 933, 936 n. 4 (11th Cir. 2014) (citing Mann v. Palmer, 713 F.3d 1306, 1315 (11th Cir. 2013). Regardless, even if these allegations are taken as true, the SAC lacks any supporting factual allegations as to how the cited policy directly caused the violation of Ms. King's rights.

To establish the existence of a custom or practice, it is generally necessary to show a persistent and wide-spread practice of the alleged unconstitutional behavior that existed before the allegations in the SAC which arose on March 24, 2023 and

which amounted to the practice or custom of the Sheriff's Office at the time of the subject incident. Moreover, knowledge of such customs must be attributable to the Sheriff in his official capacity as a policy level-making official. Normally, random acts or isolated incidents are insufficient to establish a custom or practice. Depew v. City of St. Mary, 787 F.2d 1496, 1499 (11th Cir. 1986); see also Brooks v. Scheib, 813 F.2d 1191 (11th Cir. 1987); Brown v. City of Fort Lauderdale, 923 F.2d 1474 (11th Cir. 1991).

Moreover, where Ms. King's claim against the Sheriff and Lee County is one of deliberate indifference by failing to train (Count V), the United States Supreme Court has held that the mere allegation that one particular officer has been unsatisfactorily trained is insufficient as a matter of law to establish a custom or policy. Bd. of County Comm'rs of Bryan County, Oklahoma v. Jill Brown, 520 U.S. 397, 404-15 (1997)(explaining that a failure to train claim requires a deficient training program, necessarily intended to apply over time to multiple employees rather than factors peculiar to the officer involved in a particular incident); City of Canton v. Harris, 489 U.S. 378, 390-91 (1989)("That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program."); Lewis v. City of West Palm Beach, Fla., 561 F. 3d 1288, 1293 (11th Cir. 2009) ("[T]he focus must be on the adequacy of the training programs in relation to the tasks the particular officers must perform, and not merely on the training deficiencies for a particular officer.") (quotation and citation omitted); Blankenhorn v. City of Orange, 485 F. 3d 463, 484

(9th Cir. 2007) ("[T]he failure to train a single officer is insufficient to establish a municipality's deliberate policy.").

Here Counts IV, V and VI of the Amended Complaint contain only boilerplate language of any alleged policy or practice of the Sheriff which could have caused any alleged violation of Plaintiff's constitutional rights and is otherwise woefully inadequate in terms of factual support for such a claim. Therefore, Defendants Sheriff Marceno and Lee County are entitled to dismissal of these claims.

### i. Count III- Unlawful Search in Violation of the Fourth Amendment

This Count is subject to dismissal. The search of Ms. King's wallet and purse was not unconstitutional. As already demonstrated in section II(c), there was probable cause or at least arguable probable cause to take Ms. King into custody pursuant to the Baker Act, which is a Fourth Amendment seizure. Bright v. Thomas, 754 F. Appx. 783 (11th Cir. 2018). When law enforcement makes an arrest, or in this case, takes someone into custody under the Baker Act, the officer may search the suspect in order to remove any weapons and to search for and seize any evidence on the suspect's person in order to prevent its concealment or destruction. Otherwise, the officer's safety might well be endangered, and the arrest or seizure itself frustrated. United States v. Robinson, 414 U.S. 218, 226 (1973). Because Ms. King was lawfully taken into custody, the Defendants had the authority to search her purse and wallet. United States v. Sonntag, 684 F.2d 781 (11th Cir. 1982) (a search of a defendant's wallet which occurred several hours after arrest and after the defendant had been transported for booking was a valid search incident to arrest.)

Thus, the search of Ms. King's purse and wallet did not violate her constitutional rights, and the Defendants are entitled to qualified immunity on this claim.

### j.     *Lee County is not a proper party*[6]

Lee County cannot be liable because the Sheriff is not a county employee or agent, the County does not employ, train, discipline or supervise the Sheriff's deputies, and the County has no role in the law enforcement function of the Sheriff. It is undisputed but that the Sheriff is a state constitutional officer and that as to the law enforcement function, which is a state not a county function, he acts in that role, not as a county official. McMillian v. Johnson, 88 F.3d 1573, 1582-83 (11th Cir. 1996).

## CONCLUSION

Defendants Lee County, Sheriff Marceno, Brett, Armato, Ward and Olivio's motion should be granted.

## LOCAL RULE 3.01(g) CERTIFICATION

Pursuant to Local Rule 3.01(g), undersigned certifies that she conferred with Plaintiff's counsel Kristina Heuser, Esq., regarding the relief sought in this Motion, and she indicated that the Plaintiff objects.

---

[6] Lee County recognizes this Court's previous rulings on the issue, and particularly, its observation that the Eleventh Circuit has "not been entirely consistent on whether the relevant entity in an official-capacity suit against a sheriff in Florida is the County or the Sheriff's Department (as a unit operating autonomously from the County)." (Andrade v. Rambosk, Case No. 22-cv-482-JLB-KCD ECF 66, citing Brown v. Neumann, 188 F.3d 1289, 1290 n.2 (11th Cir. 1999)). However, the Defendant raises this argument for preservation of the record.

<u>**CERTIFICATE OF SERVICE**</u>

Undersigned counsel hereby certifies that on July 26, 2024, an accurate copy of this document was electronically served upon all counsel of record through the CM/ECF Portal or another authorized means.

<u>*/s/ Adriana M. Jisa*</u>
ADRIANA M. JISA, ESQUIRE
Fla. Bar No. 627925
PURDY, JOLLY, GIUFFREDA, BARRANCO & JISA, P.A.
2455 E. Sunrise Boulevard, Suite 1216
Fort Lauderdale, Florida 33304
Telephone: (954) 462-3200
E-mail: Adriana@purdylaw.com
　　　　Cecilia@purdylaw.com

Attorneys for *Defendants, Armato, Brett, Olivio, Ward Sheriff Marceno and Lee County*