UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

TAMMY KING,

                          Case No. 2:24-cv-00375- JLB-KCD

        Plaintiff,

  - against -

LEE COUNTY, a political subdivision of the
State of Florida, CARMINE MARCENO, in
his official capacity as the Lee County Sheriff,
Deputy Sheriffs JAY BRETT, JASON WARD,
JOHNATHON ARMATO and MELQUIAS
OLIVO in their individual capacities,
MILLENIUM PHYSICIAN GROUP, LLC,
FRANCISCO MARASIGAN, MD and
KRISTIN GUSTIN,

                Defendants.

### MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS MILLIENIUM PHYSICIAN GROUP, LLC, FRANCISCO MARASIGAN, MD, AND KRISTIN GUSTIN'S MOTION TO DISMISS

Plaintiff TAMMY KING, by and through her undersigned counsel, hereby responds to Defendants Millenium Physician Group, LLC, Francisco Marasigan, MD, and Kristin Gustin's (collectively referred to as "the Millenium Defendants") motion to dismiss the operative Complaint in this action:

    **I.**    **INTRODUCTION**

Tammy King is a Lee County resident and unmarried, working class woman in her late 40s. Like many women of a certain age, after our children move on and

1

we find ourselves in a new phase of life, Ms. King was experiencing sadness and perhaps mild depression. This was exacerbated after her home was damaged in Hurricane Ian and – also like many of us in this region – she found herself having to make needed repairs to her home that insurance would not cover, which created a financial burden and added stress.

     Ms. King sought ways to be active, social and happy. To this end, she joined an adult kickball league, where she was befriended by a woman named Kristin Gustin. As Defendant Gustin and Ms. King forged a friendship, Ms. King confided in her about her struggles and her feelings. Defendant Gustin shared with Ms. King that she is a Nurse Practitioner employed by Millenium Physician Group, and invited her to make an appointment to meet with her in the office so that Defendant Gustin could assist her with a medication regimen that would benefit Ms. King.

     What happened to Ms. King at and following the office visit completely shocks the conscience and is utterly intolerable in civil society. Defendant Gustin conspired together with Lee County law enforcement officers to provide a forged Involuntary Commitment form to deprive Ms. King of her liberty without due process after Ms. King had been assaulted by Deputy Sheriff Jay Brett in the private bathroom of the medical office. Ms. King was taken by force in handcuffs from the office, ridden around in police vehicles and kept in a public parking lot

2

for a total of 4.5 hours while in excruciating pain, and then confined to a mental institution to conceal the crimes of law enforcement.

The actions of the Millenium Defendants set this unconscionable chain of events in motion. The actions of the Millenium Defendants allowed the law enforcement Defendants to perpetrate these severe violations of Ms. King's civil rights and flagrant abuses of their lawful authority to occur without impunity. All Defendants named in the Complaint must be held accountable.

## II. COUNTERSTATEMENT OF FACTS AND STANDARD OF REVIEW

Plaintiff respectfully directs the Court's attention to the Second Amended Complaint for the complete recitation of the pertinent facts to be considered in connection with the motions to dismiss. It is well-settled that, "[o]n a motion to dismiss, this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, the Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990)…"The scope of review must be limited to the four corners of the complaint" and attached exhibits. St. George v. Pinellas County, 285 F.3d 1334, 1337 (11th Cir. 2002)." Madok v. Nocco, 2019 WL 414877 (M.D. Fla. Feb. 1, 2019). Thus, we ask that the "facts"

contained in the Millenium Defendants' motion that do not contain a citation to the Complaint be disregarded in their entirety.

### III. ARGUMENT

#### A. PLAINTIFF'S TRANSPORT TO AND CONFINEMENT IN PARK ROYAL HOSPITAL WAS INVOLUNTARY

Much of the Millenium Defendants' argument for dismissal is based upon a false premise, which is that Ms. King's transport to and confinement in Park Royal Hospital was voluntary. The ensuing discussion is intended to disabuse defense counsel (and the Court, if necessary) of this misapprehension of the allegations contained in the Complaint.

1. Plaintiff's Consent to Transport and Examination Was Not the Equivalent of Voluntary Consent Pursuant to the Baker Act Because Plaintiff Was Never Informed of The Baker Act and the Implications of Her Consent

As alleged in the Complaint, Ms. King initially did agree to heed the advice of Defendant Gustin, who she perceived to be her friend, to seek examination and an adjustment of her medication regimen at a specialized but unnamed mental health facility. She also reluctantly agreed to be driven to this facility rather than drive herself. At no time was she advised of the Baker Act or its terms. Ms. King could not lawfully give consent to something she was not adequately informed about. Her agreement to be seen at another medical office and to be driven there does not equate to voluntary

4

commitment pursuant to the Baker Act. *See, e.g.*, Zinermon v. Burch, 494 U.S. 113 (1990).

