TAMMY KING,

Case No. 2:24-cv-00375- JLB-KCD

Plaintiff,

- against -

LEE COUNTY, a political subdivision of the
State of Florida, CARMINE MARCENO, in
his official capacity as the Lee County Sheriff,
Deputy Sheriffs JAY BRETT, JASON WARD,
JOHNATHON ARMATO and MELQUIAS
OLIVO in their individual capacities,
MILLENIUM PHYSICIAN GROUP, LLC,
FRANCISCO MARASIGAN, MD and
KRISTIN GUSTIN,

Defendants.

**MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS LEE COUNTY, SHERIFF MARCENO, BRETT,
WARD, ARMATO AND OLIVIO'S MOTION TO DISMISS
PLAINTIFF'S SECOND AMENDED COMPLAINT**

Plaintiff TAMMY KING, by and through her undersigned counsel, hereby

responds to the above-named Defendants' Motion to Dismiss the operative

Complaint in this action:

## I.    INTRODUCTION

Tammy King is a Lee County resident and unmarried, working class woman

in her late 40s. Like many women of a certain age, after our children move on and

we find ourselves in a new phase of life, Ms. King was experiencing sadness and perhaps mild depression. This was exacerbated after her home was damaged in Hurricane Ian and – also like many of us in this region – she found herself having to make needed repairs to her home that insurance would not cover, which created a financial burden and added stress.

Ms. King sought ways to be active, social and happy. To this end, she joined an adult kickball league, where she was befriended by a woman named Kristin Gustin. As Defendant Gustin and Ms. King forged a friendship, Ms. King confided in her about her struggles and her feelings. Defendant Gustin shared with Ms. King that she is a Nurse Practitioner employed by Millenium Physician Group, and invited her to make an appointment to meet with her in the office so that Defendant Gustin could assist her with a medication regimen that would benefit Ms. King.

What happened to Ms. King at and following the office visit completely shocks the conscience and is utterly intolerable in civil society. Nurse Gustin conspired together with Lee County law enforcement officers to provide a forged Certificate of Professional Initiating Involuntary Examination (hereinafter referred to as "Involuntary Commitment form") to deprive Ms. King of her liberty without due process after Ms. King had been assaulted by Deputy Sheriff Jay Brett in the private bathroom of the medical office. Ms. King was taken by force in handcuffs from the office, ridden around in police vehicles and kept in a public parking lot

for a total of 4.5 hours while in excruciating pain, and then confined to a mental health institution to conceal the crimes of law enforcement.

The Lee County Sheriff and the individual Sheriff's Deputies named in the Complaint[1] now move to dismiss the action. As set forth hereinbelow, each Defendant named in the Complaint played a role in the abuse of Ms. King undertaken in violation of her constitutional rights and Florida Statutes, in some cases pursuant to the official policy or custom of the Lee County Sheriff. All Defendants named in the Complaint must be held accountable.

## II.  **ARGUMENT**

Standard of Review

"To survive a motion to dismiss [under Federal Rule of Civil Procedure 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (alteration added; quoting Bell Atl. Corp. v. Twombly, 550 U.S. 554, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007))…To meet this "plausibility standard," a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678 (alteration added; citing Twombly,

---

[1] In every instance where the term 'Complaint' is used herein, reference is being made to Plaintiff's Second Amended Complaint, which is the operative complaint in this action at this time.

550 U.S. at 556." <u>Leonard v. Silva</u>, No. 21-60627-CIV, 2021 U.S. Dist. LEXIS 119078, at *5-6 (S.D. Fla. June 25, 2021).

"On a motion to dismiss, this Court [must] accept[] as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. <u>Jackson v. Bellsouth Telecomms.</u>, 372 F.3d 1250, 1262 (11th Cir. 2004). Further, the Court [must] favor[] the plaintiff with all reasonable inferences from the allegations in the complaint. <u>Stephens v. Dep't of Health & Human Servs.</u>, 901 F.2d 1571, 1573 (11th Cir. 1990)…"The scope of review must be limited to the four corners of the complaint" and attached exhibits. <u>St. George v. Pinellas County</u>, 285 F.3d 1334, 1337 (11th Cir. 2002)." <u>Madok v. Nocco,</u> 2019 WL 414877 (M.D. Fla. Feb. 1, 2019).

A. <u>THE SECOND AMENDED COMPLAINT IS NOT A SHOTGUN PLEADING</u>

Defense counsel argues that Plaintiff's Second Amended Complaint is an impermissible shotgun pleading, has not been cured by amendment, and should be dismissed with prejudice on those grounds alone. We disagree.

The Eleventh Circuit has made clear which sorts of pleading errors are properly termed 'shotgun pleading' and subject a pleading to dismissal on those grounds. In <u>Inform Inc. v. Google LLC</u>, No. 21-13289, 2022 U.S. App. LEXIS

24107, at *11-12 (11th Cir. Aug. 26, 2022), the Court of Appeals explained:

> We have identified four main types of shotgun pleadings. *See*
> Weiland v. Palm Beach Cnty. Sheriff's Off., 792 F.3d 1313,
> 1321-23 (11th Cir. 2015). *First*, the most common type is a
> complaint "containing multiple counts where each count adopts
> the allegations of all preceding counts, causing each successive
> count to carry all that came before and the last count to be a
> combination of the entire complaint." Id. at 1321. *Second*, the
> next most common type is a complaint that "does not commit
> the mortal sin of re-alleging all preceding counts but is guilty
> of the venial sin of being replete with conclusory, vague, and
> immaterial facts not obviously connected to any particular
> cause of action." Id. at 1321-22. *Third* is a complaint that does
> "not separate[e] into a different count each cause of action or
> claim for relief." Id. at 1322-23. And *fourth*, we've described
> the "relatively rare sin" of "asserting multiple claims against
> multiple defendants without specifying which of the defendants
> are responsible for which acts or omissions, or which of the
> defendants the claim is brought against." Id. at 1323.

