UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

TAMMY KING,

        Plaintiff,

v.                                          Case No:  2:24-cv-375-JLB-KCD

LEE COUNTY, CARMINE
MARCENO, JAY BRETT, JASON
WARD, JOHNATHON ARMATO,
MELQUIAS OLIVO,
MILLENNIUM PHYSICIAN
GROUP, LLC, FRANCISCO
MARASIGAN and KRISTIN
GUSTIN,

        Defendants.

_____/

## ORDER

Plaintiff Tammy King ("Plaintiff" or "Ms. King") sues Defendants Lee County, Florida; Sheriff Carmine Marceno; Corporal Jay Brett; Deputy Jason Ward; Sergeant Johnathon Armato; Deputy Melquias Olivio; Millennium Physician Group, LLC; Francisco Marasigan, MD; and Kristin Gustin; following an altercation that resulted in Plaintiff's involuntary commitment to Park Royal Hospital under Florida's Baker Act, Fla. Stat. § 394.463 (the "Baker Act"). (*See* Doc. 42). The Millennium Physician Group, Dr. Marasigan, and Ms. Gustin filed a motion to dismiss Plaintiff's amended complaint. (Doc. 50). Lee County, Sheriff Marceno, Corporal Brett, Deputy Ward, Sergeant Armato, and Deputy Olivio also filed a motion to dismiss. (Doc. 52). Plaintiff responded to both motions. (Docs. 57, 58).

Upon careful review, the motions to dismiss (Docs. 50, 52) are **GRANTED in part and DENIED in part**.[1]

### BACKGROUND[2]

Ms. King became acquainted with Defendant Kristin Gustin, an advanced practice registered nurse, while the two played together in an adult kickball league in Lee County, Florida. (Doc. 42 at ¶¶ 12–13). Defendant Gustin and Ms. King developed a casual friendship and discussed personal matters on numerous occasions. (*Id.* at ¶¶ 15–16). In that context, Ms. King shared with Ms. Gustin that she was frustrated with the medical care in Florida because she was unable to find a doctor willing to prescribe a medication that she had been taking for Attention Deficit Hyperactivity Disorder. (*Id.* at ¶ 16). Ms. Gustin advised Ms. King that she should set up an appointment with Ms. Gustin's office, the Millennium Physician Group, as Ms. Gustin could assist Ms. King with her prescription regimen. (*Id.* at ¶ 17).

On March 24, 2023, Ms. King attended an appointment at the Millennium Physician Group. (*Id.* at ¶ 18). Ms. Gustin took Ms. King into a room where they talked about Ms. King's medical history and prescription regimen. (*Id.* at ¶ 19). Ms. King mentioned to Ms. Gustin that she had been suffering feelings of sadness

---

[1] The Court also addresses the Millennium Physician Group, Dr. Marasigan, and Ms. Gustin's Motion for Severance and to Remand to State Court. (Doc. 51). For the reasons stated herein, the Court **DENIES** that motion (*id.*).

[2] "At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999) (citation omitted). Accordingly, this background section relies on the facts recited in the amended Complaint. (*See* Doc. 42).

and depression due to (1) the devastation caused to her home by Hurricane Ian and the related financial stress, (2) the distance between Ms. King and her boyfriend, who resides in New York, and (3) an argument between her adult sons the night prior. (*Id.* at ¶ 20). Ms. Gustin asked Ms. King if she felt like hurting herself, and Ms. King responded, "no." (*Id.* at ¶ 21). As Ms. King was getting ready to leave the appointment, Ms. Gustin discouraged Ms. King from leaving. (*Id.* at ¶¶ 22, 23). She strongly urged Ms. King to go to a nearby facility, Park Royal Hospital, to help restore Ms. King's emotional and mental health. (*Id.* at ¶¶ 23, 25). This included getting Ms. King on the proper medication regimen. (*Id.*). Ms. King agreed. (*Id.* at ¶ 24). Ms. King prepared to leave the appointment and drive to Park Royal Hospital, but Ms. Gustin intervened and told Ms. King that she should not drive in an emotional state. (*Id.* at ¶ 25). Ms. Gustin offered to arrange a ride to the hospital. (*Id.*). Ms. King felt like she was capable of driving but agreed to Ms. Gustin's offer to arrange a car service to the facility. (*Id.*).

Ms. Gustin escorted Ms. King outside, where the two waited and chatted. (*Id.* at ¶ 27). Then, a marked Lee County Sheriff's patrol car arrived. (*Id.*). Corporal Brett parked and exited the vehicle. (*Id.* at ¶ 28). Ms. King asked Ms. Gustin if that was the "ride" that she had arranged. (*Id.*). Ms. Gustin confirmed that it was, and she reassured Ms. King that this was normal procedure. (*Id.*).

Ms. King then told Ms. Gustin and Corporal Brett that she needed to use the restroom before the drive to the hospital. (*Id.* at ¶ 29). Ms. King entered the restroom and began undressing to use the bathroom. (*Id.* at ¶ 30). Corporal Brett then rushed into the bathroom and demanded Ms. King's purse. (*Id.*). Corporal

Brett reached for Ms. King's purse and attempted to yank it away from her. (*Id.* at ¶ 33). In response, Ms. King held on tighter to her purse. (*Id.*). After Corporal Brett loudly and verbally demanded that Ms. King hand over her purse, Ms. King released her purse. (*Id.* at ¶ 34). Because Corporal Brett had been forcefully tugging at her purse, when Ms. King released her purse, the motion caused her purse to strike Corporal Brett in the chest. (*Id.*). Corporal Brett then slammed Ms. King against the bathroom wall, put a handcuff around her right wrist, and pepper sprayed her in the face three times. (*Id.* at ¶ 35). He handcuffed Ms. King's other wrist tightly behind her back. (*Id.* at ¶ 36). The pepper spray blinded Ms. King; she felt a burning sensation in her eyes, and she experienced pain as she was pinned against the wall by Corporal Brett. (*Id.* at ¶ 35). She further screamed in pain, coughed, and urinated on herself. (*Id.* at ¶¶ 36–37).

Corporal Brett placed Ms. King into his patrol car.[3] (*Id.* at ¶ 38). Someone then poured liquid onto Ms. King's head to relieve the symptoms she was experiencing from the pepper spray. But because her hair was in her face and she was sweating, the liquid did not provide any relief. (*Id.* at ¶ 40). After some time, Corporal Brett then drove Ms. King to a grocery store parking lot. (*Id.* at ¶ 43). After several hours, Deputy Olivio arrived in a police van to transport Ms. King to the hospital. (*Id.* at ¶ 51). Deputy Olivio then took custody of Ms. King, moved her handcuffs from the back to the front, and placed shackles on her ankles. (*Id.* at ¶¶

---

[3] The Complaint also states that Deputy Ward and Sergeant Armato arrived at some point during the altercation. (Doc. 42 at ¶ 39). However, the Complaint does not describe when the two officers arrived nor what events transpired between Plaintiff, those officers, and Corporal Brett. (*Id.*).

52–53).  Ms. King suffered pain from the ankle shackles.  (*Id.* at ¶ 54).  Deputy

Olivio drove Ms. King to Park Royal Hospital.[4]  (*Id.* at ¶ 60).  Approximately 4.5

hours elapsed from when Ms. King was taken into custody by Corporal Brett to

when she arrived at Park Royal Hospital.  (*Id.* at 10 n.2).  Ms. King was then

admitted to the hospital.  (*Id.* at ¶ 64).  According to hospital records, her admission

was deemed an involuntary admission.[5]  (*Id.*).

Plaintiff now brings claims pursuant to the Fourth and Fourteenth

Amendments, negligence per se, false imprisonment, negligent hiring, negligent

retention and supervision, and intentional infliction of emotional distress.  (*See* Doc.

42).  The Millennium Physician Group, Dr. Marasigan, and Ms. Gustin (together,

the "Physician Defendants") filed a motion to dismiss Plaintiff's amended complaint.

(Doc. 50).  Lee County, Sheriff Marceno, Corporal Brett, Deputy Ward, Sergeant

Armato, and Deputy Olivio (together, the "Sheriff Defendants") also filed a motion

to dismiss.  (Doc. 52).  Plaintiff responded to both motions.  (Docs. 57, 58).

---

[4] Ms. King alleges that she was unrestrained in the police van and she had no ability to
brace herself.  (*Id.* at ¶ 55).  She claims that she experienced excruciating pain due to the
sharp turns, which aggravated a prior shoulder surgery and spinal fusion.  (*Id.* at ¶ 59).
[5] Ms. King's amended Complaint is unclear as to whether she consented to being admitted
to Park Royal Hospital or whether she was involuntary committed.  (*Compare* Doc. 32 at ¶
24 *with* ¶¶ 64, 122–23).  She alleges that Dr. Marasigan signed and executed a Certificate
of Professional Initiating Involuntary Examination.  (*Id.* at ¶ 122).  However, Ms. King
claims that Dr. Marasigan never examined, evaluated, or spoke with Ms. King.  (*Id.* at ¶
123).

## MOTION TO DISMISS STANDARD

To avoid dismissal subject to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff's complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action" are not enough to survive a motion to dismiss. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Attacks on subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) are either facial or factual. *Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir. 1990). Facial attacks "require[ ] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Id.* at 1529 (quotation omitted). Factual attacks "challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Id.* (quotation omitted). "A dismissal for lack of subject matter jurisdiction is not a judgment on the merits and is entered without prejudice." *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008).

