UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

TAMMY KING,

      Plaintiff,

  v.

SHERIFF CARMINE MARCENO,
IN HIS OFFICIAL CAPACITY AS
LEE COUNTY SHERIFF; DEPUTY
JAY BRETT, INDIVIDUAL
CAPACITY; DEPUTY JASON
WARD, INDIVIDUAL CAPACITY;
DEPUTY JOHNATHON ARMATO,
INDIVIDUAL CAPACITY;
DEPUTY MELQUIAS OLIVO,
INDIVIDUAL CAPACITY;
MILLENIUM PHYSICIAN GROUP,
LLC; FRANCISCO MARASIGAN;
KRISTIN GUSTIN,

      Defendants.

Case No. 2:24-cv-375-KCD-DNF

## **ORDER**

This case stems from Plaintiff Tammy King's detention and involuntary commitment to Park Royal Hospital under Florida's Baker Act, Fla. Stat. § 394.463. King filed a third amended complaint following a prior order that dismissed numerous claims with leave to amend. (Doc. 63.)[1] Defendants Millennium Physician Group, Francisco Marasigan, and Kristin Gustin now

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

move to dismiss the newest complaint (Docs. 64, 66), and King responded in opposition (Doc. 80). For the reasons below, the motion to dismiss is **GRANTED IN PART AND DENIED IN PART**.

## I. Background[2]

The facts of this case have been outlined in painstaking detail, and we will not replough that ground again. *See King v. Lee Cnty.*, No. 2:24-CV-375-JLB-KCD, 2025 WL 676224 (M.D. Fla. Mar. 3, 2025). Here is the cliff note version for those just joining us.

King was involuntarily detained and admitted to Park Royal under Florida's Baker Act following an appointment with Millennium Physician Group nurse Kristin Gustin. The Baker Act provides statutory procedures for the involuntary examination and hospitalization of individuals with mental illness who pose a danger or are unable to care for themselves. Fla. Stat. § 394.463. King alleges that Gustin did not have the credentials to determine Baker Act admission. So Gustin either forged Dr. Francisco Marasigan's name on a mandatory Certificate of Professional Involuntary Examination ("Baker Act form") to trigger admission, or Dr. Marasigan signed the form without

---

[2] "At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999).

examining King. Either way, King alleges that she was hospitalized after the providers failed to follow the Baker Act's procedures.

King brings claims against Millennium, Gustin, and Dr. Marasigan for violating the Baker Act under theories of negligence, false imprisonment, negligent hiring, negligent retention and supervision, and intentional infliction of emotional distress. (Doc. 64.) Defendants argue that the complaint should be dismissed because King failed to comply with the mandatory pre-suit requirements for medical malpractice claims, which they say apply here. They also argue that King has failed to sufficiently plead claims for negligence, negligent hiring, and negligent retention and supervision.

## II. Legal Standard

A quick procedural detour. Defendants move for relief under Fed. R. Civ. P. 12(b)(1) for lack of subject-matter jurisdiction and Fed. R. Civ. P. 12(b)(6) for failure to state a claim. (Doc. 66 at 1.) As best the Court can tell, Defendants are referring to the pre-suit requirements for medical malpractice claims as a challenge to the Court's subject matter jurisdiction under Rule 12(b)(1). But Florida's pre-suit requirements are not jurisdictional. They are conditions precedent to bringing a medical malpractice action. *Kukral v. Mekras*, 679 So. 2d 278, 283 (Fla. 1996). Thus, Rule 12(b)(1) is the wrong vehicle, and the Court considers Defendants' motion under Rule 12(b)(6) only.

3

"To survive a Rule 12(b)(6) motion, a complaint must contain sufficient facts, accepted as true, to state a facially plausible claim for relief." *Galette v. Goodell*, No. 23-10896, 2023 WL 7391697, at *3 (11th Cir. Nov. 8, 2023). "A claim is facially plausible if it pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A motion to dismiss fails where the complaint provides facts that raise a right to relief above the speculative level. *See id.*

When reviewing a motion to dismiss, courts must accept all factual allegations in the complaint as true and view the facts in the light most favorable to the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). Legal conclusions, however, "are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). And "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

### III. Discussion

#### A. Medical Malpractice Pre-Suit Requirements

Under Florida Law, medical malpractice claims are subject to certain pre-suit screening requirements. *J.B. v. Sacred Heart Hosp. of Pensacola*, 635

4

So. 2d 945, 948 (Fla. 1994). A "claim for medical malpractice means a claim, arising out of the rendering of, or the failure to render, medical care or services." Fla. Stat. § 766.106(1)(a). To determine whether a claim is for medical malpractice, as opposed to something else, courts ask "whether [it] relies on the application of the medical malpractice standard of care." *Joseph v. Univ. Behav. LLC*, 71 So. 3d 913, 917 (Fla. Dist. Ct. App. 2011).

