UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

TAMMY KING,

    Plaintiff,

v.

Case No. 2:24-cv-375-KCD-DNF

SHERIFF CARMINE MARCENO,
in his official capacity as Lee County
Sheriff; DEPUTY JAY BRETT,
DEPUTY JASON WARD, DEPUTY
JOHNATHON ARMATO, DEPUTY
MELQUIAS OLIVO, in their
individual capacities; MILLENIUM
PHYSICIAN GROUP, LLC;
FRANCISCO MARASIGA;
KRISTIN GUSTIN,

    Defendants.
_____/

# ORDER

This case stems from Tammy King's detention and involuntary commitment to Park Royal Hospital under Florida's Baker Act, Fla. Stat. § 394.463. King filed a third amended complaint following a prior order that dismissed numerous claims with leave to amend. (Doc. 63.)[1] Defendants Sheriff Carmine Marceno, Corporal Jay Brett, Sergeant Johnathon Armato, and Deputies Jason Ward and Melquias Olivio now move to dismiss the third

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

iteration of the complaint based on qualified immunity and failure to state a claim (Docs. 64, 67). King has responded in opposition (Doc. 81). For the reasons below, the motion is **GRANTED IN PART AND DENIED IN PART**.

## I. Background[2]

The facts of this case have been outlined in painstaking detail, and we will not replough that ground again. *See King v. Lee Cnty.*, No. 2:24-CV-375-JLB-KCD, 2025 WL 676224 (M.D. Fla. Mar. 3, 2025). Here is the cliff note version for those just joining us. Following an appointment with Millennium Physician Group providers Kristin Gustin and Francisco Marasiga, King was involuntarily detained and admitted to Park Royal under Florida's Baker Act. The Baker Act provides statutory procedures for the involuntary examination and hospitalization of individuals with mental illness who pose a danger to themselves or others or are unable to care for themselves. *See* Fla. Stat. § 394.463.

The Sheriff Defendants became involved when Millennium called them to pick up King and take her to Park Royal Hospital. According to the complaint, Deputy Brett arrived first and escorted King to the bathroom at her request. Things then went off the rails. Brett allegedly rushed in and

---

[2] "At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999).

demanded King's purse. He then grabbed the purse, and a tug-of-war ensued. Brett demanded that King let go, and when she eventually did, the purse hit him. Brett responded by slamming King against the restroom wall, pepper-spraying her face three times, and handcuffing her tightly behind her back. The pepper spray blinded King, and she urinated on herself. Deputy Ward was also present at some point but allegedly failed to intervene and help King.

Next, Brett dragged King out of the facility and placed her in his patrol car. According to the complaint, Brett taunted King while they waited. Sometime during these events, Sgt. Armato, a supervisor, also arrived and took no action to intervene. After some time, Brett drove King to a Publix grocery store parking lot. Several more hours passed until Deputy Olivio arrived in a police van to transport King to the hospital.

In the van, she was put into a small metal box without a seatbelt. With no ability to brace herself, she was thrown around when the van was in motion. After driving around for hours, they arrived at Park Royal. Deputy Olivio dropped King off and left.

## II. Legal Standard

To survive a motion to dismiss, "a complaint must contain sufficient facts, accepted as true, to state a facially plausible claim for relief." *Galette v. Goodell*, No. 23-10896, 2023 WL 7391697, at *3 (11th Cir. Nov. 8, 2023). "A claim is facially plausible if it pleads factual content that allows the court to

3

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

When reviewing a motion to dismiss, courts must accept all factual allegations in the complaint as true and view the facts in the light most favorable to the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). Legal conclusions, however, "are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). And "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003). A motion to dismiss fails where the complaint provides facts that raise a right to relief above the speculative level.

### III. Discussion

#### A. Defendants Ward and Armato

King alleges that Deputies Ward and Armato violated her Constitutional rights by failing to intervene. Defendants argue that these claims should be dismissed because the third amended complaint offers only conclusory allegations. (Doc. 67 at 5-6.) The Court disagrees.

4

A police officer can be held liable under 42 U.S.C. § 1983 for failing to intervene when a fellow officer uses excessive force if he "is present at the scene" and "fails to take reasonable steps to protect the victim." *Skrtich v. Thornton*, 280 F.3d 1295, 1302 (11th Cir. 2002); *see also Velazquez v. City of Hialeah*, 484 F.3d 1340, 1342 (11th Cir. 2007) ("[A]n officer who is present at such a beating and fails to intervene may be held liable though he administered no blow."). "This liability, however, only arises when the officer is in a position to intervene and fails to do so." *Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919, 924 (11th Cir. 2000).

