UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

TAMMY KING,

      Plaintiff,

      v.

SHERIFF CARMINE MARCENO,
IN HIS OFFICIAL CAPACITY AS
LEE COUNTY SHERIFF; DEPUTY
JAY BRETT, INDIVIDUAL
CAPACITY; DEPUTY MELQUIAS
OLIVO, INDIVIDUAL CAPACITY;
MILLENNIUM PHYSICIAN
GROUP, LLC, FRANCISCO
MARASIGAN, KRISTIN GUSTIN,

      Defendants.

Case No. 2:24-cv-375-KCD-KRH

## **ORDER**

Plaintiff Tammy King allegedly visited Millennium Physician Group seeking help with a prescription regimen, but instead of leaving with medical advice, she was detained under Florida's Baker Act. The Baker Act provides statutory procedures for the involuntary examination and hospitalization of individuals with mental illness who pose a danger or are unable to care for themselves. Fla. Stat. § 394.463.[1]

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

The fallout from that visit brings the current dispute before the Court. Defendant Kristin Gustin, a nurse practitioner at Millennium, moves for summary judgment on King's remaining state-law claims for false imprisonment and intentional infliction of emotional distress. (Doc. 104.) Gustin insists the record shows she acted reasonably and within the bounds of a medical professional responding to a patient crisis. King, however, contends that a jury must untangle the competing factual narratives surrounding her detention. (Doc. 114.)

## I. Background

Much of the narrative is common ground. The Court notes any disputed material facts where appropriate. In 2023, King attended an appointment with Gustin at Millennium's Saint James City clinic. The two were acquainted through a recreational kickball league, and King scheduled the visit hoping Gustin could help manage her medications. During the consultation, King disclosed that she was experiencing severe stress, exhaustion, and sadness. Hurricane damage to her home, financial strain, and friction between her adult sons had taken a heavy toll on her well-being. (Doc. 104 ¶¶ 4-7; Doc. 114 ¶¶ 4-7.)

The stories diverge sharply regarding what King said next. Gustin testified that King presented as emotionally unstable and threatened to drive her car into a moving dump truck. (Doc. 104 ¶ 5.) Based on that purported

2

statement, Gustin consulted with Dr. Francisco Marasigan about emergency psychiatric intervention. King flatly denies the allegation. She maintains that when asked if she wanted to hurt herself, she said no. (Doc. 114 ¶ 9.)

Despite the factual clash over the dump truck comment, the resulting chain of events is clear. Gustin strongly encouraged King to visit a nearby clinic to establish care with a psychiatrist. King allegedly agreed to the evaluation. However, rather than permitting King to drive herself, Millennium staff called 911 to arrange for a sheriff's deputy to transport her under Florida's Baker Act.

Deputy Jay Brett soon arrived at the clinic. When King attempted to use the restroom, Deputy Brett followed her inside and a confrontation ensued. Amid this chaos, Gustin filled out an involuntary commitment form. (Doc. 112-1.) It stated that King was a threat to herself. Dr. Marasigan then signed the paperwork after observing the altercation between King and Deputy Brett. Handcuffed and shackled in the back of a patrol car, King was taken to Park Royal Hospital and involuntarily committed.

## II. Legal Standards

Summary judgment is not a substitute for trial. It is appropriate only "when a movant shows that there is no genuine dispute as to any material fact and [he] is entitled to judgment as a matter of law." *Gonzalez v. Indep. Ord. of Foresters*, No. 24-10758, 2025 WL 337898, at *2 (11th Cir. Jan. 30,

3

2025). "When deciding a motion for summary judgment, a judge is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Las Brisas Condo. Homes Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 2:21-CV-41-KCD, 2023 WL 8978168, at *1 (M.D. Fla. Dec. 28, 2023). We must view the evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. *Id.* at *2. If the record is so one-sided that a party must prevail as a matter of law, summary judgment is appropriate.

The mechanics are straightforward. The moving party bears the initial burden. It must show "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The nonmoving party must then step up, go beyond the pleadings, and point to specific facts showing a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "An issue is genuine if a reasonable jury could return a verdict for the nonmoving party." *Do v. Geico Gen. Ins. Co.*, No. 1:17-CV-23041-JLK, 2019 WL 331295, at *2 (S.D. Fla. Jan. 25, 2019).

