UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

TAMMY KING,

         Plaintiff,

    v.

SHERIFF CARMINE MARCENO,
IN HIS OFFICIAL CAPACITY AS
LEE COUNTY SHERIFF; DEPUTY
JAY BRETT, INDIVIDUAL
CAPACITY; DEPUTY MELQUIAS
OLIVO, INDIVIDUAL CAPACITY;
MILLENNIUM PHYSICIAN
GROUP, LLC, FRANCISCO
MARASIGAN, KRISTIN GUSTIN,

         Defendants,

Case No. 2:24-cv-375-KCD-KRH

_____/

## **ORDER**

Plaintiff Tammy King's search for prescription medication management at a local clinic ended with her involuntary commitment to a mental health facility. The fallout from that afternoon continues to be untangled by the Court here. Currently pending is Defendant Millennium Physician Group, LLC's Motion for Summary Judgment. (Doc. 102.)[1] Millennium seeks to dismiss King's remaining state-law claims for false imprisonment, intentional

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

infliction of emotional distress (IIED), and negligent hiring. (*Id.* at 1-2.) King opposes the motion. (Doc. 116.)

The Court has already resolved several underlying issues involving Millennium's employees that dictate the outcome of the claims here. Because the false imprisonment claim against Millennium's employee, Kristin Gustin, survives summary judgment (Doc. 121), the vicarious liability claim against Millennium also lives on. The remaining torts, however, fail as a matter of law.

## I. Background

Because the Court has extensively detailed the facts of this encounter in prior orders (Doc. 121), a brief summary suffices here. In 2023, King visited Millennium's Saint James City clinic to meet with nurse practitioner Kristin Gustin. King was experiencing significant personal stress and hoped to receive assistance with her medications. The accounts of what happened next diverge sharply. Gustin reported that King became highly emotional and threatened to drive her car into a moving dump truck. King vehemently denies making any such threat of self-harm. (*See* Doc. 121 at 2-3.)

Relying on Gustin's report and his own observations of King's subsequent behavior, Dr. Francisco Marasigan executed a "Certificate of Professional Initiating Involuntary Examination" under Florida's Baker Act. (Doc. 112-1.) A Lee County Sheriff's deputy, who had been called to the clinic,

2

confronted King in the restroom and an altercation followed. King was ultimately handcuffed, placed in a patrol car, and transported to Park Royal Hospital. (*See* Doc. 121 at 3.)

The scope of this litigation was recently narrowed. Specifically, the Court granted summary judgment for Dr. Marasigan, dismissing the false imprisonment and IIED claims against him because the Baker Act was legally justified on the record provided. (Doc. 123.) As to Gustin, the Court dismissed the IIED claim against her but concluded that the false imprisonment claim must proceed to a jury because a genuine dispute exists regarding whether she fabricated the report of suicidal ideation. (Doc. 121.)

## II. Legal Standard

Summary judgment is not a substitute for trial. It is appropriate only "when a movant shows that there is no genuine dispute as to any material fact and [he] is entitled to judgment as a matter of law." *Gonzalez v. Indep. Ord. of Foresters*, No. 24-10758, 2025 WL 337898, at \*2 (11th Cir. Jan. 30, 2025). "When deciding a motion for summary judgment, a judge is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Las Brisas Condo. Homes Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 2:21-CV-41-KCD, 2023 WL 8978168, at \*1 (M.D. Fla. Dec. 28, 2023). We must view the evidence and draw all reasonable inferences in the light most favorable to the

nonmoving party. *Id.* at *2. If the record is so one-sided that a party must prevail as a matter of law, summary judgment is appropriate.

The mechanics are straightforward. The moving party bears the initial burden. It must show "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The nonmoving party must then step up, go beyond the pleadings, and point to specific facts showing a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "An issue is genuine if a reasonable jury could return a verdict for the nonmoving party." *Do v. Geico Gen. Ins. Co.*, No. 1:17-CV-23041-JLK, 2019 WL 331295, at *2 (S.D. Fla. Jan. 25, 2019).

### III. Discussion

As mentioned, three state-law claims remain against Millennium: false imprisonment, intentional infliction of emotional distress, and negligent hiring. Millennium insists its employees' actions were legally justified and its hiring practices were sound, warranting summary judgment. The Court examines each claim separately.

#### A. False Imprisonment

Under Florida law, false imprisonment covers the unlawful restraint of a person against their will. "The tort's purpose is to protect personal freedom of movement by curtailing detention without color of legal authority, which occurs when there is an improper restraint [that] is not the result of a judicial

4

proceeding." *Harder v. Edwards*, 174 So. 3d 524, 530 (Fla. Dist. Ct. App. 2015). False imprisonment has four elements: "1) the unlawful detention and deprivation of liberty of a person 2) against that person's will 3) without legal authority or 'color of authority' and 4) which is unreasonable and unwarranted under the circumstances." *Id.*

King's complaint does not articulate exactly how Millennium is responsible for false imprisonment. (Doc. 64 at 39-40.) As a corporate entity, Millennium obviously cannot act on its own. King's claim appears to be one for vicarious liability based on the actions of its employees, Gustin and Dr. Marasigan. Indeed, they are the only Millennium employees accused in the complaint of committing this tort. As such, Millennium's liability for false imprisonment lives or dies based on their conduct. *See Strickland v. Jacobs*, 66 So. 3d 412, 414 (Fla. Dist. Ct. App. 2011).