2. <u>To the Extent Plaintiff Did Consent to Transport to and Examination at a Mental Health Facility, Her Consent Was Disregarded and Overridden Upon the Millenium Defendants' Executing and Providing to Law Enforcement an Involuntary Comittment Form</u>

Even if Ms. King's consent described above were to be construed as consent to voluntary commitment to a mental health facility pursuant to the Baker Act, whatever consent she gave surely did not encompass being followed into the bathroom by a male Deputy, having her purse grabbed at in an attempt to take it from her, being pepper sprayed, body slammed, handcuffed, and all of the events that followed (as described in the Complaint). A voluntary situation was instantly transformed into an involuntary one by Deputy Brett's actions when Ms. King excused herself to use the bathroom before getting into his vehicle.

Further it is unrefuted that Defendant Gustin provided law enforcement with a Certificate of Professional Initiating Involuntary Examination (hereinafter referred to as "Involuntary Commitment Form"), which served as the basis for Ms. King's confinement at Park Royal Hospital and the law enforcement Defendant's taking her there in handcuffs and shackles.

In light of all of the foregoing, the actions of the Defendants are appropriately assessed for their compliance with Section 394.463, Florida Statutes.

B. <u>PLAINTIFF HAS SUFFICIENTLY AND PLAUSIBLY ALLEGED A CLAIM OF NEGLIGENCE *PER SE*</u>

Plaintiff alleges that the Millenium Defendants are liable for negligence *per se* based upon their intentional violation of the clear prohibitions set forth in the Baker Act statute. The Millenium Defendants, in the manner alleged in the Complaint, provided false information to law enforcement that served as the basis for Ms. King's involuntary commitment.

As the Eleventh Circuit explained:

> [U]nder Florida law, an action for negligence per se requires a plaintiff to show "violation of a statute which establishes a duty to take precautions to protect a particular class of persons from a particular injury or type of injury." <u>Davis v. Otis Elevator Co.</u>, 515 So.2d 277, 278 (Fla.Dist.Ct.App. 1987) (*citing* <u>de Jesus v. Seaboard Coast Line R.R.</u>, 281 So.2d 198, 200–01 (Fla.1973)). As part of this showing, plaintiffs must establish "that the violation of the statute was the proximate cause of [their] injury." <u>de Jesus</u>, 281 So.2d at 201 (emphasis added).

<u>Resnick v. Avmed, Inc.</u>, 693 F.3d 1317 (11th Cir. 2012). As alleged (and quoted) in the Complaint, the Baker Act statute establishes a duty to take precautions to protect persons who may qualify for involuntary commitment under the Baker Act from violation of their civil and constitutional rights. It is also alleged in the Complaint that the violation of the protections afforded by statute set into motion

6

all the events described in the Complaint, not the least of which was the unlawful seizure and brutal abuse of Ms. King by law enforcement.

Plaintiff's Seventh Cause of Action must not be disturbed.

C. <u>PLAINTIFF HAS SUFFICIENTLY AND PLAUSIBLY ALLEGED A CLAIM OF FALSE IMPRISONMENT</u>

As alleged in the Complaint, Ms. King was falsely imprisoned. False imprisonment based upon the Baker Act is a recognized tort. *See, e.g.*, <u>Leonard v. Silva</u>, No. 21-60627-CIV, 2021 U.S. Dist. LEXIS 119078, at *24-26 (S.D. Fla. June 25, 2021) (" A false imprisonment claim "can be asserted based on allegations that a person was involuntarily held without compliance with the Baker Act." <u>Liles v. P.I.A. Medfield, Inc.</u>, 681 So. 2d 711, 712 (Fla. 2d DCA 1995) *citing* <u>Everett v. Fla. Inst. of Tech.</u>, 503 So. 2d 1382, 1382 (Fla. 5th DCA 1987)).") The contentions by defense counsel to the contrary are unavailing.

D. <u>PLAINTIFF HAS SUFFICIENTLY AND PLAUSIBLY ALLEGED A CLAIM OF NEGLIGENT HIRING TO SURVIVE A MOTION TO DISMISS AND PERMIT THE MATTER TO PROCEED TO DISCOVERY TO UNCOVER FURTHER EVIDENTIARY SUPPORT</u>

"[T]he requirements for a prima facie case of negligent hiring including an employer's duty to investigate an employee, to consider reasons stemming from an investigation as to why the employee may not be suited for a particular position, and the employer's subsequent decision to hire the employee regardless of those reasons..." <u>Sutherland v. Boehringer-Ingelheim Pharms., Inc.</u>, No. 16-11782 (11th

Cir. Jul 07, 2017). Plaintiff's Complaint makes these allegations, which must be accepted as true at this stage of the proceedings.