The Second Amended Complaint in this action falls into none of these categories.

Incorporating allegations needed to support multiple causes of action by reference

is a neater, more efficient method of pleading than repeating identical factual

allegation paragraphs in multiple places. This practice, as long as used

intentionally and not haphazardly, does not constitute shotgun pleading. *See, e.g.,*

Gubanova v. Miami Beach Owner, LLC, No. 12-22319-CIV-

ROSENBAUM/SELTZER, 2013 U.S. Dist. LEXIS 169593 at *18-19 (S.D. Fla.

Dec. 2, 2013) ("The Amended Complaint's incorporation by reference of preceding

paragraphs does not create an inscrutable tangle of facts and claims that would

render the Amended Complaint a shotgun pleading. Most counts do not

reincorporate all preceding paragraphs but instead reincorporate the general allegations and some of the allegations from the preceding count or counts…Because the causes of action are closely related, many of the reincorporated allegations are relevant to the subsequent claims."

Nor is the Second Amended Complaint "replete with conclusory, vague, and immaterial facts." <u>Inform Inc.</u> Rather, the Second Amended Complaint is concise, and includes only those factual allegations necessary to give the Court a clear picture of what occurred, the relationship of the parties and the role each played, and why those facts equate to the respective violations of law alleged.  It is undisputed that the Second Amended Complaint appropriately separates each legal claim into a separate cause of action and identifies against which Defendant(s) each cause of action is asserted. Thus, the Second Amended Complaint is not a shotgun pleading.

In <u>Inform Inc.</u>, the Eleventh Circuit was reviewing the District Court's dismissal of a complaint with prejudice on shotgun pleading grounds. The Court of Appeals reversed the District Court and held:

> "The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." <u>Id.</u> Dismissal on shotgun-pleading grounds is appropriate when "it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." <u>Id.</u> at 1325….In short, while the amended complaint may display some of the characteristics of what we have described

> as shotgun pleadings, we do not think the complaint fails "to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." <u>Weiland</u>, 792 F.3d at 1323.

<u>Id.</u> at 11-14. Here, it is abundantly clear what Plaintiff's claims are, against whom each is alleged, and what the grounds are that support each claim.

Defense counsel takes particular issue with factual allegations about what occurred leading up to her clients arriving at the medical office being incorporated by reference into causes of action alleged only against the moving Defendants. These allegations were necessary so that the actions of the moving Defendants can be understood in context. More specifically, why and how Ms. King came to be at the office, who in the office she met with (as distinct from the signature appearing on the Involuntary Commitment form), what she said and didn't say while she was there, and the fact that she agreed to voluntary transport and this was conveyed to the Sheriff's office on the phone are all relevant in demonstrating that the Sheriff's Deputy defendants' actions constituted unreasonable search and seizure, excessive force, and so forth. These allegations were not haphazardly incorporated, but rather were done purposefully.

Plaintiff's Second Amended Complaint is not a shotgun pleading as all Defendants are able to understand the factual allegations and legal claims made against them, respectively. Contrary to the assertion of defense counsel, the actions of the moving Defendants are not wholly distinct from that of the remaining Defendants; rather, it is alleged that these Defendants acted in concert to a certain

extent, an allegation that will be further developed following discovery. Finally, there is no merit to defense counsel's argument that it was somehow improper for legal citation to appear in the Complaint. This was intended to obviate some of the frivolous arguments raised in this motion to dismiss, and hopefully will aid the Court in evaluating such claims.

B. <u>PLAINTIFF SATISFIED THE REQUIREMENTS IMPOSED BY SECTION 768.28(6), FLORIDA STATUTES BUT, EVEN IF SHE DID NOT, THIS IS A QUESTION OF FACT NOT PROPERLY DECIDED ON A MOTION TO DISMISS</u>

"Pursuant to Fla. Stat. § 768.28, to benefit from [Florida's waiver of sovereign immunity for tort claims], a claimant must provide written notice of any claim before filing suit." <u>Madak v. Nocco</u>, 2019 WL 414877 (M.D. Fla. Feb 1, 2019) *quoting* <u>Doe v. G-Star Sch. of the Arts, Inc.</u>, No. 16-CV-80446, 2016 WL 4625625, at *4 (S.D. Fla. Sept. 6, 2016). Plaintiff alleges in the Complaint that she "has satisfied the pre-suit notice requirement imposed by Section 768.28, Florida Statutes." (SAC[2] ¶73). To the extent Defendants dispute this fact or take issue with the form of the notice provided, "[t]his create[s] an issue of fact that was not properly decided on a motion to dismiss." <u>Scullock v. Gee</u>, 161 So.3d 421 (Fla. App. 2014) *citing* <u>Lowery v. Lowery</u>, 654 So.2d 1218, 1219 (Fla. 2d DCA 1995).

---

[2] 'SAC' is an abbreviation for Second Amended Complaint.

C. **ADEQUATE FACTUAL ALLEGATIONS ARE PLED AGAINST DEFENADNTS WARD AND ARMATO TO MAINTAIN THEM AS DEFENDANTS IN THIS ACTION AT THIS STAGE OF THE LITIGATION**

Defense counsel argues that the Complaint should be dismissed as to Defendants Ward and Armato because there are insufficient allegations made against them in particular. While it is true that these Defendants did not physically lay hands on Ms. King so, in that sense, one could argue they are less culpable than their fellow Deputies, the law does not see it this way. Defendants Ward and Armato are culpable for the actions of their fellow Deputies based upon their failure to intervene to protect Ms. King's civil and constitutional rights (see SAC ¶¶86, 95-96).