## DISCUSSION

### I.    The Physician Defendants' Motion to Dismiss.

The Court will first address the Physician Defendants' motion to dismiss (Doc. 50).  The Physician Defendants argue that, under Federal Rule of Civil Procedure 12(b)(1), Plaintiff has failed to comply with the pre-suit requirements for a medical negligence claim under Florida Law.  (*Id.*).  Additionally, they argue that Plaintiff has failed to state a claim under Federal Rule of Civil Procedure 12(b)(6) because Plaintiff (1) cannot make a claim under the Baker Act because Plaintiff voluntary sought the medical treatment, (2) cannot allege a negligence per se cause of action under the Baker Act, (3) failed to allege any specific facts supporting a negligent hiring and a negligent retention and supervision claim against Millennium Physician Group, and (4) failed to allege any facts sufficient showing that the Physician Defendants' conduct constituted a claim for Intentional Infliction of Emotional Distress.  (Doc. 50).  The Court will address each argument in turn.

### A.    Plaintiff was not required to follow Florida's medical malpractice pre-suit requirements.

The Physician Defendants assert that Plaintiff's second amended complaint should be dismissed because she failed to follow pre-suit requirements for medical malpractice claims.  (Doc. 50 at 12–23).  Plaintiff argues that she was not required to follow the pre-suit requirements because her claims against the Physician Defendants are sound in fraud, forgery, collusion, conspiracy, and other related acts that did not involve medical skill or diagnosis.  (Doc. 57 at 14).  The Court finds that

Plaintiff was not required to follow the pre-suit requirements for medical malpractice claims.

Under Florida Law, a "'claim for medical malpractice' means a claim, arising out of the rendering of, or the failure to render, medical care or services."  Fla. Stat. § 766.106(1)(a).  Medical malpractice claims are subject to pre-suit screening requirements.  *J.B. v. Sacred Heart Hosp. of Pensacola*, 635 So. 2d 945, 948 (Fla. 1994).  These requirements mandate that, before filing a lawsuit, an attorney must perform a pre-suit investigation, consult and obtain an opinion from a medical expert, and provide proper notice to the prospective defendant.  *Pierrot v. Osceola Mental Health, Inc.*, 106 So. 3d 491, 492 (Fla. 5th DCA 2013); *Largie v. Gregorian*, 913 So. 2d 635, 638–39 (Fla. 3d DCA 2005); Fla. Stat. § 766.106.  The pre-suit requirements restrict a plaintiff's constitutional right of access to courts, so the applicability of the requirements must be construed narrowly in favor of access.  *Id.* (citing *Integrated Health Care Servs., Inc. v. Lang–Redway,* 840 So. 2d 974, 980 (Fla. 2002); *Weinstock v. Groth,* 629 So. 2d 835, 838 (Fla. 1993)).

For the pre-suit requirements to apply, the claim must be for medical malpractice.  *See id.*; s*ee also J.B. v. Sacred Heart Hosp. of Pensacola,* 635 So. 2d 945, 948–49 (Fla. 1994); *Joseph v. Univ. Behavioral LLC,* 71 So. 3d 913, 917 (Fla. 5th DCA 2011); *Blom v. Adventist Health Sys./Sunbelt, Inc.,* 911 So. 2d 211, 213–14 (Fla. 5th DCA 2005).  The test to determine whether a claim is for medical malpractice is "whether the claim relies on the application of the medical malpractice standard of care."  *Joseph,* 71 So. 3d at 917.  When a claim relies on a

different standard provided by another statute, the claim is not one of medical malpractice for purposes of the pre-suit requirements. *Pierrot*, 106 So. 3d at 492.

A wrongful act in a medical setting does not necessarily mean that a medical malpractice claim is present. *Joseph,* 71 So. 3d at 917 (citing *Robinson v. West Fla. Reg'l Med. Ctr.,* 675 So. 2d 226 (Fla. 1st DCA 1996); *Durden v. Am. Hosp. Supply Corp.,* 375 So. 2d 1096 (Fla. 3d DCA 1979). The Court must determine, on a case-by-case basis, whether the wrongful act was directly related to the improper application of medical services and the use of professional judgment or skill. *Id.*; *see also Blom,* 911 So. 2d at 213 ("Whether a person is required to comply with the pre-suit procedures outlined in Chapter 766 is fundamentally fact-dependent.").

Here, Plaintiff sues the Physician Defendants for violating the Florida Baker Act Statute. (*See* Doc. 42). Specifically, Plaintiff sues under theories of negligence per se (*id.* at 28–32), false imprisonment (*id.* at 32), negligent hiring (*id.* at 33–34), negligent retention and supervision (*id.* at 34–35), and intentional infliction of emotional distress (*id.* at 35–36). As stated, a claim must be for medical malpractice for the pre-suit requirements to apply. *See Pierrot,* 106 So. 3d at 492. The question here is whether Plaintiff's claims for violation of the Baker Act involve the rendering of medical care or services. *See Joseph,* 71 So. 3d at 917.

The Second District Court of Appeal considered this in *Liles v. P.I.A. Medfield, Inc.*, 681 So. 2d 711 (Fla. 2d DCA 1995). There, the plaintiff accused the defendant hospital and doctor of failing to comply with the involuntary commitment provisions of the Baker Act. *Id.* at 711. Specifically, the plaintiff accused the defendants of false imprisonment and other negligent acts. *Id.* at 711–12. The

9

defendants moved to dismiss the case, arguing that the plaintiff failed to comply with the medical malpractice pre-suit screening requirements. *Id.* at 711. The circuit court agreed and dismissed the case because plaintiff's complaint presented allegations arising of medical care or services. *Id.* The plaintiff then appealed, asserting that his complaint did not present allegations arising out of medical care. *Id.* The Second DCA examined the provisions of the Baker Act and determined that the intentional tort of false imprisonment, as well as plaintiff's negligence claims, did not involve the rendering of medical care or services. *Id.* at 712. The Second DCA reasoned that "[a]lthough a medical diagnosis is necessary in order to involuntarily commit a patient, the process of complying with [the Baker Act] does not require medical skill or judgment." *Id.* Thus, the court held that involuntary commitment procedures under the Baker Act do not involve the rendering of medical care or services. *Id.*

Similarly, the Fifth DCA considered the same underlying issue in *Foshee v. Health Mgmt. Associates*, 675 So. 2d 957 (Fla. 5th DCA 1996). There, the plaintiff went to her treating physician for treatment of her headaches. *Id.* at 959. Plaintiff's physician recommended hospitalization and told plaintiff to go to a health center. *Id.* Upon arriving at the health center, the plaintiff was told by employees that she could not see the doctor unless she was formally admitted to the facility. *Id.* The plaintiff refused to sign a voluntary admission form and was physically prevented from leaving. *Id.* She was then coerced and deceived into signing the voluntary admission forms. *Id.* Plaintiff then sued for false imprisonment and intentional infliction of emotional distress against numerous defendants. *Id.* at 958.

10

The trial court dismissed the complaint. *Id.* On appeal, the Fifth DCA considered whether the Baker Act violations "set up a medical malpractice claim requiring the plaintiff to comply with the pre-suit notice requirements of [the Baker Act]." *Id.* at 959. The Fifth DCA considered the specific facts of the case. *Id.* These facts included that the plaintiff's complaint alleged (1) that she was wrongfully and intentionally prevented, against her will, from leaving the facility; (2) coercion, deception, and misrepresentation that plaintiff voluntarily committed herself; (3) that the defendant doctor ordered the health center to admit plaintiff, knowing that restraint would be used, without first examining her, and refusing to release her even though she repeatedly requested discharge. *Id.* Lastly, the Fifth DCA considered that the plaintiff alleged that the defendants illegally used the Baker Act to detain the plaintiff and did not follow its procedures to allow them to do so legally. *Id.* The Fifth DCA held that, under these specific facts, plaintiff's claim for false imprisonment did not allege any medical malpractice but did allege the intentional tort. *Id.* This renders the pre-suit requirements inapplicable.

This Court finds the reasoning of *Liles* and *Foshee* persuasive. First, the facts of this case closely relate to *Foshee*. Like *Foshee*, the Plaintiff here alleges that she was (1) wrongfully and intentionally prevented, against her will, from leaving; (2) that Dr. Marasigan falsified a Certificate of Professional Initiating Involuntary Examination; (3) that Dr. Marasigan never even examined her; and (4) that the Physician Defendants illegally used the Baker Act to commit Plaintiff and did not follow its procedures to allow them to do so legally. Under these specific facts, the

11

Court finds that the intentional tort of false imprisonment, as well as Plaintiff's negligence claims, did not involve the rendering of medical care or services.

Second, the Court agrees with the Second DCA's reasoning in *Liles* that compliance with the Baker Act does not require medical skill or judgment. *See Liles,* 681 So. 2d at 712. Importantly, the Court acknowledges that the Baker Act requires a medical diagnosis to commit a person under the Baker Act. However, the Court finds that, under these circumstances, the involuntary commitment procedures under the Baker Act do not involve the rendering of medical care or services.