Defendants contend that King's allegations qualify as malpractice claims, thereby triggering the pre-suit requirements. Defendants' argument isn't new. The Court ruled on this issue after an extensive analysis of "[t]he question [of] whether Plaintiff's claims for violation of the Baker Act involve the rendering of medical care or services." (Doc. 63 at 9.) The Court found that "the involuntary commitment procedures [of] the Baker Act do not involve the rendering of medical care or services." (*Id.* at 12.) Still, Defendants argue that new allegations in the latest complaint demand application of Chapter 766's pre-suit requirements. (Doc. 66 at 10-13.) Not so.

The "new" allegations that Defendants rely on are not, in fact, new. (*Cf.* Doc. 42 ¶¶ 18, 19 *with* Doc. 64 ¶¶ 17-19; *cf.* Doc. 42 ¶ 20 *with* Doc. 64 ¶ 19; *cf.* Doc. 42 ¶ 122 *with* Doc. 64 ¶ 137; *cf.* Doc. 42 ¶ 124 *with* Doc. 64 ¶ 139; *cf.* Doc. 42 ¶ 136 *with* Doc. 64 ¶¶ 150-51; *cf.* Doc. 42 ¶ 135 *with* Doc. 64 ¶ 154.) The exception is paragraph 149, which alleges that Gustin was not properly credentialed to evaluate King. (Doc. 64 ¶ 149.) But the prior complaint made

5

similar allegations—that Gustin was unfit to serve in the medical profession. (*See* Doc. 42 ¶¶ 134-36, 140.) At bottom, "[a]lthough there may be some overlap between the medical aspects of Baker Act patients' rights and a cause of action for medical malpractice, the pre-suit requirements must be construed narrowly to apply only to malpractice claims, not to separate statutory claims." *Pierrot v. Osceola Mental Health, Inc.*, 106 So. 3d 491, 494 (Fla. Dist. Ct. App. 2013). The Court follows its prior decision and denies the motion to dismiss based on Chapter 766.

### B. Negligence (Count VII)

Count VII alleges negligence based on Defendants' breach of their duty to comply with the Baker Act's requirements before taking King into custody, resulting in her unlawful detention. (Doc. 64 ¶ 135.) There is no private right of action under the Baker Act. And a private right of action will only be judicially inferred if there was legislative intent to create a remedy against the breaching party. *See Murthy v. N. Sinha Corp.*, 644 So. 2d 983, 985 (Fla. 1994); *see also Blinn v. Smith & Nephew Richards, Inc.*, 55 F. Supp. 2d 1353 (M.D. Fla. 1999).

The Court grappled with this issue in its prior order in the context of a negligence per se claim. (Doc. 63 at 15.) The new complaint drops negligence per se and purportedly brings a pure negligence claim for violations of the Baker Act. (Doc. 64 at 35.) Defendants maintain that King continues to make

6

the same argument as prior complaints. That is, there should be a judicial inference of a private right of action for negligence under the Baker Act. (Doc. 66 at 14.)

Proof that a defendant violated a statute can be categorized in a negligence case in one of three ways, depending on the statute's purpose:

> (1) violation of a strict liability statute designed to protect a particular class of persons who are unable to protect themselves, constituting negligence per se; (2) violation of a statute establishing a duty to take precautions to protect a particular class of persons from a particular type of injury, also constituting negligence per se; (3) violation of any other kind of statute, constituting mere prima facie evidence of negligence.

*Chevron U.S.A., Inc. v. Forbes*, 783 So. 2d 1215, 1219 (Fla. Dist. Ct. App. 2001). Although the new complaint doesn't label Count VII as a negligence per se claim, it is in substance under the second *Chevron* category. (*See* Doc. 64 ¶ 143 ("[I]n violating the specified provisions of the Baker Act in the manner herein described, said Defendants caused the type of harm that these provisions were intended to prevent caused injury . . . to Ms. King who is a member of the class of persons intended to be protected by these provisions of law.")). Thus, the Court proceeds as Count VII is alleged, not how it is labeled.

A negligence per se claim is appropriate under Florida law "when there is a violation of a 'statute which establishes a duty to take precautions to protect a particular class of persons from a particular injury or type of injury.'" *Liese v. Indian River Cnty. Hosp. Dist.*, 701 F.3d 334, 353 (11th Cir. 2012). A

7

plaintiff pursuing a negligence per se claim must also establish that she "is of the class the statute was intended to protect, that [s]he suffered injury of the type the statute was designed to prevent, and that the violation of the statute was the proximate cause of h[er] injury." *Id.*

In its prior order, the Court noted that King had not shown that the Baker Act is designed to protect a particular class of persons from a particular injury, and that she belongs to that particular class. *See deJesus v. Seaboard Coast Line R. Co.*, 281 So. 2d 198, 201 (Fla. 1973). These deficiencies remain.