King alleges that Deputy Ward was present when Brett unnecessarily slammed her to the wall and pepper-sprayed her. Still, Deputy Ward failed to intervene to assist King or stop the alleged abuse. (Doc. 64 ¶¶ 36, 39.) King further alleges that "Defendant Brett responded to Ms. King's earnest and tearful question by shouting at her (in sum and substance): SHUT UP BITCH! YOU ARE LUCKY I DON'T TASE YOU! Again . . . Defendants Ward and Armato were present and did nothing to intervene to stop Brett or help Ms. King." (*Id.* ¶ 46.)

Accepting these facts as true, and viewing them in a light most favorable to King, they are enough to state a claim against Ward and Armato. King has alleged that Ward and Armato were physically present and observed Brett using excessive force. *See Skrtich*, 280 F.3d at 1302 (finding that a failure-to-

5

intervene claim can be raised against an officer who was present and failed to intervene in a use of excessive force); *see also Priester*, 208 F.3d at 927 (same). Based on the facts pled, it is plausible that Ward and Armato were able to intervene but failed to do so.

## B. Qualified Immunity

Defendants Brett, Ward, Armato, and Olivio separately argue that the Constitutional claims against them should be dismissed on qualified immunity grounds. (Doc. 67 at 7-17.) But the Court has already decided this issue and will not address it further here since the underlying facts are the same. (*See* Doc. 63 at 34) ("To be clear, the Court will not dismiss the amended complaint on qualified immunity grounds at this early stage of litigation. That said, the Sheriff Defendants may again invoke qualified immunity at summary judgment if they so choose.").

## C. State Law Claims

### 1. Negligence (Count VII)

As explained in the prior order concerning the Millennium Defendants, King has not shown that the Baker Act is designed to protect a particular class of persons from a particular injury, nor whether King belongs to that particular class. (Doc. 84.) Accordingly, for the same reasons, her negligence claim is dismissed.

### 2. False Imprisonment (Counts VII, XII)

Florida courts have held that a claim of false imprisonment can be asserted based on allegations that a person was involuntarily held without compliance with the Baker Act. *See Everett v. Fla. Inst. of Tech.*, 503 So. 2d 1382, 1383 (Fla. Dist. Ct. App. 1987). "When a law enforcement officer takes a person into custody for involuntary examination pursuant to [the Baker Act], this encounter is an involuntary deprivation of liberty and thus must be lawful to withstand a claim for false imprisonment." *Whitcomb v. City of Panama City*, No. 5:13-CV-30-RS-EMT, 2013 WL 6859095, at *7 (N.D. Fla. Dec. 30, 2013). Defendants argue that this claim fails because King was lawfully taken into custody after Dr. Marasigan executed a Baker Act Form. (Doc. 67 at 19.) But as mentioned in its prior order, which denied qualified immunity, there are factual issues surrounding the Baker Act Form that will not be resolved at the motion to dismiss stage. (Doc. 63 at 33-34.) Thus, Defendants' motion is denied as to the false imprisonment claim.

### 3. Intentional Infliction of Emotional Distress (Counts XI, XIII)

The complaint also alleges claims for intentional infliction of emotional distress (IIED) against the individual officers (Count XI) and Sheriff Marceno (Count XIII). The claim against Sheriff Marceno in his official capacity is

barred by sovereign immunity. As the Eleventh Circuit explained in *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1330 (11th Cir. 2015):

> Florida courts have long recognized that Fla. Stat. § 768.28(9)(a)—which provides that the State and its subdivisions "shall not be liable in tort for the acts or omissions of an officer, employee, or agent … committed … in a manner exhibiting wanton and willful disregard of human rights, safety, or property"—bars claims for both intentional infliction of emotional distress and malicious prosecution.

*Id.*; *see also Tillman v. Orange Cnty., Fla.*, 519 F. App'x 632, 636 (11th Cir. 2013). The "reckless" requirement of the first element of an IIED claim constitutes willful and wanton conduct. *Samedi v. Miami-Dade Cnty.*, 134 F. Supp. 2d 1320, 1354 (S.D. Fla. 2001). Thus, the IIED claim against Sheriff Marceno is legally barred.