### III. Discussion

As mentioned, the dispute against Gustin boils down to two state-law torts: false imprisonment and intentional infliction of emotional distress. Gustin asks the Court to end the case here, arguing that the record establishes she acted appropriately as a matter of law. Because these two

4

claims demand distinct analytical frameworks, the Court takes them up one at a time.

## A. False Imprisonment

Under Florida law, false imprisonment covers the unlawful restraint of a person against their will. "The tort's purpose is to protect personal freedom of movement by curtailing detention without color of legal authority, which occurs when there is an improper restraint [that] is not the result of a judicial proceeding." *Harder v. Edwards*, 174 So. 3d 524, 530 (Fla. Dist. Ct. App. 2015). False imprisonment has four elements: "1) the unlawful detention and deprivation of liberty of a person 2) against that person's will 3) without legal authority or 'color of authority' and 4) which is unreasonable and unwarranted under the circumstances." *Id.*

To be clear, King does not argue that Millennium staff locked the doors or physically barred her from leaving the clinic. The record confirms she walked outside to smoke and made a phone call during the consultation. And King thought she was free to leave until the Baker Act occurred. (Doc. 101-5 King Dep. 183:24-184:5); *Escambia Cnty. Sch. Bd. v. Bragg*, 680 So. 2d 571, 572 (Fla. Dist. Ct. App. 1996) ("The tort of false imprisonment or false arrest is defined as the unlawful restraint of a person *against his will*[.]" (emphasis added).) The actionable detention began only when the sheriff's deputy

5

arrived, seized her belongings, and initiated the involuntary commitment. (*See* Doc. 114 at 11.)

The Baker Act grants extraordinary power to strip individuals of their liberty, but it does not provide absolute immunity from state tort law. "A false imprisonment claim can be asserted based on allegations that a person was involuntarily held without compliance with the Baker Act." *Thuan Viet Doan v. United States*, No. 18-21841-CIV, 2018 WL 4953353, at *3 (S.D. Fla. Oct. 12, 2018); *see also Whitcomb v. City of Panama City*, No. 5:13-CV-30-RS-EMT, 2013 WL 6859095, at *7 (N.D. Fla. Dec. 30, 2013) ("When a law enforcement officer takes a person into custody for involuntary examination pursuant to Section § 394.463, this encounter is an involuntary deprivation of liberty and thus must be lawful to withstand a claim for false imprisonment.").

Gustin tries to wash her hands of this detention. She points out that Dr. Marasigan signed the Baker Act paperwork and Deputy Brett executed the hold. In her view, those interventions break the chain of liability. (Doc. 104 at 11.) But that argument blinks at reality. Dr. Marasigan did not pull the Baker Act out of thin air. He signed the certification based on Gustin's report that King was a danger to herself. (Doc. 101-7 Marasigan Dep. 27:23-28:3, 36:18-37:8.)

6

A credible threat of self-harm is the indispensable linchpin of an involuntary hold under Florida law. *See Harrison v. City of Fort Lauderdale*, No. 17-61164-CIV, 2018 WL 9516029, at \*4 (S.D. Fla. Dec. 21, 2018) ("The Eleventh Circuit has held that in the context of a mental-health seizure, an officer must have probable cause to believe the person is dangerous either to himself or others."). Dr. Marasigan conducted no independent evaluation to verify that critical statutory element. Instead, he signed the Baker Act certification by relying on Gustin's account of the consultation. (Doc. 101-7 Marasigan Dep. 27:23-28:3, 36:18-37:8.) So without Gustin supplying that necessary component, the legal machinery of the Baker Act never grinds into motion. Gustin cannot hide behind a supervising physician's signature when her own allegedly fabricated report forms the foundation on which that signature rests. *See Gomez v. Wells Fargo Bank*, No. 13-23420-CIV, 2014 WL 11878882, at \*3 (S.D. Fla. Jan. 7, 2014) ("[A] false imprisonment claim could be made where [the defendant] intentionally and recklessly provided the false information that was the basis of the arrest warrant.").