While the Court has dismissed the false imprisonment claim against Dr. Marasigan (Doc. 123), the claim against Gustin survives. As already explained, if Gustin intentionally fabricated the report of suicidal ideation that triggered the legal machinery of the Baker Act, she can be held liable for false imprisonment. Because Millennium does not currently dispute that Gustin acted within the scope of her employment, it remains vicariously tethered to her surviving claim. *See Nolan v. Cent. Modular Sys., Inc.*, No.

5

6:09-CV-1224-ORL-19-DAB, 2009 WL 10670481, at *2 (M.D. Fla. Sept. 11, 2009). Summary judgment on this count is thus denied.

### B. IIED

King's IIED claim against Millennium also rests on vicarious liability for the actions of Gustin and Dr. Marasigan. (*See* Doc. 64 at 44-45.) But unlike above, that reliance is fatal.

Florida law imposes an exceptionally high bar for IIED claims, requiring conduct so outrageous and extreme in degree that it goes beyond all possible bounds of decency. *See Plowright v. Miami Dade Cnty.*, 102 F.4th 1358, 1368 (11th Cir. 2024). The Court has already analyzed Millennium's employees' conduct under this standard and found it lacking. Specifically, Dr. Marasigan's authorization of the Baker Act and his failure to intervene in the police altercation did not constitute extreme or outrageous conduct. (Doc. 123.) Likewise, Gustin's alleged fabrication of symptoms and her failure to physically intervene during the arrest fell short of the threshold. (Doc. 121.) Because neither Gustin nor Dr. Marasigan committed this tort as a matter of law, Millennium cannot be held vicariously liable. Summary judgment on the IIED claim is therefore granted.

### C. Negligent Hiring

This claim requires "facts establishing that a defendant was put on notice of its employees' harmful propensities that gave rise to the cause of

action." *Adelman v. Boy Scouts of Am.*, No. 10-CV-22236, 2010 WL 11553587, at *3 (S.D. Fla. Oct. 12, 2010). The issue of notice and timing differs for claims of negligent hiring versus negligent supervision or retention. As the Florida Supreme Court has explained:

> The primary distinction between a claim for negligent hiring and a claim for negligent supervision or retention concerns the time at which the employer is charged with knowledge of the employee's unfitness. A claim for negligent hiring arises when, before the time the employee is hired, the employer knew or should have known that the employee was unfit. Liability in these cases focuses on the adequacy of the employer's pre-employment investigation into the employee's background. Liability for negligent supervision or retention, however, occurs after employment begins, where the employer knows or should know of an employee's unfitness and fails to take further action such as investigating, discharge or reassignment.

*Malicki v. Doe*, 814 So. 2d 347, 362 (Fla. 2002). So to state a claim for negligent hiring under Florida law, a plaintiff must allege that: (1) the employer was required to make an appropriate investigation of the employee but failed to do so; (2) an appropriate investigation would have revealed the employee's unsuitability for employment; and (3) "it was unreasonable for the employer to hire the employee in light of the information [the employer] knew or should have known." *Garcia v. Duffy*, 492 So. 2d 435, 440 (Fla. Dist. Ct. App. 1986).

King grounds her negligent hiring claim on the contention that "Millennium hired Defendant Gustin without screening her ability to certify

7

a patient to be involuntarily committed under the Baker Act." (Doc. 116 at 15.) But the record is undisputed that Gustin did not execute the Baker Act certification—Dr. Marasigan did. What is more, King offers no evidence to support the contention that Millennium failed to screen Gustin. (*Id.*) At the summary judgment stage, mere argument in a brief is not enough. King must go beyond the pleadings and point to specific evidence revealing a genuine issue for trial.

King's only actionable grievance is that Gustin lied about the suicidal ideation. (*See* Doc. 121) Yet again, King provides zero evidence that a pre-employment screening would have revealed Gustin's propensity for such misconduct. *See Malicki*, 814 So. 2d at 362 ("With regard to the claim for negligent hiring, the inquiry is focused on whether the specific danger that ultimately manifested itself . . . reasonably could have been foreseen at the time of hiring."). Without proof that Millennium failed to investigate Gustin—or evidence of what that investigation would have found—King is left with nothing but speculation. That evidentiary void precludes her negligent hiring claim. *See, e.g.*, *N.R. by Ragan v. Sch. Bd. of Okaloosa Cnty., Fla.*, 418 F. Supp. 3d 957, 995 (N.D. Fla. 2019).

## IV. Conclusion

Millennium's motion for summary judgment is a split decision, dictated largely by the Court's previous rulings on its employees. The negligent hiring

and IIED claims fail as a matter of law and must be dismissed. But because a jury must determine whether Gustin fabricated the report that stripped King of her liberty, Millennium remains in the case to answer for the vicarious false imprisonment claim. Accordingly, it is **ORDERED**:

1.   Defendant Millennium's Motion for Summary Judgment (Doc. 102) is **GRANTED IN PART AND DENIED IN PART**.

2.   Counts IX and XI against Millennium are **DISMISSED**. Count VIII will proceed to trial.

**ENTERED** in Fort Myers, Florida on July 14, 2026.


Kyle C. Dudek
United States District Judge

9