Defense counsel argues that the allegations supporting this claim are conclusory and therefore insufficient to support the claim. At this stage of the proceedings, however, the Court should accept that the presumption that the employer was negligent in hiring two employees who committed a criminal act (seemingly routinely if such executed forms were kept in blank in the medical office) and showed such flagrant disregard for the rights, safety, and well-being of their patients. Supporting evidence can only possibly be obtained during the discovery process, as no plaintiff would ever have access to the employment records of defendants with whom they have no workplace relationship.

Alternatively, Plaintiff requests leave to amend the Complaint or, if amendment is not acceptable to the Court, that this cause of action be dismissed without prejudice so that can be reinstated following discovery.

E. <u>PLAINTIFF HAS SUFFICIENTLY AND PLAUSIBLY ALLEGED A CLAIM OF NEGLIGENT RETENTION AND SUPERVISION</u>

"Florida recognizes a cause of action for negligent retention. *See* <u>N. Miami Med. Ctr., Ltd. v. Miller</u>, 896 So.2d 886, 889 (Fla. 3d DCA 2005) (*citing* <u>Garcia v. Duffy</u>, 492 So.2d 435, (Fla. 2d DCA 1986)). To prove such cause of action, the plaintiff must show: (1) the employer became aware or should have become aware that the subject employee was "unfit," and (2) the employer failed to take further

8

action, e.g., investigation, discharge, reassignment. <u>Bennett v. Godfather's Pizza, Inc.</u>, 570 So.2d 1351, 1353 (Fla. 3d DCA 1990) ("Negligent retention ... occurs when, during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicated his unfitness, and the employer fails to take further action such as investigating, discharge, or reassignment")" <u>Tercier v. Univ. of Miami, 3D22-1334 (Fla. App. Aug 02, 2023).</u>

Here, Plaintiff has made these allegations, but the allegations made in support of this cause of action are not limited to that. It is alleged in the Complaint that the negligent supervision is established by the fact that Defendant Gustin was able to present a form signed by Defendant Marasigan to law enforcement (whether with or without Defendant Marasigan's knowledge and participation), and that Defendant Gustin was left alone to run the office and see patients without a supervising medical doctor on site. The facts alleged in the Complaint are sufficient to establish that Defendant Millenium Physician Group was negligent in its retention and supervision of its employees that were able to perpetrate such a tremendous fraud that had such devastating consequences on Ms. King's life.

With respect to the underlying tort to support this cause of action, defense counsel erroneously represents that no tort is alleged and violation of the Baker Act is the only underlying violation of law. On the contrary, the torts of negligence,

9

false imprisonment, and intentional infliction of emotional distress are all alleged against the Millenium Defendants by this Complaint, and fraud is also alleged though there is no specific cause of action bearing such title. This is sufficient to support the cause of action sounding in Negligent Retention and Supervision.

    F.  <u>PLAINTIFF HAS SUFFICIENTLY AND PLAUSIBLY ALLEGED A CLAIM OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS</u>

The emotional trauma, pain, and suffering caused by the events described in the Complaint is almost impossible for any person to fathom. Ms. King was duped by a medical professional posing as her friend into a "voluntary" Baker Act confinement, while the true meaning of this and what could be anticipated to occur was concealed from Ms. King by Defendant Gustin. Defendant Gustin called Lee County law enforcement and then failed to intervene when her friend/patient was being brutally assaulted by Deputy Sheriff Brett in the bathroom of the medical office she invited Ms. King to. The Millenium Defendants then aided the Lee County Sherrif's Office in its cover up by providing a fraudulent document and making false statements to the police. Defense counsel remarkably suggests that Ms. King's emotional distress that resulted from of all of this – which she still suffers to this day – is insufficiently severe to give rise to a legal claim. This is ludicrous, particularly considering the fact that Defendant Gustin found Ms. King's

cries and pleas for help so intolerable that she herself had to leave the area so as to not have to hear them.

"To state a claim for intentional infliction of emotional distress under Florida law, [one] must allege: '(1) deliberate or reckless infliction of mental suffering; (2) outrageous conduct; (3) the conduct caused the emotional distress; and (4) the distress was severe.'" <u>Percival v. Chronister</u>, No. 823CV01243KKMUAM, 2024 WL 1012976, at *14–15 (M.D. Fla. Mar. 8, 2024) *quoting* <u>Liberty Mut. Ins. Co. v. Steadman</u>, 968 So. 2d 592, 594 (Fla. 2d DCA 2007). Plaintiff has sufficiently and plausibly alleged all of this in her Complaint.