As alleged in the Complaint, "Upon information and belief, the source of which is the Internal Affairs Bureau of the Lee County Sheriff's Office, Defendants Armato and Ward were present at the subject Millenium Physician Group office at some point during the events described herein. Specifically, also upon information and belief, Defendant Ward was present in a supervisory capacity." (SAC ¶39). Public records demonstrate that these two Defendants were on the scene of the incident where Ms. King was abused by Defendant Brett and unlawfully taken into custody and absconded with (in addition to the foregoing, see SAC ¶¶121, 125, 127). Defendant Ward signed off on this false arrest and unlawful seizure. More details of their respective involvement will surely come to light as

the discovery process unfolds, but for now the allegations against these Defendants suffice to keep them in the action. As the Eleventh Circuit held in <u>Heflin v. Miami-Dade Cnty.</u>, D.C. Docket No. 1:09-CV-21188-JLK, No. 10-10407 (11th Cir. Aug 19, 2010):

> In Count II of the amended complaint Heflin alleges that the police officer defendants, to the extent they did not personally commit the Fourth Amendment violations, are liable for his injuries under §1983 because they failed to intervene to stop the tortious conduct. "If a police officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence, the officer is directly liable under section 1983." <u>Ensley v. Soper</u>, 142 F.3d, 1402, 1407 (11th Cir. 1998) (quotations and citation omitted). The amended complaint alleges that even if some of the Defendants did not personally commit the constitutional violations, they nevertheless witnessed the unlawful acts, had the opportunity to intervene, but failed to do so. (R.1-21 at 5-7 ¶ 30-44.). These are sufficient factual allegations to state a claim under § 1983 for a failure to intervene.

It could not be clearer that it would be improper for Defendants Ward and Armato to be released from this action at this stage of the proceedings.

D. <u>PLAINTIFF HAS ADEQUATELY AND SUFFICIENTLY PLED A CLAIM OF UNLAWFUL SEIZURE IN VIOLATION OF THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION, AND THE INDIVIDUALLY NAMED LAW ENFORCEMENT DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY AT THIS STAGE OF THE LITIGATION</u>

Defense counsel incredulously argues that the arrest of Ms. King did not violate the Fourth Amendment. She further argues that even if the arresting officers and those who stood idly by whilst it occurred or, worse, sanctioned the conduct

later by providing an authorizing signature, are immune from suit based on the doctrine of qualified immunity. Both arguments fail, and we shall deal with each in turn.

Ms. King committed no crime nor was she accused of a crime. The seizure of Ms. King's person was solely on the basis of the Baker Act, a detailed Florida statutory scheme allowing for persons who meet certain specified criteria to be transported against their will to a mental health facility to remain for a very limited period of time. Although Ms. King initially agreed to voluntary transport to a mental health facility, this was not true consent as she was never advised of the Baker Act nor that she would be confined to a mental health facility for a pre-determined period of time. Further, whatever consent did exist, was revoked as soon as Deputy Brett accosted her in the private bathroom and assaulted her. Obviously, there was no consent for those things to occur, nor the events that immediately followed, as detailed in the Complaint. Based upon these facts and the fact that an Involuntary Commitment form was provided to law enforcement by Millenium Physician Group, we proceed on the premise that this was an involuntary commitment.

"The involuntary placement process serves to guard against the confinement of a person who, though mentally ill, is harmless and can live safely outside an institution. Confinement of such a person not only violates Florida law, but also is

unconstitutional. <u>O'Connor v. Donaldson</u>, 422 U.S. 563, 575, 95 S.Ct. 2486, 2493, 45 L.Ed.2d 396 (1975) (there is no constitutional basis for confining mentally ill persons involuntarily "if they are dangerous to no one and can live safely in freedom")." <u>Zinermon v. Burch</u>, 494 U.S. 113. 133-4 (1990). Taking all the allegations in the Complaint as true, there is no evidence that Ms. King presented imminent danger of bodily harm to herself or others, as required by the Baker Act. Thus, there was no justification for the seizure. *See e.g.*, <u>D.P. v. Sch. Bd.</u>, 658 F. Supp. 3d 1187, 1217-18 (S.D. Fla. 2021). ("For an officer to detain someone properly under the Baker Act, adult or child, the officer must have "reason to believe that the person has a mental illness and because of . . . her mental illness . . . [t]here is a substantial likelihood that without care ore treatment the person will cause serious bodily harm . . . to herself or others in the near future, as evidenced by recent behavior." Fla. Stat. § 394.463(1)(b)(2). If a reasonable officer, based on the information before them, believes that the person before them meets the criteria for involuntary examination, then the officer, without violating the Fourth Amendment, can take that person "into custody and deliver the person or have . . . her delivered to an appropriate, or the nearest facility . . . for examination." Fla. Stat. § 394.463(2)(a)(2). "Vague notions about what a person might do—for example, a belief about *some* likelihood that without treatment a person *might* cause *some* type of harm at *some* point—does not meet this

standard." <u>Khoury</u>, 4 F.4th at 1126 (emphasis in original).") Further, "Section 394.455(29) of the Florida Mental Health Act specifically defines "mental illness" as an impairment of the mental or emotional processes that exercise conscious control of one's actions or of the ability to perceive or understand reality, which impairment substantially interferes with the person's ability to meet the ordinary demands of living….[and] [d]evelopmental disability is not synonymous with mental illness " <u>Id.</u> Neither mild depression nor Attention Hyperactivity Deficit Disorder – the lone two conditions that impacted Ms. King's mental state - qualify under this definition. Thus, this requisite component to justify involuntary commitment under the Baker Act was not met either.

In <u>D.P. v. Sch. Bd.</u>, *supra*, the Court held that even where students were "very upset and became physically aggressive, verbally aggressive, or both…[but] did not have weapons or dangerous objects, did not have imminent access to weapons or any item that could be said to cause "serious bodily injury", they did not have a meaningful opportunity or access to carry out their threats, and did not make many overt acts to harm themselves." On this basis, the Court found that the officers lacked "probable cause to believe that [the students] suffered from mental illness, [and] to believe that because of a mental illness (that they didn't have), that there was a substantial likelihood that without care or treatment these Student Plaintiffs would have caused serious bodily harm to themselves or others in the

near future. Fla. Stat. § 394.463(1)(b)(2)", and therefore seizure under the Baker Act was improper and the Complaint "has pled a plausible deprivation of [the plaintiffs'] fundamental right to be free from unreasonable seizure under the Fourth and Fourteenth Amendments." Id. at 1217-18. The Court here must reach the very same conclusion.