Third, the Court finds the cases cited by the Physicians Defendants unpersuasive. The Physician Defendants cite *Mount Sinai Med. Ctr. v. Fotea*, 937 So. 2d 146 (Fla. 3d DCA 2006) in support of their contention that commitment under the Baker Act involves the rendering of medical services. (Doc. 50 at 16–17). In *Fotea*, the plaintiff presented himself to the defendant hospital for a CT scan. *Fotea*, 937 So. 2d at 147. As part of his visit, the hospital took lab work from the plaintiff. *Id.* That lab work indicated plaintiff had ingested high levels of alcohol and illegal drugs. *Id.* Based on the lab results, the defendant hospital then "Baker Acted"– *i.e.,* involuntarily committed—plaintiff. *Id.* The Third DCA held that the plaintiff's claims clearly arose out of the rendering of medical services. *Id.* Thus, the Third DCA held that the defendant hospital's motion to dismiss should be granted for failure to comply with the pre-suit requirements. *Id.* However, this Court finds the Physician Defendants' reliance on *Fotea* unpersuasive. In *Fotea*, the core of the plaintiff's claims was based on a laboratory result—which the plaintiff

12

alleges was an error—that prompted the involuntary commitment. *See id.* There is no comparable false laboratory or other medical test in this case. Instead, there is an allegation that Dr. Marasigan falsified a Certificate of Professional Initiating Involuntary Examination form. These facts distinguish *Fotea* from *Liles* and *Foshee.*

The Court also finds the Physician Defendants' reliance on *Blom*, 911 So. 2d 211 unpersuasive. The core of the plaintiff's claims in *Blom* centered on whether a physician was wrong in his diagnosis of plaintiff and whether such diagnosis required involuntary commitment. *Id.* at 215. This differs from this case because Plaintiff alleges that she was not examined by Dr. Marasigan, who signed the Certificate of Professional Initiating Involuntary Examination form.

In sum, the Court finds that, under these specific circumstances, Plaintiff's claims for false imprisonment and negligence for violation of the Baker Act procedures did not require her to follow Florida's medical malpractice pre-suit requirements.

### B. Plaintiff's claims under the Baker Act.

Next, the Physician Defendants argue that Plaintiff failed to state a cause of action as to her claims for false imprisonment and negligence per se under the Baker Act. (Doc. 50 at 5–6). Specifically, the Physician Defendants argue that (1) because Plaintiff agreed to a *voluntary* examination, she cannot bring a claim under the Baker Act, which governs *involuntary* examination, and (2) there is no negligence per se cause of action under the Baker Act. (*Id.*). The Court finds that

Plaintiff has pleaded a claim for false imprisonment but did not sufficiently plead a claim for negligence per se.

> ### i. *False Imprisonment.*

In Florida, the Baker Act sets forth the standards for an *involuntary* examination. *See* Fla. Stat. § 394.463. The Act allows an authorized person, such as a police officer, physician, or physician assistant, "to initiate an involuntary examination of an individual whom the officer [or physician] believes may have a mental illness, is substantially likely to cause serious bodily harm to [herself] or others, and refuses a voluntary examination or is unable to understand the need for an examination." *Crane v. Lifemark Hosps., Inc.*, 898 F.3d 1130, 1133 n.1 (11th Cir. 2018) (citing Fla. Stat. § 394.463).

Here, Plaintiff states in her operative Complaint that she voluntarily consented to a mental health examination and transport to the hospital. (Doc. 42 at ¶ 122). The Physician Defendants argue that Plaintiff's voluntary consent bars her ability to bring claims under the Baker Act. (Doc. 50 at 6). Although Plaintiff appears to have consented to a mental health examination and transport, it remains unclear whether Plaintiff's consent was truly voluntary due to (1) the allegations involving the falsification of a "Certificate of Professional Initiating Involuntary Examination" form, (2) Plaintiff's claim that hospital records deemed her admission involuntary, and (3) whether Plaintiff received "conscientious explanation and disclosure of the purpose of the examination" as required under the Baker Act. *See* Fla. Stat. § 394.463(1)(a) (requiring an explanation and disclosure). Noteworthy, Plaintiff accuses Dr. Marasigan and the Physician Defendants of

falsifying the involuntary examination form.  (Doc. 50 at ¶ 122).  She states that the form "contained false information and attributed statements, thoughts, and feelings [that Plaintiff] never in fact thought or felt or communicated to Ms. Gustin."  (*Id.* at ¶ 123).  This form was purportedly used to admit Plaintiff to Park Royal Hospital, and Plaintiff claims the hospital records show that her admission to the hospital was deemed *involuntary*.  (*Id.* at ¶¶ 64, 126).

Under these facts, it is unclear whether Plaintiff's consent was truly voluntary.  Had Plaintiff's consent been voluntary, an involuntary examination form would not have been needed and hospital records would show that her admission was voluntary.  Additionally, the operative Complaint is void of any facts that show that Plaintiff received a conscientious explanation and disclosure of the examination she agreed to as required under the Baker Act.  While the Court recognizes there is a factual dispute as to whether Plaintiff was voluntarily or involuntarily admitted to the hospital, such factual determinations are "inappropriate in deciding a motion to dismiss."  *Twin City Fire Ins. Co. v. Hartman, Simons & Wood, LLP*, 609 F. App'x 972, 977 (11th Cir. 2015).  Accepting the facts in the operative Complaint as true for the purpose of evaluating the Physician Defendants' motion to dismiss, the Court finds that Plaintiff has pleaded a cause of action for false imprisonment under the Baker Act.

### ii. Negligence Per Se.

Turning to the Physician Defendants' next argument—that negligence per se is not a cause of action under the Baker Act—the Court finds that it is unclear whether the Baker Act statute provides a cause of action for negligence per se.  A

negligence per se claim is appropriate under Florida law "when there is a violation of a 'statute which establishes a duty to take precautions to protect a particular class of persons from a particular injury or type of injury.'" *Liese v. Indian River Cnty. Hosp. Dist.*, 701 F.3d 334, 353 (11th Cir. 2012) (citation omitted). A plaintiff pursuing a negligence per se claim must also establish that she "is of the class the statute was intended to protect, that [s]he suffered injury of the type the statute was designed to prevent, and that the violation of the statute was the proximate cause of h[er] injury." (*Id.* (internal quotations and citations omitted)). The Florida Supreme Court in *Murthy v. N. Sinha Corp.*, 644 So. 2d 983 (Fla. 1994) held that, even when a statute imposes a duty upon a defendant, that failure to meet that duty is not enough to establish a negligence per se claim. Rather, a plaintiff needs to either (1) point to a statutorily created private right of action for breach of that duty, or (2) successfully argue that a private right of action should be judicially inferred. *See id.* at 985. Under Florida law, a private right of action will only be judicially inferred if there was legislative intent to create a private remedy against the breaching party. *See id.; see also Blinn v. Smith & Nephew Richards, Inc.,* 55 F. Supp. 2d 1353 (M.D. Fla. 1999).

Here, both parties' pleadings are deficient in their contention of whether strict liability is imposed under the statute. Further, Plaintiff has not demonstrated that the statute is designed to protect a particular class of persons from a particular injury and whether Plaintiff belongs to that particular class. And, plaintiff has not shown whether there is a statutorily created private right of action

16

or whether a private right of action is judicially inferred.  Accordingly, the Court finds that Plaintiff's negligence per se claim, Count VII, is dismissed.

### C.  Plaintiff fails to allege a claim for negligent hiring.

The Physician Defendants next argue that Plaintiff failed to plead a cause of action for negligent hiring.  (Doc. 50 at 7–9).  Specifically, the Physician Defendants argue that Plaintiff failed to show that (1) the Physician Defendants were required to make an investigation and failed to do so; (2) an appropriate investigation would have revealed the unsuitability of an employee, and (3) it was unreasonable for the employer to hire the employee considering the information that should have been known.  (*Id.* at 7–8).  The Court finds that Plaintiff has not pleaded a claim for negligent hiring.

Florida courts have recognized "a duty to exercise reasonable care in **hiring** and retaining safe and competent employees."  *Aspen American Ins. Co. v. Landstar Ranger, Inc.*, 65 F.4th 1261, 1270 (11th Cir. 2023) (quoting *Garcia v. Duffy*, 492 So. 2d 435, 439 (Fla. 2d DCA 1986) (internal quotation marks omitted and emphasis added)).  The "ultimate question of liability . . . is whether it was reasonable for the employer to permit the employee to perform his job in the light of information about him which the employer should have known."  *Id.* at 1269–70 (quoting *Tallahassee Furniture Co. v. Harrison*, 583 So. 2d 744, 751 (Fla. 1st DCA 1991) (internal quotation marks omitted)).  To state a claim for negligent hiring under Florida law, a plaintiff must allege facts showing that: "(1) the employer was required to make an appropriate investigation of the employee and failed to do so; (2) an appropriate investigation would have revealed the unsuitability of the employee for the

particular duty to be performed or for employment in general; and (3) it was unreasonable for the employer to hire the employee in light of the information he knew or should have known." *Malicki v. Doe*, 814 So. 2d 347, 362 (Fla. 2002) (citation omitted). "A claim for negligent hiring arises when, before the time the employee is hired, the employer knew or should have known that the employee was unfit." *Malicki*, 814 So. 2d at 362 n.15 (citing *Garcia*, 492 So. 2d at 438).