King simply declares that the Baker Act "protects individuals like Ms. King from improper commitments." (Doc. 80 at 12.) She added one paragraph that differs from the prior complaint:

> 135. Defendants Brett, Ward, Armato, Millenium Physician Group, Marasigan, and Gustin had a duty to ensure that the criteria for Ms. King to be committed to the Hospital under the Baker Act were satisfied prior to causing her to be taken into custody, involuntarily taking her into custody, transporting her to the Hospital and involuntarily committing her to the Hospital were met. They breached these duty [*sic*] when they caused the transport and commitment of Ms. King under the Baker Act and she suffered damages as a result.

(Doc. 64 ¶ 135.) This new allegation does nothing to tell the Court what "class" King belongs to, nor that the Baker Act is designed to protect a particular class of persons from a particular injury. A federal court should be particularly "reluctan[t] to read private rights of action in state laws where state courts and state legislatures have not done so." *Swerhun v. Guardian Life Ins. Co. of Am.*, 979 F.2d 195, 198 (11th Cir. 1992). Given the Court's prior ruling, and because

8

King has not remedied the issues identified in that order, Count VII against Millennium, Gustin, and Dr. Marasigan is dismissed.

### B. Negligent Hiring (Count IX)

King charges Millennium with negligently hiring Gustin. This theory requires "facts establishing that a defendant was put on notice of its employees' harmful propensities that gave rise to the cause of action." *Adelman v. Boy Scouts of Am.*, No. 10-CV-22236, 2010 WL 11553587, at *3 (S.D. Fla. Oct. 12, 2010). The issue of notice and timing differs for claims of negligent hiring versus negligent supervision or retention (discussed below). As the Supreme Court of Florida has explained:

> The primary distinction between a claim for negligent hiring and a claim for negligent supervision or retention concerns the time at which the employer is charged with knowledge of the employee's unfitness. A claim for negligent hiring arises when, before the time the employee is hired, the employer knew or should have known that the employee was unfit. Liability in these cases focuses on the adequacy of the employer's pre-employment investigation into the employee's background. Liability for negligent supervision or retention, however, occurs after employment begins, where the employer knows or should know of an employee's unfitness and fails to take further action such as investigating, discharge or reassignment.

*Malicki v. Doe*, 814 So. 2d 347, 362 (Fla. 2002).

King alleges that when Gustin was hired, Millennium knew or should have known that she did not have the proper credentials to identify and evaluate patients under the Baker Act. (Doc. 64, ¶ 149.) To state a claim for negligent hiring under Florida law, a plaintiff must allege that: (1) the

9

employer was required to make an appropriate investigation of the employee but failed to do so; (2) an appropriate investigation would have revealed the employee's unsuitability for employment; and (3) "it was unreasonable for the employer to hire the employee in light of the information [the employer] knew or should have known." *Garcia v. Duffy*, 492 So. 2d 435, 440 (Fla. Dist. Ct. App. 1986).

If Gustin indeed lacked the proper credentials to treat patients like King when she was hired, and Millennium was aware of this, Millennium could be held liable for hiring Gustin and putting her in a position to treat such patients. The Court finds that King has plausibly alleged that it was unreasonable for Millennium to hire Gustin in light of the information it should have known about her credentials. Of course, the result may be different on the more stringent test of summary judgment. But accepting the allegations as true at this stage, King's facts are sufficient. Thus, Count IX will survive.

### C. Negligent Retention and Supervision[3] (Count X)

King claims that Millennium is liable for negligent supervision and retention of Gustin and Dr. Marasigan. According to King, Gustin was practicing without the proper credentials, and Dr. Marasigan signed the Baker Act form without examining or evaluating her.

---

[3] The terms "negligent supervision" and "negligent retention" are essentially interchangeable and constitute one claim in this context. *See Grimm v. City of Boca Raton*, No. 15-80608-CIV-MARRA, 2015 WL 4483974, at *8 (S.D. Fla. July 22, 2015).

10

Negligent supervision "occurs when, during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicated his unfitness, and the employer fails to take further actions such as investigating, discharge, or reassignment." *Cruz v. Advance Stores Co.*, 842 F. Supp. 2d 1356, 1359 (S.D. Fla. 2012). Put another way, negligent supervision occurs when the defendant negligently places the plaintiff under the supervision of an employee whom the defendant either knew or should have known had the propensity to commit the alleged torts. *Acts Ret.-Life Communities Inc. v. Est. of Zimmer*, 206 So. 3d 112, 114 (Fla. Dist. Ct. App. 2016).