As for Brett, Ward, Armato, and Olivio, to state an IIED claim against these officers under Florida law, a plaintiff must allege (1) deliberate or reckless infliction of mental suffering, (2) outrageous conduct that (3) caused the emotional distress, and (4) that the distress was severe. *Liberty Mut. Ins. Co. v. Steadman*, 968 So. 2d 592, 594 (Fla. Dist. Ct. App. 2007). For conduct to be sufficiently outrageous, it must be "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Lopez v. Target Corp.*, 676 F.3d 1230, 1236 (11th Cir. 2012). "Whether conduct is sufficiently 'outrageous' to state a

8

claim for IIED is a question of law for the Court to decide." *Garcia v. Carnival Corp.*, 838 F. Supp. 2d 1334, 1339 (S.D. Fla. 2012).

The complaint does not satisfy the stringent standard that Defendants' conduct be outrageous. "While there is no exhaustive or concrete list of what constitutes 'outrageous conduct,' Florida common law has evolved an extremely high standard." *Merrick v. Radisson Hotels Int'l, Inc.*, No. 8:06-cv-01591-T-24TGW, 2007 WL 1576361, at *4 (M.D. Fla. May 30, 2007) (citing *Golden v. Complete Holdings, Inc.*, 818 F. Supp. 1495, 1499 (M.D. Fla. 1993)). "[C]ourts uphold claims of intentional infliction of emotional distress only in extremely rare circumstances." *Triana v. Diaz*, No. 12-21309-CIV, 2014 WL 5319800, at *7 (S.D. Fla. Oct. 16, 2014). "[E]ven claims of intentional infliction of emotional distress based on false accusations of criminal activity and false arrest fail because such conduct, as a matter of law, is not sufficiently outrageous." *Cortez v. Home Depot U.S.A., Inc.*, No. 12-CV-14177-KMM, 2013 WL 12077478, at *4 (S.D. Fla. Jan. 31, 2013) (citing *Valdes v. GAB Robins N. Am., Inc.*, 924 So. 2d 862 (Fla. Dist. Ct. App. 2006)).

King's IIED claim is based on the fact that the officers received a Baker Act call and then took action to restrain her. In doing so, the officers slammed a non-resisting woman against a wall, pepper-sprayed her three times, tightly restrained her, and detained her. That conduct simply isn't enough. The cases where conduct has been found to meet the outrageousness standard typically

involve some level of physical contact, severely threatening behavior, or extreme abuse of power. See *Johnson v. Thigpen*, 788 So. 2d 410, 412 (Fla. Dist. Ct. App. 2001). For these reasons, the motion to dismiss Counts XI and XIII is granted.

### D. *Monell* Claims (Counts IV, V, VI)

King claims that Sheriff Marceno violated the Fourth Amendment because he (1) illegally detained and seized her (Count IV), and (2) failed to properly train his officers (Count V). King also brings a claim under the Fourteenth Amendment for deprivation of liberty without due process based on an official policy or custom (Count VI). According to Defendants, these counts should be dismissed because King failed to sufficiently allege that Sheriff Marceno had a custom or official policy that constituted deliberate indifference to those constitutional rights.

The § 1983 claims against Sheriff Marceno in his official capacity are claims against the governmental entity he represents. *Adcock v. Baca*, 157 F. App'x 118, 119 (11th Cir. 2005). Section 1983 creates a cause of action against any "person" who deprives someone of their federally protected rights under color of state law. The Supreme Court has held that municipalities are "persons" under § 1983 but "cannot be held liable ... on a respondeat superior theory." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Rather, a plaintiff must demonstrate: "(1) that his constitutional rights were violated; (2)

10

that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the [municipality's] policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). Municipal liability under *Monell* may be based on "(1) an express policy; (2) a widespread practice so permanent and well-settled that it constitutes a custom; or (3) an act or decision of an officer with final policy-making authority." *Boudreaux v. McArtor*, 681 F. App'x 800, 804 (11th Cir. 2017).

*Monell* is a "case about responsibility," and is meant to limit § 1983 liability to acts that the local government body has "officially sanctioned or ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478, 480 (1986). "[T]he touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution[.]" *Monell*, 436 U.S. at 690.

"[I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the [local government]." *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997). "The plaintiff must also demonstrate that, through its *deliberate* conduct, the [local government] was the 'moving force' behind the injury alleged." *Id.* (emphasis in original). "That is, a plaintiff must show that the [local government's] action was taken with the requisite degree of

11

culpability and must demonstrate a direct causal link between the ... action and the deprivation of federal rights." *Id*.