"If false statements or fabricated evidence are used to detain an individual, the individual providing the false information may be held liable for false imprisonment." *Paylan v. Teitelbaum*, No. 1:15-CV-159-MW-GRJ, 2016 WL 1068443, at \*9 (N.D. Fla. Feb. 16, 2016). That is precisely what King alleges happened here. King swears she never once voiced a desire to

hurt herself. Yet Gustin reported that she harbored active suicidal ideations. And that allegedly fabricated report led directly to King's involuntary detention. Because there is a genuine dispute about whether Gustin manufactured the necessary evidence that stripped King of her liberty, summary judgment on the false imprisonment claim must be denied. *Id.*

## B. Intentional Infliction of Emotional Distress (IIED)

King's IIED claim, however, falls short. To be sure, she endured a traumatic ordeal. But to assess Gustin's liability, the Court must isolate her specific conduct from the larger chaos of the afternoon. *See Hadley v. Perez*, No. 25-CV-22162, 2025 WL 2851643, at *20 (S.D. Fla. Oct. 8, 2025). Gustin did not physically detain King, forcefully confiscate her purse, or deploy pepper spray. Nor is there any allegation that she conspired with the defendants who did. The sole misconduct attributable to Gustin is that she fabricated the report of suicidal ideation and sat idle while King was forcefully detained. (Doc. 114 at 18-20.) King heavily faults Gustin for failing to stop Deputy Brett, but the law does not permit—let alone require—a civilian to physically intervene with a law enforcement officer's detention of a suspect. Doing so invites criminal arrest, not civil praise. And while creating a false report is certainly wrongful and legally actionable here, it does not clear the exceptionally high bar for "outrageous" conduct required to pursue

8

an IIED claim. *Metro. Life Ins. Co. v. McCarson*, 467 So. 2d 277, 279 (Fla. 1985).

"While there is no exhaustive or concrete list of what constitutes outrageous conduct, Florida common law has evolved an extremely high standard." *Chingarev v. Rambosk*, No. 2:22-CV-494-KCD-NPM, 2025 WL 3767952, at *3 (M.D. Fla. Dec. 31, 2025). "[L]iability for intentional infliction of emotional distress attaches only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Plowright v. Miami Dade Cnty.*, 102 F.4th 1358, 1368 (11th Cir. 2024). Lying about a patient's symptoms and declining to illegally interfere with police action, without more, falls short of that strict threshold. Indeed, "even claims of intentional infliction of emotional distress based on false accusations of criminal activity and false arrest fail because such conduct, as a matter of law, is not sufficiently outrageous." *Cortez v. Home Depot U.S.A., Inc.*, No. 12-CV-14177-KMM, 2013 WL 12077478, at *4 (S.D. Fla. Jan. 31, 2013).

There is another problem for King. Her emotional distress claim is built on the same factual foundation as the false imprisonment claim: the fabricated report that triggered the Baker Act detention. It is well settled that an IIED claim cannot stand when the underlying conduct is synonymous

9

with a separate tort. "That is, the facts upon which it is based must be independent of any other alleged tort." *Johns Hopkins All Children's Hosp., Inc. v. Kowalski*, 425 So. 3d 645, 665 (Fla. Dist. Ct. App. 2025). Strip away the false report—the indispensable core of the false imprisonment claim— and the emotional distress claim is left running on fumes. *Id.* Without that fabrication, the Court is left to review only Gustin's failure to physically intervene during King's arrest. But standing idle while a sheriff's deputy executes a detention comes nowhere close to the extreme and outrageous conduct required by Florida law. *See, e.g., Corbin v. Prummell,* 655 F. Supp. 3d 1143, 1166 (M.D. Fla. 2023).

### IV. Conclusion

Gustin's motion for summary judgment is a split decision. The false imprisonment claim rests on a factual disagreement about what King reported—a dispute that belongs before a jury, not a judge. The IIED claim, however, fails as a matter of law and must be dismissed. Accordingly, it is **ORDERED**:

1. The Motion for Summary Judgment (Doc. 104) is **GRANTED IN PART** and **DENIED IN PART**.

2. Count XI against Gustin is **DISMISSED**, while Count VIII will proceed to trial.

**ENTERED** in Fort Myers, Florida on July 13, 2026.

Kyle C. Dudek
United States District Judge