G. <u>PLAINTIFF DOES NOT ALLEGE A CLAIM OF MEDICAL MALPRACTICE/NEGLIGENCE, AND THEREFORE THE REQUIREMENTS IMPOSED BY CHAPTER 766, FLORIDA STATUTES ARE INAPPLICABLE HERE</u>

The Millenium Defendants argue that the entire action against them should be dismissed because Plaintiff has not satisfied the pre-suit requirements applicable to medical negligence cases. Plaintiff does not pretend to have satisfied such requirements because such requirements are not applicable to this case, which is not a medical negligence case.

"It is axiomatic that the mere fact that a wrongful act occurs in a medical setting does not automatically transform the contested action into one that sounds in medical malpractice; the wrongful act must be "directly related to the improper application of medical services and the use of professional judgment or skill."

11

Holmes Reg'l Med. Ctr., Inc. v. Dumigan, 151 So.3d 1282 (Fla. App. 2014). "This Court has previously held that "[t]he primary test for whether a claim is one for medical malpractice is whether the claim relies on the application of the medical malpractice standard of care." Id.

The application of the medical malpractice standard of care is not necessary or appropriate in assessing the actions of the Millenium Defendants to determine wrongdoing. As alleged in the Complaint and touched upon hereinabove, these Defendants are liable for their fraud in providing a forged document, participating in a cover-up with the Lee County Sheriff's Office, not intervening to protect Ms. King when she was being brutally assaulted in the Millenium Office in the presence of Defendant Gustin and begging for her to come to her aid, and perhaps other crimes involving financial incentive and collusion that will come to light during the discovery phase of these proceedings. Indeed, "courts have consistently found that cases that do not involve professional medical judgment or skill sound in ordinary negligence." Leonard v. Silva, No. 21-60627-CIV, 2021 U.S. Dist. LEXIS 119078, at *18-20 (S.D. Fla. June 25, 2021) *quoting* Holmes Reg'l Med. Ctr., Inc. v. Dumigan, 151 So.3d 1282 (Fla. App. 2014).

The situations where courts have concluded that actions stemming from Baker Act violations are medical negligence actions are distinguishable from the

case presented to this Court by Ms. King. For example, as described in Leonard, *supra*:

> A claim of false imprisonment stemming from a Baker Act detention meets the definition of medical negligence if it arises out of the rendering of medical care. *See* Blom v. Adventist Health Sys./Sunbelt, Inc., 911 So. 2d 211, 214 (Fla. 5th DCA 2005). On this point, Blom is instructive. In Blom, the plaintiff alleged an emergency room doctor "involuntarily committed [her] without following the lawful and proper procedures set forth in" the Baker Act and thus tortiously committed her. Id. at 212 (alteration added; quotation marks omitted). The court affirmed the dismissal of a claim against the doctor because the action "arose out of the purportedly improper mental health commitment that was based on [*19] the physician's medical diagnosis that [the plaintiff] met the criteria set forth in the Baker Act." *Id.* at 214 (alteration added).

On the other hand, as the Court in Leonard went onto explain:

> Plaintiff's second theory, however, does not sound in medical negligence. The decision to call the police to help de-escalate a situation does not involve medical judgment, but instead is a decision that can be made on a judgment call basis by any employee. *See Townes*, 242 So. 3d at 305 (concluding that the decision to physically restrain a patient did not sound in medical negligence because it did not "require the use of professional judgment or skill"). Plaintiff thus did not have to satisfy the pre-suit provisions with respect to this theory."

Id.

The circumstances presented in the Complaint are more akin to the second scenario. There was no medical assessment performed by the doctor whose signature appeared on the form that served as the basis for Ms. King's involuntary commitment and upon which her arrest and so forth was predicated. The

challenged actions of the Millenium Defendants include fraud, forgery, collusion for a deleterious purpose, conspiracy to cover-up criminal acts by law enforcement, and other related acts that do not involve medical skill or diagnosis. Therefore, there is no impediment to Plaintiff's litigation proceeding against the Millenium Defendants.

## IV.  CONCLUSION

Based upon all of the arguments set forth herein as well as the legal support for the various claims included within the Complaint, Plaintiff, Tammy King, respectfully requests that the motion by the Millenium Defendants to dismiss the Second Amended Complaint be denied in its entirety or, if some aspect of the motion is granted, that Plaintiff be granted leave to amend the Complaint to cure any pleading deficiencies, together with such other and further relief as this Court may deem just and proper.

Respectfully submitted this 30th day of August, 2024.

                              HEUSER LAW FIRM, PA

                    By: *Kristina S. Heuser*
                              Kristina S. Heuser, Esq.
                              FL Bar No. 1047539
                              305 5th Avenue South, Suite 204-K
                              Naples, FL 34102
                              Tel. 239-331-5365
                              Email: kheuser@heuserlawfirm.com

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 30, 2024, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using CM/ECF. Copies of the foregoing document will be served upon interested counsel either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive Notices of Electronic Filing.

                                                _____
                                                Kristina S. Heuser, Esq.