Defense counsel's reliance on the Involuntary Commitment form is misplaced. That form was not in Defendant Brett's possession at the time of his encounter with Ms. King as he arrived at the medical office only to provide a voluntary transport to Ms. King. In fact, an agreement to voluntary transport negates a lawful involuntary commitment process per the express terms of the Baker Act. Notwithstanding these factors, Defendant Brett sought out and engaged in a violent encounter with Ms. King. Only after the unlawful seizure occurred did the moving Defendants obtain the forged Involuntary Commitment form.

As to the question of the individual law enforcement officer Defendants' entitlement to qualified immunity, it is well-settled that this immunity from suit is only appropriately applied where the violated right was not clearly established at the time of violation. This is out of fairness because "[i]f objective observers cannot predict—at the time the official acts—whether the act was lawful or not, and the answer must await full adjudication in a district court years in the future,

the official deserves immunity from liability for civil damages." Id. *citing* Elder v. Holloway, 510 U.S. 510, 513-15 (1994).

The determination as to whether qualified immunity is appropriate involves a burden shifting analysis that begins with the Defendant seeking immunity establishing that he was acting within the scope of his discretionary authority. The burden then shifts to Plaintiff to demonstrate that the right violated was clearly established and therefore qualified immunity is not appropriate. *See* Id. at 1229; *see also* William Robert Leonard As Pers. Rep. of the Estate of Jarvis Randall v. Silva, No. 21-60627-CIV-ALTONAGA/Strauss, 2022 U.S. Dist. LEXIS 236976, at *13-14 (S.D. Fla. Dec. 26, 2022)

"There are three ways [a] Plaintiff may show []rights were clearly established by law: (1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law. (internal citation omitted)." Id. at 14-16. In its analysis, the Court is bound to Plaintiff's version of events and must resolve any factual disputes or required inferenced in Plaintiff's favor. *See, e.g.*, Id. at 16.

Throughout this Memorandum of Law are cases with substantially similar fact patterns cited such that it is impossible to make a serious argument that Ms.

King's rights at issue in this action were not clearly established at the time they were violated by Defendants in the manner alleged in the Complaint. The individually named Sheriff's Deputies knew or should have known that: (i) there was no probable cause to arrest Ms. King when they were called for a voluntary transport; (ii) the force used against Ms. King was not objectively reasonable, both in the bathroom of the medical office or in either of the transport vehicles Ms. King was confined in; and, (iii) there was no circumstance that justified a seizure or warrantless search of Ms. King's purse, either in the bathroom at the medical officer or post-seizure. It is not clear that the actions undertaken by the individually named Sheriff's Deputies that day fell within their discretionary duties because it is yet to be determined what their true motives were, if they were aware that the Involuntary Commitment form was forged, if there was a financial incentive at play, and why said Defendants circled the County with Ms. King in agony in the various transport vehicles, but it cannot be disputed that all of their actions that day were undertaken in violation of Ms. King's clearly established rights. Thus, qualified immunity should not be granted to the individually named law enforcement Defendants.

E. **PLAINTIFF HAS ADEQUATELY AND SUFFICIENTLY PLED A CLAIM OF EXCESSIVE FORCE IN VIOLATION OF THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION, AND THE INDIVIDUALLY NAMED LAW ENFORCEMENT DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY AT THIS STAGE OF THE LITIGATION**

The allegations in the Complaint undoubtedly constitute a well-pleaded, sufficient, and plausible claim of excessive force. Defense counsels arguments to the contrary are unavailing. The individually-named Sheriff's Deputies are not entitled to qualified immunity because the Fourth Amendment right to be free from the use of excessive force in effectuating the arrest of a person and at all times while in police custody is well-established. Even more so is an individual who was falsely arrested to be free from any use of force by law enforcement. Thus, Plaintiff's Second Cause of Action alleged in the Second Amended Complaint must remain undisturbed.

In determining if this claim was sufficiently pled, the Court is to determine if the degree of force used was objectively reasonable. "Some factors to consider when evaluating reasonableness include (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether he is actively resisting arrest or attempting to evade arrest by flight…The Eleventh Circuit has added to that list of inquiries "(4) the need for force to be applied; (5) the amount of force applied in light of the nature of the need; and (6) the severity of the injury." <u>Patel v. City of Madison, Ala.</u>, 959 F.3d

1330, 1339 (11th Cir. 2020) (*citing* <u>Lee v. Ferraro</u>, 284 F.3d 1188, 1197-98 (11th Cir. 2002); <u>Sebastian v. Ortiz</u>, 918 F.3d 1301, 1308 (11th Cir. 2019)).” <u>D.P. v. Sch. Bd.</u>, 658 F. Supp. 3d 1187, 1220 (S.D. Fla. 2021).

Here, there was no crime. Ms. King was waiting calmly outside for Deputy Brett when he arrived and then went to use the bathroom. Recall at this point all that was supposed to happen was a voluntary transport to Park Royal Hospital. So, when Deputy Brett forced his way into the private bathroom and grabbed Ms. King's purse, she was a free person who had committed no crime nor nothing that could even be construed as a crime. Getting back to the factors, when Deputy Brett slammed Ms. King into the wall, pepper sprayed her, twisted her arm and handcuffed her, she had never been told she was being placed under arrest nor was there just cause for an arrest. The amount of force applied was completely in excess of the need (there was none) and Ms. King's injuries were severe. The same is true of the degree of force used during transcript. Even if at that point Ms. King was regarded as an involuntary transport pursuant to the Baker Act, the use of handcuffs and leg shackles that cut into Ms. King's skin, placing her in a metal cage without restraint and all of the resultant injuries described in the Complaint were excessive and severe. Emotional trauma is also a relevant factor to be considered. *See* <u>D.P. v. Sch. Bd.</u>, 658 F. Supp. 3d 1187, 1222 (S.D. Fla. 2021). All

of this is detailed in the Complaint. Each and every factor weighs squarely in Ms. King's failure.