Here, Plaintiff's allegations are insufficient to allege a negligent hiring claim. Notably, the operative Complaint fails to allege any facts that would suggest that the Physician Defendants were required to make an investigation into Defendants Marasigan and Gustin. Plaintiff fails to allege that an appropriate investigation would have revealed that Defendants Marasigan and Gustin lacked practical medical knowledge and lacked adherence to ethical standards when each person was hired. The Court acknowledges that Plaintiff has failed to plead sufficient facts to allege a negligent hiring claim. That said, if Plaintiff discovers the necessary facts during the case, Plaintiff may move to amend her complaint in accordance with Federal Rule of Civil Procedure 15. *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). Accordingly, Plaintiff's negligent hiring claim, Count IX, is dismissed.

### D. Plaintiff fails to plead a claim for negligent retention and supervision.

The Physician Defendants next argue that Count X—Plaintiff's claim for negligent retention and supervision against the Millennium Physician Group— should be dismissed. (Doc. 50 at 9–11). The Court agrees.

18

As stated, Florida courts have recognized "a duty to exercise reasonable care in hiring and **retaining** safe and competent employees." *Aspen*, 65 F.4th at 1270 (quoting *Garcia*, 492 So. 2d at 439 (internal quotation marks omitted and emphasis added)). The Florida Supreme Court recognized the tort of negligent supervision in 1954, holding that an employer cannot knowingly keep "a dangerous servant . . . which defendant knew or should have known was dangerous and incompetent. . . ." *Mallory v. O'Neil,* 69 So. 2d 313, 315 (Fla. 1954). Adding to that, negligent supervision and retention occurs when, during the employment, "the employer knows or should know of an employee's unfitness and fails to take further action such as 'investigating, discharge or reassignment.'" *Malicki,* 814 So. 2d at 362 n.15 (quoting *Garcia*, 492 So. 2d at 438–39); *Matthews v. City of Gulfport*, 72 F. Supp. 2d 1328, 1340 (M.D. Fla. 1999); *Martinez v. Pavex Corp.*, 422 F. Supp. 2d 1284, 1298 (M.D. Fla. 2006). A plaintiff states a claim for negligent supervision and retention by alleging "(1) the existence of a relationship giving rise to a legal duty to supervise; (2) the negligent breach of that duty; and (3) that the negligence was the proximate cause of plaintiff's injury." *Nationwide Mut. Co. v. Ft. Myers Total Rehab Ctr., Inc.*, 657 F. Supp. 2d 1279, 1291 (M.D. Fla. 2009) (citing *Collins v. Sch. Bd. of Broward Cnty.*, 471 So. 2d 560, 563 (Fla. 4th DCA 1985)).

To establish a breach, a plaintiff must allege "(1) the employer received actual or constructive notice of an employee's unfitness, and (2) the employer did not investigate or take corrective action such as discharge or reassignment." *See Doe v. Carnival Corp.*, 470 F. Supp. 3d 1317, 1324 (S.D. Fla. 2020) (citations and internal quotation marks omitted). Liability for negligent supervision or retention

19

"occurs after employment begins, where the employer knows or should know of an employee's unfitness and fails to take further action such as investigating, discharge or reassignment." *Malicki*, 814 So. 2d at 362 n.15 (internal quotations omitted and citing *Garcia*, 492 So. 2d at 438–39). A negligent supervision and retention claim "must be based on an injury resulting from a tort which is recognized under common law." *Scelta v. Delicatessen Support Services, Inc.*, 57 F. Supp. 2d 1327, 1348 (M.D. Fla. 1999); *Martinez*, 422 F. Supp. 2d at 1298.

Here, the Physician Defendants correctly point out that Plaintiff fails to allege sufficient facts demonstrating that the Millennium Physician Group had actual or constructive knowledge that Defendants Marasigan and Gustin tended to engage in misconduct, violate ethical rules, and were unfit to serve as employees. Notably, Plaintiff makes a vague allegation that the Millennium Physician Group "fail[ed] to adequately or properly supervise Defendants Marasigan or Gustin and/or i[t] fail[ed] to terminate the employment of these Defendants. . . ." (Doc. 42 at ¶ 143). However, Plaintiff fails to state why or describe an event that would have triggered the Millennium Physician Group to perform an investigation or take corrective action against Defendants Marasigan or Gustin. In short, Plaintiff has failed to allege any facts that the Millennium Physician Group (1) received actual or constructive notice of Defendant Marasigan or Gustin's unfitness, and (2) that they did not take corrective action against Marasigan or Gustin. Therefore, the Court finds that Count X—Plaintiff's claim for negligent retention and supervision against the Millennium Physician Group—is due to be dismissed. That said, if

20

Plaintiff discovers the necessary facts during the case, Plaintiff may move to amend her complaint in accordance with Federal Rule of Civil Procedure 15.

### E. Plaintiff pleaded a claim for Intentional Infliction of Emotional Distress.

Lastly, the Physician Defendants argue that Plaintiff has failed to plead Count XII—her claim for intentional infliction of emotional distress. (Doc. 50 at 11–12). Specifically, the Physician Defendants assert that Plaintiff cannot bring a claim for intentional infliction of emotional distress because her agreement to obtain a medical examination was voluntary. (*Id.* at 12). The Court disagrees with the Physician Defendants and finds that Plaintiff's claim is well-pleaded.

To state a claim for intentional infliction of emotional distress under Florida law, the plaintiff must allege: "(1) deliberate or reckless infliction of mental suffering; (2) by outrageous conduct; (3) which conduct must have caused the suffering; and (4) the suffering must have been severe." *Hart v. United States*, 894 F.2d 1539, 1548 (11th Cir. 1990) (citations omitted). As to the first element, recklessness occurs when a defendant intended his behavior and knew or should have known that emotional distress would likely result. *Frias v. Demings*, 823 F. Supp. 2d 1279, 1288 (M.D. Fla. 2011) (citation omitted). Outrageous conduct means that the defendant went "beyond all bounds of decency, and to be regarded as odious and utterly intolerable in a civilized community." *Id.* As to the fourth element, "severe emotional distress means emotional distress of such a substantial quality or enduring quality[ ] that no reasonable person in a civilized society should be expected to endure it." *Corbin v. Prummell*, 655 F. Supp. 3d 1143, 1165 (M.D. Fla.

2023) (quoting *Kim*, 249 So. 3d at 1305 (citation omitted)).  Whether a person's

conduct is sufficiently outrageous and intolerable as to form the basis for a claim of

intentional infliction of emotional distress is *a matter of law for the court,* not a

question of fact.  *Golden v. Complete Holdings, Inc.*, 818 F. Supp. 1495, 1499 (M.D.

Fla. 1993) (emphasis in original and citing *Baker v. Fla. Nat'l Bank,* 559 So. 2d 284,

287 (Fla. 4th DCA 1990)).

Here, Plaintiff alleges that the Physician Defendants' conduct "deliberately or

recklessly caused Ms. King severe mental suffering."  (Doc. 42 at ¶ 145).  In support,

Plaintiff emphasizes that Dr. Marasigan and the Physician Defendants falsified the

Certificate of Professional Initiating Involuntary Examination form (*id.* at ¶ 122)

and her admission to the hospital was involuntary (*id.* at ¶¶ 64, 126).  Further,

Plaintiff states that the form "contained false information and attributed

statements, thoughts, and feelings [that Plaintiff] never in fact thought or felt or

communicated to Ms. Gustin."  (*Id.* at ¶ 123).  As stated, the Court recognizes that it

is unclear whether Plaintiff's consent to the hospital was truly voluntary.  *See supra*

Section (I)(B)(i).

That said, accepting the allegations in the operative Complaint as true, the

Court finds that the falsification of the form, which purportedly led to Plaintiff's

confinement, would constitute reckless behavior.  The Physician Defendants would

have, or should have known, that an involuntary commitment would lead to

emotional distress.  Further, if committed as alleged, the Physician Defendants'

behavior would certainly be beyond all bounds of decency and intolerable in a

civilized community.  Notably, Plaintiff states that she experienced severe

emotional distress and her mental health "markedly deteriorate[d]." (Doc. 42 at ¶ 148). Adding to that, Plaintiff asserts that she "suffered worsened depression, fear, anxiety, nightmares, sleeplessness, loss of hope, loss of trust in law enforcement and medical professionals, and to suffer [sic] from ongoing symptoms of post-traumatic stress disorder for which she is under the care of a mental health professional." (*Id.* at ¶ 150). Upon review of the facts alleged in the Complaint, the Court finds that Plaintiff has sufficiently pleaded a claim for intentional infliction of emotional distress.

Therefore, for the preceding reasons, the Court finds that the Physician Defendants' motion to dismiss (Doc. 50) is **GRANTED in part**. The Court dismisses Counts VII, IX, and X.

## II.    The Sheriff Defendants' Motion to Dismiss.

Next, the Sheriff Defendants argue that Plaintiff failed to state a claim under Federal Rule of Civil Procedure 12(b)(6) because Plaintiff's Complaint (1) is a shotgun pleading, (2) failed to comply with mandatory condition precedent requirements, and (3) failed to allege factual allegations against Deputy Ward and Sergeant Armato. (*See* Doc. 42). Further, they argue that (4) qualified immunity applies to Corporal Brett, Deputy Ward, and Sergeant Armato, (5) negligence per se is not a cause of action under Florida's Baker Act statute, (6) Plaintiff failed to plead a false imprisonment claim, (6) Plaintiff failed to plead a claim for intentional infliction of emotional distress, (7) Plaintiff has failed to plead *Monell* and deprivation of liberty claims, (8) Plaintiff has failed to plead a Fourth Amendment

unlawful seizure claim, and (9) Lee County is not a proper party to this action. The Court will address each argument in turn.