As an initial matter, a negligent supervision and retention claim "must be based on an injury resulting from a tort which is recognized under common law." *Scelta v. Delicatessen Support Servs., Inc.*, 57 F. Supp. 2d 1327, 1348 (M.D. Fla. 1999); *Dep't of Env't Prot. v. Hardy*, 907 So. 2d 655, 661 (Fla. Dist. Ct. App. 2005) (referring to torts committed by the employee); *Williams v. Feather Sound, Inc.*, 386 So. 2d 1238, 1239-40 (Fla. Dist. Ct. App. 1980) (recognizing employer liability for "willful tort[s]" of employees). Defendants argue that a Baker Act violation is not a tort recognized under common law. (Doc. 66 at 17.) But the legal theory underlying Count X is false imprisonment, not the Baker Act. (Doc. 80 at 13-14.) And Florida courts have held that a claim of false imprisonment can be based on allegations that a person was wrongfully

11

held under the Baker Act. *See Everett v. Fla. Inst. of Tech.*, 503 So. 2d 1382, 1383 (Fla. Dist. Ct. App. 1987).

Pertinent here, it is also necessary that the employee's actions be performed outside the scope and course of their employment for the employer to be held liable. *Gabor v. Remington Lodging & Hosp., LLC*, 413 So. 3d 261, 265 (Fla. Dist. Ct. App. 2025); *Buckler v. Israel*, 680 F. App'x 831, 834 (11th Cir. 2017). "An employee's conduct is within the scope of his employment, where (1) the conduct is of the kind he was employed to perform, (2) the conduct occurs substantially within the time and space limits authorized or required by the work to be performed, and (3) the conduct is activated at least in part by a purpose to serve the master." *Iglesia Cristiana La Casa Del Senor, Inc. v. L.M.*, 783 So. 2d 353, 357 (Fla. Dist. Ct. App. 2001).

There are no allegations that Dr. Marasigan acted outside the course and scope of his employment. King claims that Dr. Marasigan completed a Baker Act form to admit her, which would be within his duties on behalf of Millennium, at a Millennium office, to serve a patient. "The involuntary confinement and examination of patients by a treatment facility is a function necessarily performed by employees of the facility, and presumptively, it is done within the scope of such person's employment." *Everett*, 503 So. 2d at 1384; *see also Acts Ret.-Life Cmtys., Inc.*, 206 So. 3d at 117 (providing that a claim of "[n]egligent supervision is simply not the appropriate claim to bring

12

against an employer whose employees are acting within the scope of their duties"); *Belizaire v. City of Miami*, 944 F. Supp. 2d 1204, 1215 (S.D. Fla. 2013) (recognizing that the alleged acts by employees giving rise to liability of the employer for negligent supervision "must occur outside the employees' scope of employment").

King does allege that Defendants conspired to violate the Baker Act and, in doing so, acted outside the course and scope of their employment. (Doc. 64 ¶ 142.) But she does so under the negligence claim, and such conclusory and speculative allegations of a "conspiracy" do not suffice to show that Dr. Marasigan took actions outside the course and scope of his employment that Millennium was aware of. Even so, "conduct may be within the scope of employment, even if it is unauthorized, if it is of the same general nature as that authorized or is incidental to the conduct authorized." *Hennagan v. Dep't of Highway Safety & Motor Vehicles*, 467 So. 2d 748, 750 (Fla. Dist. Ct. App. 1985). For these reasons, the negligent supervision claim against Dr. Marasigan fails.

Millennium cannot be held liable for the negligent supervision of Gustin, either, because there are no allegations that it knew or should have known that Gustin had a propensity to commit the alleged tort of false imprisonment. This is significant because, if Millennium had no knowledge of Gustin's propensity to commit the harm alleged, no proximate cause exists. *See ACTS Ret.-Life*

13

*Cmtys. Inc.*, 206 So. 3d at 116 (holding, in the context of negligent supervision, that the plaintiff "failed to establish any reason that [the employer] knew or should have known about a propensity for [the employee] or other employees to [commit the torts committed]"); *Hardy*, 907 So. 2d at 660-61 (reiterating that for purposes of a negligent supervision claim, "not only must the employer owe a duty to the plaintiff, but the breach of that duty must be the proximate cause of the plaintiff's harm. There must be a connection and foreseeability between the employee's employment history and the current tort committed by the employee."). Count X is consequently dismissed in its entirety.

## IV. Conclusion

Defendants' motion to dismiss (Doc. 66) is thus **GRANTED IN PART** and **DENIED IN PART**.

    a. Count VII against Millennium, Marasigan, and Gustin (negligence for Baker Act violations) is **DISMISSED with prejudice**.

    b. Count X against Millennium (negligent retention and supervision) is **DISMISSED with prejudice**.

2. Millennium, Gustin, and Marasigan must answer the third amended complaint within 14 days of this Order.

**ORDERED** in Fort Myers, Florida on October 28, 2025.

*/s/ Kyle C. Dudek*

Kyle C. Dudek
United States District Judge