### 1. 4th Amendment Illegal Detention and Seizure (Count IV)

King bases her illegal detention and seizure claim on an express policy and the act or decision of an officer with final policy-making authority. For express policy, she includes excerpts from the Lee County Sheriff's policy on responding to Baker Act calls. (Doc. 64 ¶ 103.) King alleges:

> These policies constitute deliberate indifference towards the constitutional (specifically, Fourth Amendment) rights of persons dealing with or perceived to be dealing with mental health issues with whom the Sheriff or Sheriff's Deputies come into contact because they do not require both imminent danger and mental illness before a person is subject to involuntary commitment under the Baker Act, a requirement under the Baker Act codified at § 394.463, Florida Statutes. The official policy of the Defendant Sheriff thus caused the deprivation of Plaintiff's fundamental right to be free from unreasonable seizure under the Fourth and Fourteenth Amendments.

(*Id.* ¶ 104.) King alleges that following her incident, Sheriff Marceno recognized that his policies related to Baker Act seizures, transports, and confinements violated the Constitution and revised the relevant policy documents. (*Id.* ¶ 109.)

King has failed to plead a Fourth Amendment claim under *Monell* for violating an official policy or custom. King alleges "upon information and belief" that the excerpts are from a public records policy manual obtained from the Lee County Sheriff's Office. (Doc. 64 ¶ 103.) This excerpt describes some of the safety measures that deputies should follow to complete searches and

12

ensure deputy safety when transporting someone with a mental health issue. King then vaguely states that "[t]hese policies constitute deliberate indifference towards the constitutional (specifically, Fourth Amendment) rights of persons dealing with or perceived to be dealing with mental health issues with whom the Sheriff or Sheriff's Deputies come into contact." (*Id.* ¶ 104). King does not identify what is unconstitutional about these policies or how the rights of persons dealing with mental health issues are violated. And King fails to explain how these policies negatively affected her. King must allege "how the actions taken by the County … amount to a persistent and wide-spread practice resulting in the deprivation of a constitutional right … that is so permanent and well settled as to constitute a custom or usage with the force of law" for a district court to plausibly infer municipal supervisory liability. *Diaz v. Miami-Dade Cnty.*, 849 F. App'x 787, 792 (11th Cir. 2021). Without such allegations, King fails to state a claim.

King also alleges that Sheriff Marceno delegated final policymaking authority to Sgt. Armato to make all decisions on whether King should be detained/imprisoned, tased, pepper-sprayed, left unattended in a patrol vehicle without water and with pepper spray in her eyes, and transported to the hospital without verifying that the criteria for involuntarily committing her to the hospital under the Baker Act were satisfied. (Doc. 64 ¶ 105.)

Supervisory liability can only attach when the municipal supervisor or decision-maker has the final authority to establish a municipal policy concerning the ordered action. *Pembaur*, 475 U.S. at 480-85. Furthermore, "a plaintiff must allege facts showing that the supervisor was either personally involved in the alleged constitutional violation, or that the supervisor's actions caused the violation." *Watkins v. Willson*, 824 F. App'x 938, 941 (11th Cir. 2020). Specifically, "the plaintiff must show that a final policymaker (1) ratified unconstitutional conduct, or (2) delegated policymaking authority to a subordinate such that the subordinate's discretionary decisions [were] not constrained or subject to further review." *Andrews v. Marshall*, 845 F. App'x 849, 857 (11th Cir. 2021)

This "delegation theory" ultimately fails as pled. While sheriff's deputies have discretion in carrying out their duties, this does not amount to a delegation of policymaking authority as a matter of law. "[T]he mere delegation of authority to a subordinate to exercise discretion is not sufficient to give the subordinate policymaking authority. Rather, the delegation must be such that the subordinate's discretionary decisions are not constrained by official policies and are not subject to review." *Mandel v. Doe*, 888 F.2d 783, 792 (11th Cir. 1989). The complaint lacks the factual basis to establish delegation. Thus, the Court dismisses Count IV against Sheriff Marceno.

### 2. 4th Amendment False Detention, Illegal Seizure, Cruel and Unusual Punishment Based on Failure to Train (Count V)

King separately alleges, "[u]pon information and belief, the deviation from policy by the individually-named law enforcement officer Defendant in their interactions with Ms. King were caused by Defendant Marceno's failure to properly and adequately train said Defendants under the Baker Act." (Doc. 64 ¶ 112.) King again cites the official policy of the Lee County Sheriff's Office. (*Id.* ¶ 113.) She alleges that the officers did not follow the policy when they failed to secure King in a seatbelt, and the policy does not require the requisite training under the Baker Act. (*Id.* ¶¶ 115-16.)