The right to be free from excessive force under these precise circumstances was clearly established at the time the events described in the Complaint occurred. The Court's findings in D.P. v. Sch. Bd., *supra* – also a Baker Act scenario – are particularly informative. There the Court held:

> I don't see a need for any force to be applied to D.P. while he was being transported in the back of a locked and secure police vehicle without access to any weapons and without evidence of an intent to injure himself. Thus, the amount of force applied—handcuffs for thirty minutes—was not proportional to the need.

Id. at 1221.

Even where a plaintiff "threatened suicide by jumping off of a building, threatened to kill people with a gun, and [his] mother reported that he had looked up ways to kill people on the internet…" the Court held, "I do not find that these facts support a finding that W.B. posed an immediate threat to the safety of Officer Brown or others so as to justify W.B.'s use of handcuffs during the fifty-mile transport." Id. at 1224-25. The Court reached the same conclusion as to another plaintiff who "did not commit any crime, no matter how minor, rather, the police report states that a mental health professional said M.S. had "attempted suicide" using "the sharpened edge of her student ID card."" Id. at 1225.

Lest this Court think that this determination was only made in <u>D.P. V. Sch. Bd.</u> because the plaintiffs were minors, the Eleventh Circuit made the same determination regarding a woman who was forcibly "arrested" pursuant to the Baker Act. In <u>Khoury v. Miami-Dade Cnty. Sch. Bd.</u>, 4 F.4th 1118 (11th Cir. 2021), under a quite similar factual scenario to what is alleged in the Second Amended Complaint being evaluated by this Court:

> Ms. Khoury claims Officer Williams "charged" her when he saw she was recording. She says that as she took a step back to get away from him, Officer Williams grabbed her arm and twisted it behind her back. Officer Williams said he held his hand up to shield his face from the light on Ms. Khoury's phone camera and that Khoury either "reache[d]" for him or "pushed" him. Either way, according to Officer Williams's version of the events, whatever Ms. Khoury did startled him, which caused him to lose his footing, stumble, and fall, as Khoury did "a flop on the ground, just boom."…In Ms. Khoury's mind, Officer Williams had gone "rogue" and was illegally arresting her…Officer Williams "acknowledged to her" that he was going to commit her for an involuntary mental health examination under the Baker Act…
> In this case, Officer Williams arrived at the scene as a result of a 911 call. When he arrived, he was told Ms. Khoury was "combative and aggressive" towards Ms. Zubilliaga when she asked Khoury to stop filming…

This case was on appeal to the Eleventh Circuit from an order granting summary judgment. Still, even at that stage of the proceedings and with the conflicting accounts offered by the plaintiff, the defendant law enforcement officer, and a third party witness, the Court found:

> Because the District Court weighed testimony and made credibility determinations, it erroneously found that Officer Williams had arguable probable cause to detain Ms. Khoury. We must therefore

> vacate the District Court's summary judgment order holding that
> Officer Williams had qualified immunity and that as a result, Ms.
> Khoury's false arrest claim was barred.

Much like here, the Eleventh Circuit's determination in <u>Khory</u> was based upon, "we must accept, for now, that Officer Williams twisted her arm behind her back simply because she was filming the scene. Ms. Khoury testified that Officer Williams pushed her—not the other way around…" Thia Court must do the same and uphold Plaintiff's Second Cause of Action and deny qualified immunity to the Defendants.

Contrary to defense counsel's assertion, this is not a "deliberate indifference during transport" claim. In <u>Patel v. Lanier Cnty. Ga.</u>, 969 F.3d 1173 (11th Cir. 2020), the Eleventh Circuit evaluated a claim by an arrestee left in a transport van for approximately two hours as "a pretrial detainee's Fourteenth Amendment excessive-force claim…" The Court further clarified that there is "a connection between the Fourteenth Amendment's excessive-force standard and the Fourth Amendment's standard, rather than the Eighth Amendment's." Thus, the same objective reasonableness standard applies.

"Considerations such as the following may bear on the reasonableness or unreasonableness of the force used: [1] the relationship between the need for the use of force and the amount of force used; [2] the extent of the plaintiff's injury; [3] any effort made by the officer to temper or to limit the amount of force; [4] the severity of the security problem at issue; [5] the threat reasonably perceived by the

officer; and [6] whether the plaintiff was actively resisting." Id. Weighing these factors, the Court held that, "Patel's detention and transport were "more severe than [was] necessary to ... achieve a permissible governmental objective."…Because the force Deputy Smith applied was not "objectively reasonable," it violated Patel's Fourteenth Amendment rights...(internal citation omitted). Patel v. Lanier Cnty. Ga., 969 F.3d 1173 (11th Cir. 2020). Ms. King was not lawfully arrested so should not have been subjected to any degree of force, but even if she had been, she was in the transport vehicles for an even longer period of time than Patel and the harshness and severity of the conditions of detention were intentionally exacerbated, and the time of detention intentionally lengthened. Clearly, the actions of the individually-named Defendants involved in transporting Ms. King post-seizure violated Ms. King's Fourteenth Amendment rights.