### A. Plaintiff's Complaint is not a shotgun pleading.

First, the Sheriff Defendants argue that Plaintiff's Complaint is a shotgun pleading. (Doc. 52 at 3–7.) Specifically, they contend that the counts pleaded against them are "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." (*Id.* at 6–7 (citation omitted)). The Court disagrees.

The Federal Rules of Civil Procedure provide that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," and that a "party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 8(a)(2); Fed. R. Civ. P. 10(b). Complaints that fail to meet these standards are sometimes referred to as "shotgun pleadings." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015). The Eleventh Circuit has "repeatedly condemned shotgun pleadings," explaining that they "fail[] to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Embree v. Wyndham Worldwide Corp.*, 779 F. App'x 658, 662 (11th Cir. 2019) (citing *Weiland*, 792 F.3d at 1321 n.9, 1323).

The Eleventh Circuit has enumerated four types of shotgun complaints. *Weiland*, 792 F.3d at 1321. The first type "is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination

24

of the entire complaint." *Id*. at 1321. The second is a pleading "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Id*. at 1322. The third fails to "separat[e] into a different count each cause of action or claim for relief." *Id*. at 1322–23. And the fourth type asserts "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id*. at 1323.

Here, the Sheriff Defendants argue that Plaintiff's Complaint constitutes a shotgun pleading as to Counts I, II, IV, V, VI, and VIII. (Doc. 52 at 5). Specifically, they argue that Counts I and II incorrectly incorporate (1) paragraphs 18 through 72, which describe the events that occurred before law enforcement arrived at the scene and (2) paragraphs 63 through 72, which describe Plaintiff's injuries and involuntary admission to the hospital. (*Id*.). The Sheriff Defendants make similar arguments for Counts IV, V, and VI—noting that paragraphs 18 through 72 are incorporated—and for Count VIII, which incorporates paragraphs 3 through 73. (*Id*.). The Sheriff Defendants argue that because these paragraphs have "nothing to do with the law enforcement defendants," incorporating them into the counts against the Sheriff Defendants is improper.[6] (*Id*.). The Court disagrees. A dismissal under Rules 8(a)(2) and 10(b) is appropriate where "it is virtually impossible to know which allegations of fact are intended to support which claim(s)

_____

[6] Additionally, the Sheriff Defendants argue that Counts IV, V, VI, and VIII violate the first type of shotgun pleadings—where each count adopts the allegations of all preceding counts. (Doc. 52 at 5–6).

for relief." *Anderson v. Dist. Bd. of Trustees of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996). No virtual impossibility exists here. The unifying characteristic of shotgun pleadings is that they fail "to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland*, 792 F.3d at 1323. Notably, Plaintiff explains that the incorporation of the factual allegations leading up to the arrival of law enforcement—and the incorporation of Plaintiff's involuntary admission along with her injuries—provide critical background information so that the Sheriff Defendants can understand how the events unfolded, what prompted the dispatch of the officers, and so forth. (Doc. 58 at 7). The Court finds Plaintiff's arguments persuasive. And, upon review of the operative Complaint, the Court holds that Plaintiff has provided adequate notice to the Sheriff Defendants.

### B. Plaintiff failed to comply with mandatory precedent requirements.

Florida Statutes Section 768.28 sets forth Florida's waiver of sovereign immunity for suits against its government entities. Section 768.28 provides that "[a]n action may not be instituted . . . unless the claimant presents the claim in writing to the appropriate agency, and also . . . presents such claim in writing to the Department of Financial Services, within 3 years after such claim accrues." Fla. Stat. § 768.28(6)(a). This requirement is a condition precedent to maintaining an action against Florida's government entities. Fla. Stat. § 768.28(6)(b). A claimant must perform the conditions in order to bring suit, and this compliance must be alleged in the complaint. *Commercial Carrier Corp. v. Indian River Cnty.,*

371 So. 2d 1010, 1022–23 (Fla. 1979) (citing Fla. R. Civ. P. 1.120(c)).  These conditions also include that the claimant includes her date and place of birth, social security number, and any information regarding unpaid prior adjudicated claims against the State.  *See* Fla. Stat. § 768.28(6)(a)–(c).  Sovereign immunity waivers under Section 768.28 must be strictly construed.  *Levine v. Dade Cnty. Sch. Bd.*, 442 So. 2d 210, 212 (Fla. 1983).

Here, the Sheriff Defendants attached Plaintiff's "Notice of Intent to Sue" to their motion to dismiss.[7]  (Doc. 52-1).  Upon review of the Notice, the Court finds that Plaintiff has failed to comply with the condition precedent requirements of Fla. Stat. § 768.28.  True, Plaintiff pleaded compliance with the pre-suit notice requirements imposed by Fla. Stat. § 768.28.  (Doc. 42 at ¶ 73).  However, Plaintiff's date of birth, place of birth, and social security number are all absent from the Notice of Intent to Sue.  *See* Fla. Stat. § 768.28(6)(c); *see also McLaughlin v. Fla. Int'l Univ. Bd. of Trustees*, 533 F. Supp. 3d 1149, 1173–74 (S.D. Fla. 2021) (dismissing case for failing to include components required by Fla. Stat. § 768.28(6)(c).  In short, Plaintiff failed to provide these mandatory components required by Section 768.28(6)(c).

---

[7] The Court may consider a document attached to a motion to dismiss in ruling on such motion without converting it into one for summary judgment.  *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002).  Documents attached to a motion to dismiss may be considered if they are (1) central to plaintiff's claim and (2) undisputed.  *Id.* Notably, Plaintiff does not dispute the Notice.  (Doc. 58 at 8).  Rather, Plaintiff's lone argument is that it is improper to resolve this dispute on a motion to dismiss. (*Id.*).

Additionally, Section 768.28(6)(a) provides that the *claimant* must present the claim in writing.  Here, Plaintiff's sister Stacy Maldonado wrote an email to Sheriff Marceno stating, "I am writing on behalf of my sister, Tammy King, to provide you with formal notice of her intent to file a lawsuit against the Lee County Sheriff Office. . . ."  (Doc. 52-1 at 1).  Ms. Maldonado is not the *claimant* in this case. As stated, sovereign immunity waivers under Section 768.28 must be strictly construed.  *Levine*, 442 So. 2d at 212.  Strictly construing Section 768.28, Plaintiff has failed to comply with the statute.  Accordingly, Plaintiff's state law claims against the Sheriff Defendants, Counts VIII and XI, are dismissed without prejudice.  The Court will allow Plaintiff the opportunity to comply with Fla. Stat. § 768.28 and amend her Complaint against the Sheriff's Defendants.

## C. Plaintiff failed to assert factual allegations against Deputy Ward and Sergeant Armato.

Next, the Sheriff Defendants argue that Plaintiff has failed to assert any factual allegations against Deputy Ward and Sergeant Armato.  (Doc. 52 at 9–10). They contend that claims against Deputy Ward and Sergeant Armato should be dismissed.  (*Id.*).  The Court agrees.

To state a claim against police officers in their individual capacities, a plaintiff is required to show that they were personally involved in the acts or omissions that resulted in the constitutional deprivation.  *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995) (citing *Zatler v. Wainwright,* 802 F.2d 397, 401 (11th Cir. 1986)).  "The failure of the plaintiff to identify his claims with sufficient clarity to enable the defendant to frame a [responsive] pleading constitutes shotgun

pleading." *Sledge v. Goodyear Dunlop Tires N. Am., Ltd.,* 275 F.3d 1014, 1018 n.8 (11th Cir. 2001); *see also Boatman v. Town of Oakland,* 76 F.3d 341, 343 n.6 (11th Cir. 1996) (characterizing as a "'shotgun' pleading" a complaint that failed to place a defendant on notice of what the claim was and the grounds upon which it rested).

Here, Plaintiff's Complaint is unclear as to how Deputy Ward and Sergeant Armato were involved in the underlying events leading to Plaintiff's commitment under the Baker Act.  Plaintiff states in her Complaint, "Upon information and belief, the source of which is the Internal Affairs Bureau of the Lee County Sheriff's Office, Defendants Armato and Ward were present at the subject Millennium Physician Group office at *some* point during the events described herein."  (Doc. 42 at ¶ 39 (emphasis added)).  Plaintiff claims that "The degree of force used by Defendant Brett and sanctioned by Defendants Ward and Armato prior to and in effectuating the seizure/arrest of Ms. King was excessive and unreasonable. . . ." (*Id.* at ¶ 84).  Further, Plaintiff asserts that "Defendants Ward and Armato are also culpable for the violation of Ms. King's clearly established right described herein based upon their respective failure to intervene to protect Ms. King." (*Id.* at ¶ 86). These conclusory allegations, without more, are insufficient.  For instance, the general allegation that Defendants Armato and Ward were present "at *some* point" at the Millennium Physician Group does not give rise to an inference that they not only witnessed the alleged behavior of Corporal Brett but rather they failed to intervene to stop him.  Perhaps Deputy Ward and Sergeant Armato arrived once Plaintiff was placed in the backseat of the police cruiser.  That said, it is entirely unclear when Deputy Ward and Sergeant Armato arrived, what events they

witnessed, and what behavior they failed to stop. Additionally, it is unclear what capacity Deputy Ward and Sergeant Armato were present in. Plaintiff's Complaint states that Defendant Ward is a Deputy Sheriff and Defendant Armato is a Sergeant. (Doc. 42 at ¶¶ 7, 8). But, Plaintiff's Complaint states that Defendant Ward was the one present "in a supervisory capacity." (*Id.* at ¶ 39). This is unclear. Taking the operative facts in the operative Complaint as true, the Court is unable to determine how Defendants Ward and Armato were involved in this incident. Accordingly, Plaintiff's claims against Deputy Ward and Sergeant Armato are due to be dismissed without prejudice.