"[T]here are limited circumstances in which an allegation of a 'failure to train' can be the basis for liability under § 1983." *Canton v. Harris*, 489 U.S. 378, 387 (1989). "[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Id.* at 388. "Deliberate indifference can be established in two ways: by showing a widespread pattern of similar constitutional violations by untrained employees or by showing that the need for training was so obvious that a municipality's failure to train its employees would result in a constitutional violation." *Mingo v. City of Mobile, Ala.*, 592 F. App'x 793, 799-800 (11th Cir. 2014). "[A] plaintiff must present some evidence that the municipality knew of

15

a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998). Without proof that the municipal entity was aware of a previous incident in which constitutional rights were similarly violated, liability for failure to train will not be found. *See Bd. of Cnty. Com'rs of Bryan Cnty., Okl.*, 520 U.S. 397 407 (1997) (municipal decisionmakers' "continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the deliberate indifference—necessary to trigger municipal liability.").

The complaint fails to plead any previous constitutional violations involving Lee County Sheriff Deputies and the procedures relating to the Baker Act. King has not pointed to a single prior incident involving unlawful detention or excessive force after a seizure under the Baker Act. *See Larosa v. City of Sweetwater*, No. 13-21585-CIV, 2014 WL 235449, at *2 (S.D. Fla. Jan. 22, 2014) (dismissing complaint which "offer[ed] no factual allegations other than [plaintiff's] own arrest and the circumstances surrounding that arrest" to substantiate allegations of a policy or custom); *Whitaker v. Miami-Dade Cnty.*, 126 F. Supp. 3d 1313, 1327-28 (S.D. Fla. 2015) (dismissing federal failure to train claims because "the facts alleged simply do not plausibly give rise to the inference that a final policymaker for the County made a 'decision not to train

16

the officer[,]' or that it was obvious that their failure to do so would result in a constitutional deprivation")). Instead, King makes the conclusory claim that "these types of encounters are abundant and increasing, and were heightened at the time of the incidents described herein due to the effects of Hurricane Ian on the mental health of the impacted population of Lee County." (Doc. 64 ¶ 123.) Such allegations are not enough.

Nor does King allege that the purported training deficiencies are "so obvious" that the Sheriff's failure to provide training amounts to deliberate indifference. *See, e.g.*, *Canton*, 489 U.S. 378, 396-97 ("The claim in this case— that police officers were inadequately trained in diagnosing the symptoms of emotional illness—falls far short of the kind of 'obvious' need for training that would support a finding of deliberate indifference to constitutional rights on the part of the city.... [T]he diagnosis of mental illness is not one of the 'usual and recurring situations with which [the police] must deal.' The lack of training at issue here is not the kind of omission that can be characterized, in and of itself, as a 'deliberate indifference' to constitutional rights.") Because King seeks to impose liability on the Sheriff based on the single instance of unlawful conduct by these Defendants, and "random acts or isolated incidents are insufficient to establish a custom or policy," *Depew v. City of St. Marys*, 787 F.2d 1496, 1499 (11th Cir. 1986), the motion to dismiss Count V is granted.

17

### 3. 14th Amendment Deprivation of Liberty Without Due Process of Law Based on Official Policy and Custom (Count VI)

Finally, King alleges that her involuntary confinement at Park Royal Hospital without being afforded due process of law violates the Fourteenth Amendment to the United States Constitution. (Doc. 64 ¶ 126.) King further alleges that "[t]his violation of Ms. King's right to due process occurred as a result of the policy and custom of Sheriff Marceno in carrying out Baker Act seizures, transports and placements without due care for the constitutional rights of the subjects of the seizure and confinement." (*Id.* ¶ 127.)

The closing sentence to Defendants' motion to dismiss states that they move to dismiss Count VI (Doc. 67 at 25), but there is no analysis of the Fourteenth Amendment, nor the basis on which this claim should be dismissed. With no memorandum of law to support the motion to dismiss Count VI, the Court won't consider it.

### IV. Conclusion

The third-amended complaint was King's final chance to get this case off the ground. Because certain claims still fail to state a claim, the Court dismisses those counts with prejudice. *See Mandala v. Tire Stickers, LLC*, 829 F. App'x 896, 903 (11th Cir. 2020) ("A district court need not allow an amendment where there has been repeated failure to cure deficiencies by amendments previously allowed.").

18

Accordingly, it is **ORDERED**:

1. Defendants' Motion to Dismiss (Doc. 67) is **GRANTED IN PART AND DENIED IN PART**.

2. Counts IV, V, VII, XI, and XIII are **dismissed with prejudice**.

3. Defendants must answer the rest of the third amended complaint (Doc. 64) within 14 days of this Order.

**ENTERED** in Fort Myers, Florida on November 4, 2025.

Kyle C. Dudek
United States District Judge