F. NEGLIGENCE *PER SE* FOR VIOLATION OF THE BAKER ACT IS AN APPROPRIATE AND LEGALLY COGNIZABLE CLAIM

The Complaint also asserts a cause of action sounding in negligence *per se*. This is irrefutably an appropriate cause of action, despite defense counsel's contentions to the contrary. As the Eleventh Circuit clearly explained:

> [U]nder Florida law, an action for negligence per se requires a plaintiff to show "violation of a statute which establishes a duty to take precautions to protect a particular class of persons from a particular injury or type of injury." Davis v. Otis Elevator Co., 515 So.2d 277, 278 (Fla.Dist.Ct.App. 1987) (*citing* de Jesus v. Seaboard Coast Line R.R., 281 So.2d 198, 200–01 (Fla.1973)). As part of this showing, plaintiffs must establish "that the violation of the statute was the proximate cause of [their] injury." de Jesus,

281 So.2d at 201 (emphasis added).

Resnick v. Avmed, Inc., 693 F.3d 1317 (11th Cir. 2012). As alleged (and quoted) in the Complaint, the Baker Act statute establishes a duty to take precautions to protect persons who may qualify for involuntary commitment under the Baker Act from violation of their civil and constitutional rights. It is also alleged in the Complaint that the violation of the protections afforded by statute set into motion all of the events described in the Complaint, not the least of which was the unlawful seizure and brutal abuse of Ms. King by law enforcement.

The law enforcement Defendants against whom this cause of action is alleged procured the Involuntary Commitment form to conceal their own unlawful conduct. They violated the explicit terms of the statute as described in detail in the Complaint. Thus, Plaintiff's Seventh Cause of Action is proper and must not be disturbed.

G. **PLAINTIFF'S CLAIM OF FALSE IMPRISONMENT BASED UPON DEFENDANTS' VIOLATION OF THE BAKER ACT IS SUFFICIENTLY AND PLAUSIBLY ALLEGED**

H.

As alleged in the Complaint, Ms. King was falsely imprisoned. False imprisonment based upon the Baker Act is a recognized tort. *See, e.g.*, Leonard v. Silva, No. 21-60627-CIV, 2021 U.S. Dist. LEXIS 119078, at *24-26 (S.D. Fla. June 25, 2021) (" A false imprisonment claim "can be asserted based on allegations that a person was involuntarily held without compliance with the Baker Act." Liles v. P.I.A. Medfield, Inc., 681 So. 2d 711, 712 (Fla. 2d DCA 1995) (*citing* Everett v.

Fla. Inst. of Tech., 503 So. 2d 1382, 1382 (Fla. 5th DCA 1987)).") Based on all of the circumstances described in the Complaint and hereinabove, the contentions by defense counsel to the contrary are unavailing.

I. PLAINTIFF'S CLAIM OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS IS LIKEWISE SUFFICIENTLY AND PLAUSIBLY ALLEGED

The emotional trauma, pain, and suffering caused by the events described in the Complaint is almost impossible for any person to fathom. Ms. King is not a criminal. She was not accused of any crime. Yet, she was accosted by law enforcement and subjected to physical and emotional torment that wouldn't even be permitted against a violent criminal. Ms. King did nothing to invite this behavior, yet defense counsel suggests that Ms. King's emotional distress – which she still suffers to this day – is insufficiently severe to give rise to a legal claim. This is ludicrous.

"To state a claim for intentional infliction of emotional distress under Florida law, [one] must allege: '(1) deliberate or reckless infliction of mental suffering; (2) outrageous conduct; (3) the conduct caused the emotional distress; and (4) the distress was severe.'" Percival v. Chronister, No. 823CV01243KKMUAM, 2024 WL 1012976, at *14–15 (M.D. Fla. Mar. 8, 2024) quoting Liberty Mut. Ins. Co. v. Steadman, 968 So. 2d 592, 594 (Fla. 2d DCA 2007). Plaintiff has sufficiently and plausibly alleged all of this in her Complaint.

J.  **PLAINTIFF HAS SUFFICIENTLY AND PLAUSIBLY ASSERTED MONELL CLAIMS AGAINST LEE COUNTY AND SHERIFF MARCENO (FOURTH, FIFTH, AND SIXTH CAUSES OF ACTION)**

Plaintiff alleges three <u>Monell</u> claims by her Complaint. All three are sufficiently and plausibly alleged. Two of the three arise from the official, written policy of the Lee County Sheriff's Office on how to deal with Baker Act situations. The third is a for a failure to train. Each is addressed in turn in the order raised by Defendants in their motion.

1.  <u>Violation of the Fourth Amendment[3] Pursuant to Official Policy and Custom</u>

Ms. King obtained public records from the Lee County Sheriff's Office that include its policy manual in effect at the time of the incidents described in the Complaint. The relevant portions of the policy manual are excerpted and published in the Complaint. Oddly, defense counsel makes the claim that the policy that undergirds the <u>Monell</u> claim is not adequately identified in the Complaint. This is patently untrue, which is readily observable from even the most cursory review of the Complaint. Defendants' motion to dismiss Plaintiff's Fourth Amendment violation claim against Defendants Lee County and Sheriff Carmine Marceno (in his official capacity) must be denied.

---

[3] In the Complaint, the Fourth and Fifth Causes of Action should include violations of both the Fourth and Fourteenth Amendments to encompass the excessive use of force that Plaintiff was subjected to during her detention by the police post-arrest.

To begin with, "to recover damages from [a Sheriff] under Section 1983, [a plaintiff] must show: "(1) that [her] constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004) (*citing* City of Canton v. Harris, 489 U.S. 378, 388 (1989). "A plaintiff seeking to impose liability on a municipality under Section 1983 must identify a particular municipal "policy" or "custom" that caused the constitutional injury. Bd. of Cty. Comm'rs of Bryan Cty., 520 U.S. at 403." Madak v. Nocco, *supra*.