### D. Qualified Immunity does not bar Plaintiff's claims at this stage in the litigation.

The Sheriff Defendants next argue that they are entitled to qualified immunity on Count I (unlawful search and seizure under the Fourth Amendment) and Count II (excessive force under the Fourth Amendment). (Doc. 52 at 10–22). The Court finds that, at this stage in the litigation, Plaintiff may proceed on Counts I and II.

"Qualified immunity shields a government official from liability unless he violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Myrick v. Fulton Cnty., Ga.*, 69 F.4th 1277, 1297 (11th Cir. 2023) (citation and internal quotation marks omitted). Qualified immunity balances two public interests: "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Baker v. City*

30

*of Madison, Ala.*, 67 F.4th 1268, 1278 (11th Cir. 2023) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)) (internal quotation marks omitted).

A "defendant asserting the qualified immunity defense bears the initial burden of showing that he or she was acting within his or her discretionary authority." *Myrick*, 69 F.4th at 1297 (citing *Piazza v. Jefferson Cnty.*, 923 F.3d 947, 951 (11th Cir. 2019)). Only after the defendant makes that showing does "the burden shift[] to the plaintiff to show that qualified immunity is not appropriate." *Myrick*, 69 F.4th at 1297 (citing *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002)). To determine whether a defendant acted within his or her discretionary authority, courts "assess whether they are of a type that fell within the employee's job responsibilities." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004). Courts ask "whether the government employee was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize." *Id.* at 1265–66.

Here, the Sheriff Defendants have satisfied their initial burden of showing that they were acting within their discretionary authority. Notably, Defendants Brett, Ward, Armato, and Olivio were on-duty officers of the Lee County Sheriff's Office, who were involved in the arrest of Plaintiff. (Doc. 42 at ¶¶ 6, 7, 8, 9). The Eleventh Circuit has held that officers conducting arrest and investigative functions are acting within their discretionary authority. *Hinson v. Bias*, 927 F.3d 1103, 1116 (11th Cir. 2019) (holding that the defendant officers were acting within their discretionary authority when they were conducting arrest and investigative

functions).  Thus, the Sheriff Defendants have established that they were acting under their discretionary authority by arresting Plaintiff.

Since the Sheriff Defendants' initial burden has been met, the burden now falls on Plaintiff to show that qualified immunity is inappropriate.  Plaintiff asserts that a qualified immunity defense fails when there is a clear violation of established constitutional rights.  The Court finds that Plaintiff has satisfied her burden to show that qualified immunity is inappropriate at this litigation stage.  To overcome a qualified immunity defense, a plaintiff must demonstrate that (1) the defendant violated a constitutional right and (2) the violation was clearly established. *McClish v. Nugent*, 483 F.3d 1231, 1237 (11th Cir. 2007).  "To survive a motion to dismiss based upon qualified immunity, the plaintiff must have alleged sufficient facts to support a finding of a constitutional violation of a clearly established law." *Chandler v. Sec'y of Fla. Dep't of Transp.,* 695 F.3d 1194, 1198–99 (11th Cir. 2012).

A right may be clearly established for qualified immunity purposes in one of three ways: "(1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law." *Lewis v. City of W. Palm Beach, Fla.*, 561 F.3d 1288, 1291–92 (11th Cir. 2009) (citation omitted).  A plaintiff must show an officer did not have probable cause to seize her under Florida's Baker Act. *Khoury v. Miami-Dade Cnty. Sch. Bd.*, 4 F.4th 1118, 1126 (11th Cir. 2021); *see also Carter v. Butts Cnty.*, 821 F.3d 1310,

1319 (11th Cir. 2016) (holding that it is well established that a warrantless arrest without probable cause violates the Fourth Amendment).

Accepting the facts in the operative Complaint as true, both requirements of qualified immunity appear to be satisfied.  Notably, Plaintiff pleads that she was falsely seized/arrested (Doc. 42 at ¶ 84) and excessive force was used in her seizure (*id.*).  She alleges that probable cause did not exist for her seizure/arrest because Ms. King "did not pose any threat of harm to herself or others and no facts or circumstances existed at the time of her seizure to support a finding of 'substantial likelihood' that she would."  (*Id.* at ¶¶ 75–77).  This is required under the Baker Act.  *See* Fla. Stat. § 394.463(1)(b)(2).  To the contrary, the Sheriff Defendants argue that Corporal Brett had probable cause, or at least arguable probable cause, to take Plaintiff into custody based on the Physician Defendants' execution of the Certificate of Professional Initiating Involuntary Examination form.  (Doc. 52 at 13).  But, as Plaintiff correctly points out, it is unclear whether Corporal Brett saw, knew of, or had the form in his possession.  (Doc. 58 at 14).

Plaintiff next claims that Defendant Brett and Olivio used excessive force against her during her time in their custody.  (Doc. 42 at ¶¶ 81, 82, 83).  Specifically, she alleges that Corporal Brett slammed her up against the bathroom wall, put handcuffs on her, and sprayed her with pepper spray.  (*Id.* at ¶ 35).  She states that Defendant Olivio "used excessive force against Ms. King during the time Ms. King spent in his custody" because Deputy Olivio took no action to improve Ms. King's condition while she was confined in the transport van.  (*Id.* at ¶¶ 56, 83).  Under the Baker Act, a law enforcement officer who is transporting a person for an

33

involuntary examination "shall restrain the person in the least restrictive manner available and appropriate under the circumstances."  Fla. Stat. § 394.463(2)(a)(2).

The above facts demonstrate that, at this stage in the litigation, Ms. King has pleaded that the Defendants Brett and Olivio violated her constitutional rights and such rights were clearly established at the time of her seizure.  She has a Fourth Amendment right to be free from unreasonable arrests/seizures, and such rights were clearly established at the time of Plaintiff's arrest.  *Pearson v. Callahan*, 555 U.S. 223 (2009) (holding that the Fourth Amendment right to be free from unreasonable searches and arrests is clearly established); *see also Khoury*, 4 F.4th at 1126 (holding that plaintiff must show an officer did not have probable cause to detain her under the Baker Act); *see also D. P. v. Sch. Bd. of Palm Beach Cnty.*, 658 F. Supp. 3d 1187, 1220 n.11 (S.D. Fla. 2023) (finding that, when the seizure itself is unlawful, a claim that the force used was excessive is subsumed in the seizure analysis because any amount of force is excessive).

To be clear, the Court will not dismiss the amended complaint on qualified immunity grounds at this early stage of litigation.  That said, the Sheriff Defendants may again invoke qualified immunity at summary judgment if they so choose.  Accordingly, the Sheriff Defendants' motion to dismiss on qualified immunity grounds is denied.

34

**E. Plaintiff has not established a negligence per se cause of action under the Baker Act.**

The Sheriff Defendants next argue that Plaintiff has not shown that negligence per se is a cause of action under the Baker Act. (Doc. 52 at 23–24). Specifically, they contend that the statute does not impose strict liability. (*Id.* at 23). As stated, the Court finds that Plaintiff has not shown that whether strict liability is imposed under the statute. *See supra* Section (I)(B)(ii). Further, Plaintiff has not demonstrated that the statute is designed to protect a particular class of persons from a particular injury and whether Plaintiff belongs to that particular class. *See id.* Accordingly, the Court finds that Plaintiff's negligence per se claim, Count VII, is dismissed.

**F. Plaintiff's false imprisonment claim is due to be dismissed.**

The Sheriff Defendants argue that Plaintiff has failed to state a claim for false imprisonment for two reasons. First, they claim that "Ms. King was lawfully taken into custody by law enforcement after Dr. Marasigan executed a Certificate of Professional Initiating Involuntary Examination. (Doc. 52 at 25). Second, they claim that the count fails against Sheriff Marceno because Plaintiff cannot bring a claim against him based on actions by the individual officers. (*Id.*). As stated, the Court found that Plaintiff failed to comply with mandatory pre-suit requirements imposed by Fla. Stat. § 768.28(6)(c). *See supra* Section (II)(B). Accordingly, Plaintiff's false imprisonment claim is dismissed as to the Sheriff's Defendants.

### G. Plaintiff has failed to plead a claim for intentional infliction of emotional distress.

The Sheriff Defendants next assert that Plaintiff has not pleaded a claim for intentional infliction of emotional distress because (1) the conduct does not rise to the level of conduct necessary to support such a claim and (2) the resulting mental suffering was not severe enough. (Doc. 52 at 27–28). The Court previously found that Plaintiff failed to meet mandatory pre-suit requirements. *See supra* Section (II)(B). Thus, Count XI is due to be dismissed.