"A plaintiff has two methods to establish a local governmental entity's policy: "identify either (1) an officially promulgated [entity] policy or (2) an unofficial custom or practice of the [entity] shown through the repeated acts of a final policymaker for the [entity]." *Grech*, 335 F.3d at 1329 (alterations added; citations omitted). "Because a [local department] rarely will have an officially-adopted policy of permitting a particular constitutional violation, most plaintiffs . . . must show that the [department] has a custom or practice of permitting it and that the [department]'s custom or practice is the moving force behind the constitutional violation." *Id.* at 1330 (alterations added; other alteration adopted; quotation marks and citations omitted)." Leonard v. Silva, No. 21-60627-CIV, 2021 U.S. Dist. LEXIS 119078, at *10 (S.D. Fla. June 25, 2021). Here, we have the "rare"

circumstance where there actually is a published policy that allowed for the violation of Ms. King's Fourth Amendment rights to be free from unreasonable search and seizure. The excerpted and quoted policy is set forth in paragraph 103 of the Second Amended Complaint.

In <u>D.P. v. Sch. Bd.</u>, 658 F. Supp. 3d 1187 (S.D. Fla. 2021), the Court evaluated the written and published policy of the defendant school district pertaining to Baker Act situations (called "The Baker Act Bulletin) and found:

> The Baker Act Bulletin does not clarify that in the context of the Baker Act, a developmental disability does not constitute a "mental illness." *Id.* The Baker Act Bulletin misstates the law. The way it is written makes the mental illness component an option instead of a necessary requirement. But the Baker Act requires both elements—imminent danger and mental illness—collectively, not alternatively. This is notable because, as stated above, the school officials and officers had these students involuntarily committed despite the fact that they did not have a mental illness. When viewed in the light most favorable to Plaintiffs, it is plausible that the school administrators and teachers, when faced with the decision of whether to Baker Act a student, based their decision on what they read in the Baker Act Bulletin, which told them they only needed one of the two Baker Act elements, when in reality, the law required both.
> Furthermore, the Baker Act Bulletin does not sufficiently describe the "danger" element. It states simply that the child must "present a danger to self or others" when the statute actually requires there be a "substantial likelihood" that the child will cause "serious bodily harm . . . to herself or others in the *near future*." Fla. Stat. § 394.463 (1)(b)(2) (emphasis added). The Baker Act Bulletin completely obviates the requirements that the "danger" be (1) of serious bodily harm, (2) substantially likely to occur, and (3) in the near future. Instead, it leads teachers, administrators, and officers to incorrectly believe that *any* danger at all that *could* happen at *some* point, is sufficient to involuntarily commit a student. I find that the

> misstatement of the law in the Baker Act Bulletin that was
> administered to school staff is sufficient to establish, for purposes
> of surviving a motion to dismiss, that an official policy of the School
> Board caused the deprivation of D.P., E.S., L.A., and W.B.'s
> fundamental right to be free from unreasonable seizure under the
> Fourth and Fourteenth Amendments.

Id. at 1219. All of these same flaws exist in the Lee County policy. In addition, the

policy promoted search without regard to constitutional protections, and the use of

excessive force in the form of restraints in all cases and again without regard to the

clearly established requisite considerations to protect the rights of persons with

suspected mental illness as enumerated in prior court cases.

2. Violation of Fourth Amendment Based Upon Failure to Train

The cause of action alleged in the Complaint against Defendants Lee County

and Sheriff Marceno in his official capacity for constitutional violations emanating

from a failure to properly train its personnel is also properly pled. Again under this

cause of action, relevant portions of the Lee County written policy are excerpted and

published in the Complaint, and it is plausibly alleged that the Sheriff's Deputies

involved in the incidents recounted in the Complaint committed the constitutional

violations also alleged based upon lack of proper training as evinced by the deviation

from the quoted portions of the policy from well-established law governing law

enforcement encounters pursuant to the Baker Act.

"An inadequate training program can be the basis for Section 1983 liability in

limited circumstances where the municipality adhered to an approach that failed to

prevent tortious conduct by employees. <u>Bd. of Cty. Comm'rs of Bryan Cty.</u>, 520 U.S. at 407 (citing <u>City of Canton</u>, 489 U.S. at 387–390)…"[A] municipality's failure to train its employees in a relevant respect must amount to deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." <u>Connick</u>, 563 U.S. at 61 (citation and internal quotation marks omitted). " '[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." <u>Bd. of Cty. Comm'rs of Bryan Cty.</u>, 520 U.S. at 410." <u>Madak v. Nocco</u>, *supra*. This is precisely what we have here.

The policies not adhered to by the defendant Sheriff's Deputies include the requirement that detainees be seat-belted during transport, that transport is not interrupted or delayed for any reason but rather that the detainee is transported to the destination as expeditiously as possible, and that the deputy make an independent investigation into whether Ms. King had been observed by a physician within the last 48 hours or, alternatively (pursuant to the policy), an independent determination of the necessity for involuntary transport. Rather, Deputy Brett, either knowingly or unknowingly, relied on a forged Involuntary Commitment Form. These radical deviations from policy evince a failure to train.

To the extent the Second Amended Complaint is lacking in allegations of similar violations of the rights of persons detained pursuant to the Baker Act such

that deliberate indifference has not been established in the view of the Court, Plaintiff respectfully requests the opportunity to amend the Complaint to identify and include such incidents.

3. <u>Violation of Fourteenth Amendment Right to Due Process</u>

Ms. King was not afforded due process of law at any time either before or after she was deprived of her liberty, which violated her right to due process of law. The Baker Act sets forth both pre- and post- deprivation remedies. A legal proceeding is required to be filed if the involuntarily committed person is detained by the facility in excess of 72 hours. This arguably was not the responsibility of law enforcement. However, the statute also provides pre-deprivation protections, which absolutely were the obligation of the Lee County Sheriff and Lee County to ensure compliance with. The failure of these Defendants to take their compliance with the Fourteenth Amendment seriously directly led to the deprivation of Ms. King's liberty for an inordinate amount of time and serious consequential harms as described in the Complaint.