To state a claim for intentional infliction of emotional distress under Florida law, the plaintiff must allege: "(1) deliberate or reckless infliction of mental suffering; (2) by outrageous conduct; (3) which conduct must have caused the suffering; and (4) the suffering must have been severe." *Hart*, 894 F.2d at 1548 (citations omitted). As to the first element, recklessness occurs when a defendant intended his behavior and knew or should have known that emotional distress would likely result. *Frias*, 823 F. Supp. 2d at 1288. Outrageous conduct means that the defendant went "beyond all bounds of decency, and to be regarded as odious and utterly intolerable in a civilized community." *Id.* As to the fourth element, "severe emotional distress means emotional distress of such a substantial quality or enduring quality[ ] that no reasonable person in a civilized society should be expected to endure it." *Corbin*, 655 F. Supp. 3d at 1165 (quoting *Kim*, 249 So. 3d at 1305 (citation omitted)).

While the Court has found that Plaintiff failed to meet the mandatory pre-suit requirements, the Court nonetheless discusses Plaintiff's pleading of her

36

intentional infliction of emotional distress claim against the Sheriff Defendants. The Sheriff Defendants' argument focuses on whether the resulting mental suffering and its severity met the "severe emotional distress component" of Plaintiff's claim.   Accepting the facts in the operative facts as true, the Court finds that Plaintiff has pleaded the requisite severity to sustain a claim for intentional infliction of emotional distress.  As stated, "severe emotional distress means emotional distress of such a substantial quality or enduring quality[ ] that no reasonable person in a civilized society should be expected to endure it." *Corbin*, 655 F. Supp. 3d at 1165 (quoting *Kim*, 249 So. 3d at 1305 (citation omitted)).  Here, Plaintiff mentioned to Ms. Gustin during her appointment that she had been suffering feelings of sadness and voluntarily agreed to seek mental health treatment.  (Doc. 42 at ¶¶ 20, 24).  Plaintiff then agreed to a voluntary transport to the hospital.  (*Id.* at ¶ 25).  The situation then turned sour when an altercation ensued when Corporal Brett arrived on the scene to transport Plaintiff to the hospital.  Plaintiff was then slammed up against the bathroom wall, handcuffs were put on her, and she was sprayed with pepper spray.  (*Id.* at ¶ 35).  Further, she states that Defendant Olivio left her no ability to brace herself in the transport van and did not provide her water or otherwise help her while she was in a fragile state.  (*Id.* at ¶¶ 56, 57).

As Plaintiff correctly points out, there is no evidence to suggest that Ms. King was a danger to the community or posed a threat to the officers.  As she was attempting to seek mental health treatment, restraining Ms. King with force, pepper spraying her, and allowing her to sit in her urine and vomit for hours would

certainly cause a severe emotional reaction that no person in a civilized society would be expected to endure.  But, the Court finds that, while Plaintiff may have pleaded a claim for intentional infliction of emotional distress, the claim must be dismissed for failure to follow the pre-suit requirements.  *See supra* Section (II)(B).  As to the intentional infliction of emotional distress claim against Sheriff Marceno, the Court finds that the claim against Sheriff Marceno must be dismissed because Plaintiff has not pleaded that the Sheriff personally participated in the acts.  *See Am. Fed'n of Labor v. City of Miami*, 637 F.3d 1178, 1190 (11th Cir. 2011) (A supervisor can only "be held liable for the actions of his subordinates . . . if he personally participates in the act that causes the constitutional violation or where there is a causal connection between his actions and the constitutional violation that his subordinates commit.").

### H. Plaintiff's Monell Claims.

Plaintiff alleges that Defendants Marceno and Lee County violated the Fourth Amendment under *Monell* because they (1) violated the rights of Plaintiff based upon an official policy or custom and (2) failed to properly train their deputies.  (Doc. 42 at 22–27).  Further, Plaintiff brings a claim under *Monell* for violating the Fourteenth Amendment for deprivation of liberty without due process based upon an official policy or custom.  (*Id.* at 27–28).  The Sheriff Defendants argue that these claims should be dismissed.

Under *Monell*, a local official sued in his official capacity may be held liable under section 1983 for the conduct of one of his subordinates where that official's "edicts or acts may fairly be said to represent official policy."  *Monell v. Dep't of Soc.*

*Services of City of N.Y.*, 436 U.S. 658, 694 (1978).  For example, where a county sheriff promulgated a particular county law enforcement policy and "was acting as the final decisionmaker for the county," the sheriff was found to be subject to liability under section 1983, where that policy led to the violation of citizens' constitutional rights.  *Pembaur v. City of Cincinnati*, 475 U.S. 469, 485 (1986).  As Justice White noted in concurrence, because the Sheriff "chose a course that was not forbidden by any applicable law, a choice that [he] then had the authority to make," this course was the official policy.  *Id.* at 486–87.  "[P]roof that a municipality's legislative body or authorized decisionmaker has intentionally deprived a plaintiff of a federally protected right necessarily establishes that the municipality acted culpably."  *Board of Cnty. Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 405 (1997).  Furthermore, "the conclusion that the action taken or directed by the municipality or its authorized decisionmaker itself violates federal law will also determine that the municipal action was the moving force behind the injury of which the plaintiff complains."  *Id.*

> i. *Plaintiff has not pleaded a Fourth Amendment claim under Monell for violation of an official policy or custom.*

Defendant Sheriff Marceno is sued in his official capacity.[8]  "For liability purposes, a suit against a public official in his official capacity is considered a suit against the local government entity he represents."  *Owens v. Fulton County*, 877 F.2d 947, 951 n.5 (11th Cir. 1989) (citing *Kentucky v. Graham,* 473 U.S. 159, 166

---

[8] Plaintiff also sues Lee County for the same claims.  Lee County's liability will be discussed in depth below.

(1985)).  "A governmental entity is not liable under [Section] 1983, merely as a matter of respondeat superior, for constitutional injuries inflicted by its employees." *Brown v. Neumann*, 188 F.3d 1289, 1290 (11th Cir. 1999) (emphasis removed and citation omitted).  Rather, a governmental entity may be liable under Section 1983 only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury."  *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978) (holding that liability of municipalities and other governmental entities under Section 1983 is limited to instances of official policy or custom).  A plaintiff must demonstrate: "(1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the [municipality's] policy or custom caused the violation."  *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004).  A plaintiff can establish a county policy by either (1) pleading an official promulgated county policy or (2) an unofficial custom or practice of the county shown through the repeated acts of a final policymaker for the county.  *Grech v. Clayton Cnty., Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003).

Here, Plaintiff has failed to plead a Fourth Amendment claim under *Monell* for violating an official policy or custom.  Notably, Plaintiff attached an excerpt to her Complaint from a policy manual obtained from the Lee County Sheriff's Office. (Doc. 42 at ¶ 103).  This excerpt describes some of the safety measures that deputies should follow, such as complete searches, to ensure deputy safety when transporting someone with a mental health issue.  Plaintiff then vaguely states that "[t]hese

policies constitute deliberate indifference towards the constitutional (specifically, Fourth Amendment) rights of persons dealing with or perceived to be dealing with mental health issues with whom the Sheriff or Sheriff's Deputies come into contact." (*Id.* at ¶ 104). Plaintiff does not identify what is unconstitutional about these policies or how the rights of persons dealing with mental health issues are violated. Further, Plaintiff fails to explain how these policies negatively affected her. Plaintiff then attempts to engage in a post-hoc rationalization of the policies in her motion to dismiss rather than explaining that in her Complaint. This is improper. *Burgess v. Religious Tech. Ctr., Inc.*, 600 F. App'x 657, 665 (11th Cir. 2015) ("We repeatedly have held that plaintiffs cannot amend their complaint through a response to a motion to dismiss."). Accordingly, the Court dismisses without prejudice Count IV against Defendants Marceno and Lee County. Additionally, the Court dismisses Count VI without prejudice for the same reasons stated above.

    ii.  *Sheriff Marceno and Lee County are not liable under Monell for failure to train.*

    The Supreme Court has explained that a failure to train gives rise to liability under *Monell* only under limited circumstances. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). "[T]he inadequacy of police training may serve as the basis for [Section] 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Id.* Put another way, liability may be imposed where a police department's failure to train its officers constitutes a deliberate or conscious choice by the department. *Id.* at 388–89. "[A] plaintiff must present some evidence that the

municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998). Without proof that the municipal entity was aware of a prior incident in which constitutional rights were similarly violated, liability for failure to train will not be found. *See Board of Cnty. Com'rs of Bryan County, Okl.*, 520 U.S. at 407 (Municipal decisionmakers' "continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the deliberate indifference—necessary to trigger municipal liability.").

Here, Plaintiff's Complaint has failed to plead any prior constitutional violations involving Lee County Sheriff Deputies and the procedures relating to the Baker Act. Notably, Plaintiff has not pointed to a single prior incident where a Lee County Sheriff Deputy unlawfully detained or used excessive force upon an individual during a seizure under the Baker Act. Due to Plaintiff's failure to allege sufficient facts demonstrating previous constitutional violations relating to the Baker Act, the Court finds that Plaintiff has not established that Sheriff Marceno or Lee County is liable under Monell for a failure to properly train and supervise officers. Accordingly, Count V is dismissed without prejudice.

## I. Plaintiff has pleaded a claim for unlawful search pursuant to the Fourth Amendment.

Next, the Sheriff Defendants argue that Count III—Plaintiff's Fourth Amendment unlawful search and seizure claim—should be dismissed. (Doc. 52 at

33).  In support, the Sheriff Defendants argue that probable cause, or at least

arguable probable cause, existed to take Ms. King into custody pursuant to the

Baker Act.  (*Id.*).  The Court finds that Plaintiff may proceed on Count III for the

reasons stated in the Court's prior section.  *See supra* Section II(D) (holding that

Plaintiff pleaded that she was falsely seized/arrested and excessive force was used

in her seizure).