"[T]he [Supreme] Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property. *See, e.g.,* <u>Cleveland Board of Education v. Loudermill</u>, 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985) (" '[T]he root requirement' of the Due Process Clause" is " 'that an individual be given an opportunity for a hearing *before* he is

deprived of any significant protected interest' "; hearing required before termination of employment (emphasis in original)); Parham v. J.R., 442 U.S. 584, 606–607, 99 S.Ct. 2493, 2506, 61 L.Ed.2d 101 (1979) (determination by neutral physician whether statutory admission standard is met required before confinement of child in mental hospital)" Zinermon v. Burch, 494 U.S. 113 (1990). Sometimes, "postdeprivation tort remedies are all the process that is due, simply because they are the only remedies the State could be expected to provide." Id.

The pre-deprivation remedy afforded by the Baker Act is the Involuntary Commitment form, which the Deputy relying upon is supposed to takes steps to verify the validity of. That was not done here. The physician whose signature appeared on the form was not even present in the office on the day the events at issue in this action transpired. There is no notation in any police record that he was contacted by phone or that any inquiry was made regarding the representations on that form. Upon information and belief, the form was an afterthought that was requested by the Sheriff's Deputies to conceal their many violations of Ms. King's constitutional rights. This violated Ms. King's right to a pre-deprivation process.

As the Court held in Zinermon v. Burch, *supra,* this Court should:

[C]onclude that petitioners cannot escape § 1983 liability by characterizing their conduct as a "random, unauthorized" violation of Florida law which the State was not in a position to predict or avert, so that all the process Burch could possibly be due is a postdeprivation damages remedy. Burch, according to the allegations of his complaint, was deprived of a substantial liberty interest without

either valid consent or an involuntary placement hearing, by the
very state officials charged with the power to deprive mental patients
of their liberty and the duty to implement procedural safeguards.

K. <u>PLAINTIFF HAS SUFFICIENTLY AND PLAUSIBLY ALLEGED A
CLAIM OF UNLAWFUL SEARCH IN VIOLATION OF THE FOURTH
AMENDMENT TO THE UNITED STATES CONSTITUTION</u>

Following her unlawful arrest and while Ms. King was handcuffed and

secured in the rear of a locked police vehicle, Defendant Brett searched Ms. King's

purse, removed her prescription bottles out of it, placed them on the hood of his

vehicle, and photographed them. Ms. King's personal medical information is now

a matter of public record because those photographs are disclosable pursuant to

public records request. Ms. King had a reasonable expectation of privacy in her

purse. Defendant Brett did not obtain a warrant to search Ms. King's purse, and no

exception applies to the circumstance presented here that would justify such a

warrantless search. This is a textbook violation of the Fourth Amendment. *See, e.g.*

<u>K.M. v. State</u>, 359 So.3d 414 (Fla. App. 2023).

L. <u>LEE COUNTY IS A PROPER PARTY TO THE LITIGATION</u>

Defense counsel argues that Lee County is not a proper party to this action.

However, this Court has made clear that this argument is unpersuasive. As this

Court just recently opined in <u>Riley v. Marceno</u>, et al., 2:23-cv-981-JLB-KCD

(M.D. Fla. July 1, 2024):

Lee County's argument raises a straightforward question—who bears
municipal liability for the unconstitutional conduct of a Florida sheriff's
deputy? The answer is far from simple. Florida law suggests the buck

stops with the elected sheriff. He is, after all, "an independent constitutional officer" and maintains absolute authority over his deputies. <u>Demings v. Orange Cnty. Citizens Rev. Bd.</u>, 15 So. 3d 604, 610 (Fla. Dist. Ct. App. 2009). Yet under Eleventh Circuit precedent, "the sheriff and his office are officials of the county." <u>Sanguinetti v. Collier Cnty.</u>, No. 2:21-CV-529-JLB-KCD, 2022 WL 4305995, at *5 (M.D. Fla. Sept. 19, 2022) (*citing* <u>Lucas v. O'Loughlin</u>, 831 F.2d 232, 235 (11th Cir. 1987)). Adhering to <u>Lucas</u>, the county is responsible and is the proper party to a § 1983 suit. Despite the obvious tension created by holding a municipality liable for actions it has no authority to control, the Eleventh Circuit has spoken. That ends the matter and dictates the result. The County's motion to dismiss Counts I-IV should be denied because when "the defendant in a § 1983 civil rights action is the county sheriff, the suit is effectively an action against the governmental entity he represents—in this case, [Lee] County." <u>Adcock v. Baca</u>, 157 F. App'x 118, 119 (11th Cir. 2005)…"In summary, although the law concerning municipal liability is not crystal clear, Lucas is still the controlling [case] addressing the dismissal of a county defendant in a claim brought against a sheriff and a county pursuant to § 1983. Under Lucas, the sheriff and his office are officials of the county." <u>Sanguinetti</u>, 2022 WL 4305995, at *5.

That settles that.


## III. <u>CONCLUSION</u>

Based upon all of the arguments set forth herein as well as the legal support for the various claims included within the Complaint, Plaintiff, Tammy King, respectfully requests that the motion by Defendants Lee County, Marceno, Brett, Armato, Ward, and Olivio to dismiss the Second Amended Complaint be denied in its entirety or, if some aspect of the motion is granted, that Plaintiff be granted leave to amend the Complaint to cure any pleading deficiencies, together with such other and further relief as this Court may deem just and proper.

Respectfully submitted this 30th day of August, 2024.

HEUSER LAW FIRM, PA

By: _Kristina S. Heuser_

Kristina S. Heuser, Esq.
FL Bar No. 1047539
305 5th Avenue South, Suite 204-K
Naples, FL 34102
Tel. 239-331-5365
Email: kheuser@heuserlawfirm.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 30, 2024, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using CM/ECF. Copies of the foregoing document will be served upon interested counsel either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive Notices of Electronic Filing.

_Kristina S. Heuser_

Kristina S. Heuser, Esq.