### J.  Lee County as a party to this action.

Lastly, the Sheriff Defendants argue that Lee County is not a proper party to

this action because "the Sheriff is not a county employee or agent, the County does

not employ, train, discipline or supervise the Sheriff's deputies, and the County has

no role in the law enforcement function of the Sheriff."  (Doc. 52 at 34).   At this

juncture, the Court does not have the information necessary to either dismiss

the County from this case or affirmatively rule that the County is a proper

defendant.

The Eleventh Circuit has "not been entirely consistent on whether the

relevant entity in an official-capacity suit against a sheriff in Florida is the County

or the Sheriff's Department (as a unit operating autonomously from the County)."

*Brown v. Neumann*, 188 F.3d 1289, 1290 n.2 (11th Cir. 1999).  In *Lucas v.

O'Loughlin*, 831 F.2d 232 (11th Cir. 1987), the Eleventh Circuit concluded that

although a sheriff was elected by virtue of state law, "he was elected to serve the

county as sheriff."  *Id.* at 235. The Eleventh Circuit explained:

> In that capacity, he had absolute authority over the appointment and
> control of his deputies. His and their salaries were paid by local taxation
> and according to a budget approved by the county commissioners.  We

conclude, therefore, that his act was the act of [the] County. The trial court erred in dismissing the county as defendant.

*Id.*  Later, in *McMillian v. Monroe County, Ala.*, 520 U.S. 781 (1997), the Supreme Court held that in determining whether a sheriff is a state or county policymaker for purposes of a section 1983 action, "the question is not whether [the sheriff] acts for [the state] or [the county] in some categorical, 'all or nothing' manner," but rather whether the sheriff is acting for the state "in a particular area, or on a particular issue."  *Id.* at 785.

Post-*McMillian*, the Eleventh Circuit has found that "[w]hen, as here, the defendant is the county sheriff, the suit is effectively an action against the governmental entity he represents—in this case Monroe County."  *Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1115 (11th Cir. 2005); *see also Adcock v. Baca*, 157 F. App'x 118, 119 (11th Cir. 2005) ("When, as here, the defendant in a § 1983 civil rights action is the county sheriff, the suit is effectively an action against the governmental entity he represents—in his case, Polk County.") (citation omitted).

At this juncture, the Court does not have the information necessary to either dismiss the County from this case or to affirmatively rule that the County is a proper defendant in this matter.  Accordingly, the County's motion is denied without prejudice to the County renewing these arguments at the summary judgment stage.

Therefore, for the preceding reasons, the Court finds that the Sheriff Defendants' motion to dismiss (Doc. 52) is **GRANTED in part**.

44

### III.    The Physician Defendants' Motion to Sever and Remand.

Lastly, the Court addresses the Physician Defendants' motion for severance and to remand to state court (Doc. 51).  The Physician Defendants argue that, under Federal Rule of Civil Procedure 20 and 21, the claims against Millennium Physician Group, Dr. Marasigan, and Gustin do not involve a federal question and do not have a common question of law or fact to the claims against the Sheriff Defendants. (Doc. 51 at 4–5).  Thus, they contend that the claims against them should be severed and remanded.  The Court disagrees.

Rule 21 of the Federal Rules of Civil Procedure permits a district court, in the interest of case management, to sever misjoined parties and claims. Fed. R. Civ. P. 21; s*ee also, e.g., In re Amergi ex rel. Amergi v. Palestinian Auth.*, 611 F.3d 1350, 1367 (11th Cir. 2010) (affirming district court's discretionary decision to sever plaintiffs where "the case had become something of a nightmare" and "increasingly unmanageable").  But, Rule 21 does not provide a standard for misjoinder.  Thus, courts look to Rule 20, which governs joinder, for guidance on severance.  *Alexander v. Fulton Cnty., Ga.*, 207 F.3d 1303, 1322–23 (11th Cir. 2000); *Alhassid v. Bank of Am., N.A.*, 60 F. Supp. 3d 1302, 1326 (S.D. Fla. 2014).  "A party seeking joinder of claimants under Rule 20 must establish two prerequisites: 1) a right to relief arising out of the same transaction or occurrence, or series of transactions or occurrences, and 2) some question of law or fact common to all persons seeking to be joined." *Alexander*, 207 F.3d at 1323 (citing Fed. R. Civ. P. 20(a)).  Other factors to consider for the court in exercising discretion to sever claims are (1) whether severance would facilitate settlement or judicial economy, and (2) the relative prejudice to

each side if the motion is granted or denied. *See, e.g., Disparte v. Corporate Executive Bd.,* 223 F.R.D. 7, 12 (D.D.C. 2004).

The Supreme Court has instructed the lower courts to employ a liberal approach to permissive joinder of claims and parties in the interest of judicial economy. "Under the Rules, the impulse is towards entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers v. Gibbs*, 383 U.S. 715, 724 (1966). In determining whether claims arise from the same transaction or occurrence, or series of transactions or occurrences, courts in the Eleventh Circuit apply the "logical relationship" test. *Smith v. Trans–Siberian Orchestra*, 728 F. Supp. 2d 1315, 1319 (M.D. Fla. 2010) (citing *Republic Health Corp. v. Lifemark Hosps. of Fla., Inc.*, 755 F.2d 1453, 1455 (11th Cir. 1985)). "Under this test, a logical relationship exists if the claims rest on the same set of facts or the facts, on which one claim rests, activate additional legal rights supporting the other claim." *Id.* (citing *Republic Health*, 755 F.2d at 1455). In other words, "there is a logical relationship when 'the same operative facts serve as the basis of both claims.'" *Republic Health*, 755 F.2d at 1455 (quoting *Plant v. Blazer Fin. Servs., Inc. of Ga.*, 598 F.2d 1357, 1361 (5th Cir. 1979)).

Here, the Court finds that the claims against the Sheriff Defendants share a common question of law or fact to the claims against the Physician Defendants. Specifically, Plaintiff alleges that Dr. Marasigan forged a Certificate of Professional Initiating Involuntary Examination. (Doc. 42 at ¶ 122). She states that he never examined, evaluated, or spoke with Plaintiff. (*Id.*). The Sheriff Defendants argue

that this certificate absolves them from liability for certain claims. In particular, the Sheriff Defendants argued in their motion to dismiss that the certificate constituted probable cause for Corporal Brett to take Plaintiff into custody. (Doc. 52 at 33). But, it is unclear when Corporal Brett was made aware of this form and whether this form was authentic. These are factual questions that will certainly influence the outcome of this case for both the Sheriff Defendants and the Physician Defendants. Notably, if the Court were to sever these claims, a second court's determination on the authenticity of the form and whether the form was provided to the police would hinder judicial economy, confuse the issues and prejudice the parties. Therefore, the Court finds that severance is not appropriate based on the facts of this case.

As for the Physician Defendants' argument that this case should be remanded, the Court finds this argument unpersuasive. Importantly, this case was originally filed in Federal Court. Because of this, the Court lacks authority to remand a case that was not originally filed in state court. *E. Sav. Bank, FSB v. Estate of Kirk ex rel. Kirk*, 821 F. Supp. 2d 543, 545 (E.D.N.Y. 2011) ("[f]ederal district courts do not have the authority to remand an action originally commenced in federal court . . . to a state tribunal. . . ."); *Bradgate Associates, Inc. v. Fellows, Read & Associates, Inc.*, 999 F.2d 745 (3d Cir. 1993) (finding that the district court should have dismissed, rather than remand, a case originally filed in federal court). Accordingly, the Physician Defendants' motion to sever and remand (Doc. 51) is **DENIED**.

## CONCLUSION

For the preceding reasons, it is **ORDERED** that:

(1)     The Millennium Physician Group, Dr. Marasigan, and Ms. Gustin's motion to dismiss (Doc. 50) is **GRANTED in part and DENIED in part**.

(2)     Lee County, Sheriff Marceno, Corporal Brett, Deputy Ward, Sergeant Armato, and Deputy Olivio's motion to dismiss (Doc. 52) is **GRANTED in part and DENIED in part**.

(3)     The Millennium Physician Group, Dr. Marasigan, and Ms. Gustin's motion to sever and remand (Doc. 51) is **DENIED**.

(4)     Count VII is **DISMISSED without prejudice.**

(5)     Count IX is **DISMISSED without prejudice**.

(6)     Count X is **DISMISSED without prejudice.**

(7)     Count VIII against Defendants Marceno, Brett, Ward, Armato, and Olivio is **DISMISSED without prejudice**.

(8)     Count XI against Defendants Marceno, Brett, Ward, Armato, and Olivio is **DISMISSED without prejudice**.

(9)     Count IV is **DISMISSED without prejudice.**

(10)     Count V is **DISMISSED without prejudice.**

(11)     Count VI is **DISMISSED without prejudice.**

(12)     The Court gives Plaintiff leave to amend—should counsel choose to file an amended complaint.  Plaintiff may not assert any new claims if she chooses to file a third amended complaint. Should Plaintiff wish to file a

48

third amended complaint, she must do so by March 24, 2025.  No new

claims may be added.

**ORDERED** in Fort Myers, Florida on March 3, 2025.

JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE